ELECTRONICALLY FILED
2018 Aug 07 PM 4:47
CLERK OF THE GRANT COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000039

### IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | *This filing pertains only to |
| | ) | Case No. 2016-CV-13 and |
| | ) | Case No. 2016-CV-39 |
| | ) | |

## MOTION TO AMEND CLASS ACTION PETITIONS IN MORTON COUNTY CASE NO. 2016-CV-13 AND GRANT COUNTY CASE NO. 2016-CV-39 AND MEMORANDUM IN SUPPORT

Plaintiffs Phillip Fink and Cooper Clark Foundation move the Court for leave to file amended petitions in Morton County Case No. 2016-CV-13 and Grant County Case No. 2016-CV-39 to remove claims related to OXY's payment of royalty on NGLs and Helium and to clarify the claims relating to OXY's payment of royalty on Residue Gas under the *Littell v. Oxy* Settlement Agreement and, in support thereof, state:

1.	On July 11, 2018, the Court ordered that Morton County Case No. 2016-CV-13 and Haskell County Case No. 2016-CV-17 be consolidated under Grant County Case 2016-CV-39.

2.	Prior to consolidation, the petition in Haskell County Case No. 2016-CV-17 was amended to remove claims related to OXY's payment of royalty on NGLs and Helium and to clarify Plaintiff's claims relating to OXY's payment of royalty on Residue Gas under the *Littell v. Oxy* Settlement Agreement.

1

3.      Plaintiffs now seek to conform the allegations in the Morton County and Grant County petitions to those in the Haskell County amended petition.

4.      No deadlines have been set for the consolidated case, and Oxy will not be prejudiced by the proposed amendments.

5.      Filed contemporaneously with this motion and memorandum are:

**Exhibit 1**      [Proposed] First Amended Class Action Petition
Morton County Case No. 2016-CV-13

**Exhibit 2**      Redlined Comparison of the Class Action Petition to the
First Amended Class Action Petition
Morton County Case No. 2016-CV-13

**Exhibit 3**      [Proposed] First Amended Class Action Petition
Grant County Case No. 2016-CV-39

**Exhibit 4**      Redlined Comparison of the Class Action Petition to the
First Amended Class Action Petition
Grant County Case No. 2016-CV-39

### ARGUMENT
**Kansas law permits amendment of pleadings when justice so requires.**

K.S.A. 60-215(a)(2) provides that leave to amend "shall be freely given when justice so requires." "As a general rule, amendments to pleadings are favored in law and should be allowed liberally in the furtherance of justice to the end that every case may be presented on its real facts and determined on its merits. (41 Am.Jur., Pleading, § 291, p. 490.). This principle has been followed in Kansas under both the old and the new codes of civil procedure." *Walker v. Fleming Motor Co.*, 195 Kan. 328, 329, 404 P.2d 929 (1965) (reversing district court's refusal to allow second amended petition). Under the code, liberality is allowed in amending and supplementing pleadings, and parties may be permitted to add pertinent facts and insert allegations to make clear that which has not been definitely stated, or which elucidates, strengthens or explains averments of the original

2

pleading. *Barton v. Hackney*, <u>170 Kan. 197</u>, <u>224 P.2d 995</u> (1950). Here, amendment is sought to do precisely that: elucidate, strengthen, and explain averments of the original pleading.

Oxy cannot claim unfair prejudice. Plaintiffs are not seeking to add new claims or new parties; it is simply removing one claim and clarifying another. There is no unfair prejudice simply because a defendant has to defend against a better-pleaded claim. *Popp Telcomm v. American Sharecom, Inc.*, <u>210 F.3d 928, 943</u> (8th Cir. 2000) ("the inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party.") Here, Plaintiffs would be unfairly prejudiced were they not allowed to elucidate the claims. "Since under these rules pleading is not an end in itself, and because the outcome of litigation should turn on the facts and not on the pleadings, amendments should be freely made to conform them to the evidence." 4 Kan. Law & Prac., Code of Civ. Proc. Anno. § 60-215 (2011 ed.). Nor can this motion legally prejudice Oxy because Oxy itself possesses all of the evidence. The amendment merely removes, clarifies, and elucidates the Plaintiffs' legal theories now that Plaintiffs have had the benefit of substantial discovery in their respective cases.

## CONCLUSION

With the completion of OXY's production of documents and Plaintiffs' need to remove certain claims and clarify others in the pleadings before moving for class certification in the consolidated case, Plaintiffs ask the Court's permission for leave to file the attached First Amended Class Action Petitions in Morton County Case No. 2016-CV-13 and Grant County Case No. 2016-CV-39.

3

Respectfully submitted,

_/s/ Rex A. Sharp_ _____

Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Scott B. Goodger KS#26480
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

**_Counsel for Plaintiff_**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:

Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

/s/ Rex A. Sharp
Rex A. Sharp

ELECTRONICALLY FILED
2018 Aug 07 PM 4:53
CLERK OF THE GRANT COUNTY DISTRICT COURT
CASE NUMBER:  2016-CV-000039

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 1 to**

**PLAINTIFF'S MOTION TO AMEND CLASS ACTION PETITIONS
IN MORTON COUNTY CASE NO. 2016-CV-13 AND
GRANT COUNTY CASE NO. 2017-CV-39
AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

s/Barbara C. Frankland
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

Eric L. Witcher KS#14344
Graybill, Witcher & Carey, LLP
450 Morton Avenue
Elkhart, KS 67950
(620) 697-4514
(620) 697-4502 (fax)
ewitch67950@yahoo.com
*Plaintiff's Counsel*

1

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:


Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com


s/Barbara C. Frankland_____
Barbara C. Frankland

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | **\*This filing pertains only to** |
| | ) | **Case No. 2016-CV-13** |

## FIRST AMENDED CLASS ACTION PETITION

Plaintiff brings this class action to recover royalties due on Residue Gas only,[1] and would show the Court as follows:

## NATURE OF THE ACTION

1.      The prior class action *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct. Stevens Cnty.) settled state-wide claims for the improper deductions from royalties. *See* Stip. of Settlement, *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.) ("*Littell* Settlement"), attached hereto as **Exhibit 1**.

2.      As part of the *Littell* Settlement, the *Littell* Class and OXY agreed that OXY would limit its deduction of "Gathering Charges" to $0.15/MMBtu from royalty paid for gas production after July 2007. (*Littell* Settlement ¶2.5; *see also id.* at ¶2.6). The *Littell* Settlement defines "Gathering Charges" as "all charges, expenses, or assessments, including fuel associated with any and all activities occurring between the wellhead of any well producing gas…and the inlet to any

---

[1]      Plaintiff drops its claims for underpayment of royalty on NGLs and Helium and focuses its claims on the underpayment of royalty on Residue Gas only.

mainline transmission facility.…Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred." (*Littell* Settlement ¶1.10). Plaintiff asserts no claim for Gathering Charges because OXY appears to deduct only $0.15/MMBtu from royalty as agreed under the *Littell* Settlement.

3.      In other respects, however, OXY appears to violate provisions of the *Littell* Settlement, specifically:

a.      OXY agreed not to deduct any "Fuel Charges" from royalty on gas produced on or after July 1, 2008. (*Littell* Settlement ¶2.4). "Fuel Charges" is defined as "gas used to operate compressors located on a Gathering Facility." (*Littell* Settlement ¶1.9). "Gathering Facility" is defined as "all activities occurring between the wellhead of any well producing gas… and the inlet to any mainline transmission facility…" (*Littell* Settlement ¶1.11). But despite these provisions, OXY continues to deduct "Fuel Lost & Unaccounted for" ("FL&U") from royalty; thereby, paying royalty on less than the full volume of gas produced from the Class Wells;

b.      The *Littell* Settlement allows OXY to deduct from royalty "all fees and costs payable to third-party mainline transmission companies so long as those fees and costs are incurred pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services." (*Littell* Settlement ¶2.8). But mainline transmission costs are for transportation of Residue gas on the high pressure transmission line, in this case, at the tailgate of the processing plant after recompression so that the Residue can enter the high pressure line. But OXY has not limited its transportation deductions to the mainline transmission lines. Instead its deductions include other

undisclosed components that OXY is calling mainline transportation. This practice violates the *Littell* Settlement.

4.      Apart from the *Littell* Settlement, OXY gives away gas from the Class Wells for the Midstream Service Provider to use as fuel to run its plant operations, i.e. "Plant Fuel". Processing and the Plant Fuel consumed during processing separates raw-make NGLs from Residue and is usually charged against Residue. Under the gas contract applicable in this case, title to the Residue Gas remains with OXY and never transfers to Regency Midcon Gas, LLC. [2] Under *Fawcett v. Oil Producers, Inc., of Kansas,* there is no sale, or even purported sale, before the gas is processed, making the Plant Fuel non-deductible as a processing fee.

5.      Also apart from the *Littell* Settlement, OXY paid royalty on a starting price significantly less than either the Index Price or Weighted Average Sales Price ("WASP") under the OXY/OEMI contracts.

6.      Additionally, given the affiliate relationship between OXY and OEMI, OXY should have paid royalty on the highest of the two starting prices (Index or WASP) at which OEMI sold the Residue Gas to third parties in arm's length transactions.

7.      As in the original petition, Plaintiff includes the claim for interest on the amounts that OXY refunded in unlawfully withheld Conservation Fees.

---

[2]      In *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016. *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit. *Id.* (ECF No. 239). Judge Melgren suggested that the case might have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case based on one gathering and processing agreement, as well as the Master Service Agreement and Master Gas Sales and Purchase Agreement between OXY and its affiliate OEMI, is the result.

8.     Plaintiff and the Class bring claims based upon OXY's underpayment of royalties based on deductions taken in violation of the *Littell* Stipulation of Settlement, and taken during processing to obtain Residue, all as more fully described above and below.

## VENUE AND JURISDICTION

9.     This Court has both specific and general jurisdiction over Defendant because its wrongful acts occurred and caused damages to Plaintiff and Class members in this County, and Defendant is authorized to do and does or did substantial business in Kansas, both generally and specifically as to this case.

10.    Venue is proper in this Court because many, if not all, of the wells, including Plaintiff's well, and royalties therefrom, are located in this County.

## PARTIES

11.    Plaintiff is a royalty owner in at least the Williams J #1; Baughman O; Ellis B; and Smith O wells in Morton County, which Defendant operated and marketed gas from under a Gathering and Processing Agreement with Regency Midcon Gas, LLC (dated September 1, 2003), paid royalties on gas produced, and deducted Processing costs from those royalty payments.

12.    Defendant OXY USA Inc. ("OXY") is believed to be a Delaware corporation with its principal place of business in Texas, authorized to do business in the State of Kansas, and doing business in the State of Kansas. Service of process was obtained through OXY's resident agent, The Corporation Company, Inc. OXY has already appeared in this action.

    a.     OXY is (or was during the Class Period) in the business of producing and marketing gas and constituent products from the wells in which Class members hold royalty interests.

    b.     During the Class Period, July 1, 2007 to April 30, 2014, OXY was one of

the largest gas producers in this County. And, from 2010 to 2014, OXY was the third largest operator of natural gas wells in Kansas, producing 8.6% of the total gas volume in Kansas.

      c.     OXY marketed all of its Kansas residue gas to its affiliate, Occidental Energy Marketing, Inc. ("OEMI") at Index price, which OEMI then resold to third parties at WASP which was often higher than Index.

      d.     In 2014, OXY sold all of its Kansas leases, wells, and assets to Merit Energy Company. OXY paid royalties to Class members through April, 2014, the end date of the proposed Class Period in this case.

## **ROYALTY UNDERPAYMENT FOR GAS**

      13.     Raw gas taken from Plaintiff's wells, and from the wells of all Class members, contains various valuable elements and substances along with worthless and deleterious substances.

      14.     During the Class Period, Defendant had a working interest in each of Plaintiff's wells and in the wells of every Class member.

      15.     In the leases covering the wells in which Plaintiff and the Class Members own royalty interests, Defendant had an implied covenant to market the valuable elements and substances.

      16.     None of the leases upon which Class Wells exist *expressly* authorized all of the deductions from royalty owners complained of in this case.

      17.     Raw gas, including its valuable constituent parts, produced from Class Wells during the Class Period was never sold "at the well" or "at the mouth of the well," but off the lease.

      18.     Instead, the gas from Class Wells was first sold after processing to OEMI as

<div align="center">5</div>

Residue Gas. OEMI then sold the Residue Gas in arm's length transactions to one or more third-parties to obtain generally a higher WASP price.

19.     All of the Class Residue Gas produced from Class Wells is marketed, but not sold, under the September 1, 2003 gas contract between OXY and Regency Midcon Gas, LLC.

20.     **OXY Paid Royalty Using Lower Affiliate Sale Price**. OXY admitted in the *Littell* Settlement Agreement, Ex. 1, that it sold Residue Gas to OEMI at Index price and that OEMI sometimes received higher than Index price when it sold the Residue Gas to third parties. OXY claimed that it was entitled to keep this differential and owed nothing to the royalty owners when OEMI received a higher than Index price. *See Littell* Settlement, Exhibit 1, ¶1 ("It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of index price, if any, are for services provided by OEMI and are not subject to royalty.").[3] However, OXY cannot use a sale to its affiliate to obtain for itself a starting price higher than the starting price on which it bases its royalty payments. The starting price on which OXY paid royalty should be the higher of the Index or WASP price that OEMI obtains in its sale of the Residue Gas in the arm's length transactions with third parties, and nothing less.

21.     **Illegal Conservation Fee.** Defendant wrongfully deducted from royalties the statutory Conservation Fee that it owes to help fund the KCC. But, under *Hockett,* royalty owners do not owe the statutory Conservation Fee. *Hockett v. Trees Oil Co.,* 292 Kan. 213, 251 P.3d 65 (2011). In 2012, OXY refunded the Conservation Fees illegally deducted, due to the *Roderick*

---

[3]     OEMI charged OXY a marketing fee under the Master Services Agreement. OXY claims it did not deduct this fee from royalty owners so Plaintiff does not seek recovery of that fee. But Plaintiff does seek to recover royalty on the higher price that OEMI received even though OXY claims that OEMI did not always get a higher WASP price. But OEMI usually got a higher WASP price for the Residue Gas from Class Wells. Royalty owners should have gotten that higher price too.

lawsuit previously filed, *see supra* n.3, but OXY did not pay interest on refunded amounts at the full 10% per annum interest. Accordingly, Plaintiff seeks to recover interests on the principal amounts refunded.

22.     Defendant settled similar claims in Kansas under *Littell* before July 1, 2007, so this case only seeks recovery for these wrongful deductions on or after July 1, 2007.

23.     **The *Fawcett* Case Was Decided On Concessions Not Made Here.**

    a.      ***Fawcett* Concession #1**: "The gas in this case was sold at the wellhead." *Fawcett v. Oil Producers of Kansas, Inc.*, 302 Kan. 350, 359, 352 P.3d 1032 (2015) (quoting the Court of Appeals opinion, *Fawcett*, 49 Kan. App. 2d 194, 199, 306 P.3d 318, 321 (2013) ("[T]he geography of the sale of gas was at the well and the geography for the calculation of the royalty was also at the well" and stating, "The parties have taken no exception to the panel's conclusions in this regard.")). But, in this case, the location of the sale was after Processing, not at the well. All of the Class gas in this case, including Plaintiff's gas, is sold under a gas contract and an affiliate sale agreement where the sale is not completed until after the processing services have been performed and the Residue Gas is ready for the first commercial market identified in those gas contracts—the Index pool for Residue Gas.

    b.      ***Fawcett* Concession #2**: The "at the well" language in the lease sets the valuation point. *See Fawcett*, 302 Kan. at 359 (quoted above). That is a legal conclusion that is not conceded here, and is contrary to Kansas law. Rather, the "at the well" phrase describes the gas constituents produced "at the well" upon which the proceeds or market value royalty must be paid. Texas law interprets "at the well" to be a valuation point so that subsequent Midstream Service costs can be deducted, but Kansas law rejected that

7

interpretation in *Sternberger v. Marathon Oil Co.,* <u>257 Kan. 315, 341</u>, <u>894 P.2d 788, 805</u> (1995). Factually, the only gas sold "at the well" is for irrigation purposes, which is not part of this case because irrigation gas is not marketed under the gas contracts in question.

       c.     ***Fawcett* Concession #3**: "Fawcett does not challenge [a] OPIK's good faith, [b] its prudence in entering into the purchase agreements at issue, or [c] their material terms. Accordingly, we need not dwell further on what this [duty of good faith] might entail." *Fawcett,* <u>350 Kan. at 366</u> ([a]-[c] added). First, Plaintiff and the Class here do contest all three. [a] OXY's good faith as to royalty owners because OXY entered into gas contracts focused on its own interest in a "net" revenue stream rather than the royalty owners' right to a "gross" revenue stream and manipulated the terms of the gas contract through a premature or unnecessary title transfer clause to impose a "net" payment on royalty owners; [b] OXY's prudence in entering into the 2003 Gas Contract and OEMI Agreements because they are contrary to a prudent operator's conduct to act to mutually benefit royalty owners as well as itself and to obtain the best available price. The OEMI Agreements financially benefit only OXY by its own admission: "Prior to the formation of [OEMI], OXY determined the sales proceeds for use in the payment of royalties…by computing a Weighted Average Sales Price received for gas produced and sold. After the formation of OEMI, in most cases the sale proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices…It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty." Exhibit 1 to the *Littell* Settlement at (2). Before OEMI's formation, OXY performed the same function as OEMI; hence, there was no

reason for the OEMI agreement at all, except to financially benefit OEMI/OXY when OEMI sold the Residue gas at higher than the Index price at which OXY sold the Residue to OEMI; [c] the material terms of: (i) the 2003 Gas Contract because it is based on a fiction that title can be transferred to some molecules mixed within a single commingled gas stream and not others; and (ii) the material terms of the OEMI Agreements because they were completely unnecessary and used to obtain for OEMI a higher starting price for Residue than the Index price OXY provided to royalty owners.

d. **Not Raised in *Fawcett*.** Under Kansas law, mutual consent is the only way a lessee can impose GCDTP costs on royalty owners, i.e. by Express Deduction (ED) leases. There are only a few ED Leases in this case and they are excluded from the Class by definition. This issue was not raised or ruled upon by the Kansas Supreme Court in *Fawcett*, and if given the chance, without the appellate concessions listed above, the Kansas Supreme Court would likely uphold the mutual consent rule to bar OXY and other lessees from treating leases that say nothing about the lessee's authority to deduct costs from royalty as ED leases by their drafting of gas contracts, especially because title transfer clauses are unnecessary to receive Midstream Services—as this case illustrates for Residue. This will be a common question of law for the entire Class.

e. ***Fawcett* was based on a false factual premise without factual support.** Had the undisputed fact been presented that most Kansas gas receives Midstream Services without a paper title transfer, the outcome of *Fawcett* may have been different.

24. ***Class's Residue Gas Claims*.** From July 1, 2007 to April 30, 2014, Plaintiff and the Class were underpaid royalties for Residue Gas due to OXY using an unfair and improper starting price by the subterfuge of an affiliate sale contract and by taking (directly or indirectly) volumetric

and fee deductions occurring before any purported sale of Residue and not expressly authorized by the *Littell* Class Settlement.

25.     ***Class's Conservation Fee Interest Claims***. From July 1, 2007 to January 1, 2012, OXY wrongfully deducted Conservation Fees from royalties paid to the Plaintiff and the Class. OXY thereafter refunded the wrongfully deducted amounts but paid no interest on those amounts. This action seeks recovery of interest at 10% per annum under K.S.A. 16-201.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action individually and, pursuant to K.S.A. 60-223(a) and (b)(3), as representative of a Class defined as follows:

> All royalty owners in Kansas wells from which OXY USA Inc. marketed gas production from July 1, 2007 to April 30, 2014, under the Gas Gathering and Processing Agreement between OXY USA, Inc. and Regency Midcon Gas, LLC dated September 1, 2003, as amended.
>
> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judge(s) together with their immediate family members; (3) OXY USA Inc. its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors; and (4) royalty owner being paid under leases that provide royalty owed is "less a proportionate part of...the cost incurred by Lessee in delivering, processing or otherwise marketing such gas or other substances" or similar language.

27.     The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. OXY marketed gas from approximately 86 wells in Morton County under the Gathering and Processing Agreement between Oxy USA, Inc. and Regency Midcon Gas, LLC, dated September 1, 2003, as amended ("2003 Gas Contract"). With more than one royalty owner for each well, there are at least 172 Class members. Some of these Class Members reside in Kansas, although others reside in a number of other states, making joinder impracticable.

28. The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

a. Whether Plaintiff and the Class members are the beneficiaries of an implied duty to market in their oil and gas leases;

b. Whether OXY's continued deduction of FL&U after July 1, 2008 breached the *Littell* Settlement and resulted in OXY's payment of royalty on less than the full volume of Residue Gas produced;

c. Whether OXY's deduction of transportation costs from Residue Gas included costs not attributable to mainline transportation;

d. Whether OXY's deduction of processing fees and plant fuel from Residue Gas occurred before the Residue Gas was sold so as to breach the implied duty to market and of good faith under *Fawcett*;

e. Whether Defendant (including any of its affiliates) paid royalty to Plaintiff and the Class members based on the lowest, rather than the highest, starting price for Residue Gas.

f. Whether Defendant owes interest on the amounts of Conservation Fee that it improperly deducted and later refunded to royalty owners.

29. Plaintiff is typical of other class members because OXY paid royalty to Plaintiff and other class members using a common method based on the net revenue OXY received under the 2003 Gas Contract and its Agreements with its affiliate OEMI. Royalty owners do not know or approve any contract terms. The 2003 Gas Contract was necessary to transform the raw gas into Residue Gas for it to be sold to OEMI. Plaintiff and the Class members are also typical because their leases contain no express provision authorizing deductions of all of the costs, both monetary

and volumetric, for sale of the Residue Gas to OEMI. Plaintiff and the Class members are also typical because OXY paid them no interest on the refunded Conservation Fees.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a royalty owner paid by Defendant, and understand his duties as Class representative. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

31.     This action is properly maintainable as a class action under (b)(3). Common questions of law *or* fact exist as to all members of the Class and those common questions predominate over any questions solely affecting individual members of such Class. *See* ¶28, above. Individual Class members do not need to testify in order to establish Defendant's liability or even damages to the Class.

32.     Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all Class members.

33.     Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by the members of the Class because joinder of all members of those Class would be either highly impracticable or impossible and because the amounts at stake for

individual Class members, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

## COUNT I—BREACH OF LEASE

34.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-33.

35.     Plaintiff and members of the Class entered into written, fully executed, oil and gas leases with Defendant.

36.     Those leases include implied covenants including: (a) duty to market; (b) duty of good faith and fair dealing; (c) mutual benefit rule; and, (d) duty to get the best reasonable price for the gas products.

37.     Defendant entered into the 2003 Gas Contract to obtain the best reasonable price for Residue Gas (namely Index or WASP thereafter), but failed to pay on the full volume of Residue Gas coming from each Class Well at the best price available and deducted amounts not authorized under the leases or under the *Littell* Settlement.

38.     At all material times, Plaintiff and the Class have performed their terms and obligations under the leases.

39.     Defendant breached the implied covenants of the leases by its actions and/or inactions.

40.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

## COUNT II—BREACH OF *LITTELL* SETTLEMENT

41.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-40, above.

42.     In the fall of 2007, OXY and the Settlement Class of mineral interest owners in Kansas wells settled claims for royalty underpayment and agreed to certain provisions to govern the payment of royalty in the future. *See Littell* Settlement, Exhibit 1

43.     As set forth above, OXY agreed to not deduct FL&U from gas produced after July 1, 2008, but OXY continued to do so.

44.     As set forth above, OXY agreed to deduct only the actual costs for mainline transportation costs from gas produced after July 1, 2007. But OXY deducted costs that were not mainline transportation.

45.     In so doing, Defendant breached the *Littell* Settlement.

46.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a.     Certifying this action as a class action, with the appointment of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

b.     Awarding Plaintiff and the Class damages from Defendant's breach of lease and breach of the *Littell* Settlement with interest at the highest allowable rate at law or equity;

c.     Granting Plaintiff and the Class the costs of prosecuting this action together with reasonable attorney's fees out of the recovery; and,

14

d.      Granting such other relief as this Court may deem just, equitable and proper.

                         Respectfully submitted,

                         *s/ Barbara C. Frankland*
                         Rex A. Sharp KS#12350
                         Barbara C. Frankland KS#14198
                         Ryan C. Hudson KS#22986
                         Rex A. Sharp, P.A.
                         5301 W. 75th Street
                         Prairie Village, KS  66208
                         (913) 901-0505
                         (913) 901-0419 fax
                         rsharp@midwest-law.com
                         bfrankland@midwest-law.com
                         rhudson@midwest-law.com

                         Eric L. Witcher KS#14344
                         Graybill, Witcher & Carey, LLP
                         450 Morton Avenue
                         Elkhart, KS 67950
                         (620) 697-4514
                         (620) 697-4502 (fax)
                         ewitch67950@yahoo.com

                         *Plaintiff's Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:


Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com


*s/ Barbara C. Frankland*
Barbara C. Frankland

# EXHIBIT 1

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co-      )
trustees of the Opal Littell Family Trust, and  )
BONNIE BEELMAN, individually and as     )
representative plaintiffs on behalf of persons  )
or concerns similarly situated,          )
                                         )
                Plaintiffs,              )
                                         )
                                         )      Case No. 98-CV-51
vs.                                      )
                                         )
OXY USA INC.,                            )
                                         )
                Defendant.               )
                                         )

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated  January 18, 2007, is made and entered into in the above-captioned class action (the "Action") by and among the plaintiffs in the Action (the "Plaintiffs"), on their own behalf and on behalf of the Plaintiff Class as defined herein, and OXY USA Inc. ("OXY") .

WHEREAS:

A.      On November 13, 1998, the Action was filed in this Court.

B.      This Stipulation sets forth the terms and conditions upon which Plaintiffs and OXY have agreed to settle all claims asserted in the Action, including the claim that OXY has failed to properly calculate and pay royalty under those oil and gas leases identified in the Plaintiff Class description set forth below by deducting from such payments the Gathering Charges, including fuel charges, charged by those gathering companies (including OXY) that gather gas that is produced by OXY and that is subject to the Plaintiffs' royalty interests within the Kansas Hugoton Field (the "Claim for Wrongful Deductions").

C.     On March 13, 2001, pursuant to K.S.A. 60-223, the Court certified the Action as a

class action for purposes of pursuing the Claim for Wrongful Deductions and defined the class

("the Plaintiff Class") in the manner set forth in the Notice of Class Action mailed to members of

the Plaintiff Class on or about July 24, 2001, as follows:

> All persons or concerns owning mineral interests in lands located
> in the areal confines of the Kansas Hugoton Gas Field, burdened
> by oil and gas leases owned in whole or in part by defendant with
> respect to gas production from above the base of the Panoma-
> Council Grove Field, whose royalty payments have been reduced
> by a "gathering/compression" deduction or "marketing deduct"
> identified on the monthly gas revenue detail sent by defendant to
> each such member. Plaintiffs exclude from the plaintiff class the
> United States of America insofar as its mineral interests are
> managed by the Mineral Management Service but otherwise
> include the instrumentalities of the United States of America and
> federally chartered corporations, including, but not limited to, the
> Farm Credit Bank of Wichita and Federal Land Bank.

D.     The Claim for Wrongful Deductions was the subject of a bench trial before the

Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from

March 31, 2003 until April 7, 2003.   Thereafter, the parties filed proposed findings of fact and

conclusions of law and presented oral argument to the Court on May 29, 2003.   In their

submissions to the Court, Plaintiffs requested that OXY be ordered to: (1) provide an accounting

for all deductions taken by it from royalty payments which it made to each individual member of

the Plaintiff Class during the period from November 13, 1993, to the present for Gathering

Charges, including fuel; (2) cease taking such deductions in the future; (3) pay prejudgment

interest on the amount of all improper deductions; (4) determine whether OXY violated K.S.A.

55-1620; and (5) recover on other claims asserted in the Pretrial Order filed on October 24, 2002.

E.     In February of 2007, not having received any ruling from the Court and desiring

to bring closure to this litigation, which has now lasted more than nine (9) years, the parties

commenced settlement negotiations.   Those negotiations were complex and difficult and

occurred over a period of six (6) months, addressing both the past and the future, involving face-to-face meetings and phone conferences between counsel for the Plaintiff Class and OXY. Finally, on August 9, 2007, the parties reached the tentative agreement which is the subject of this Stipulation of Settlement.

      F.     During the course of the negotiations described above and in response to inquiries from counsel for Plaintiffs, OXY estimated that the total amount of deductions being disputed in the Action from and after December 1993 to July 2007 and including deductions reflected in its royalty checks to the members of the Plaintiff Class in the month of July, 2007 (i.e., for production that occurred during the month of June 2007) would total $23.7 million, not including any liability for prejudgment interest. Although Plaintiffs have no grounds to dispute this and believe that it is within the reasonable range of the computations they have been able to make with their own limited data, they have not (and cannot) perform an audit of such deductions or otherwise provide independent confirmation of the accuracy of such number. For all these reasons, when negotiating and assessing the reasonableness of the Settlement that has been reached, Plaintiffs and their counsel have relied on OXY's estimate of its potential liability for the period described above.

      G.     During the negotiations, OXY requested and Plaintiffs agreed to provide a release of all possible claims of members of the Plaintiff Class against OXY or any related company that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions. Such requested release includes those items listed in paragraph D above and those items specifically listed in the definition of Settled Claims. The parties recognize that any such release, in order to satisfy the requirements of due process, must be based upon full disclosure to the Class Members, including statements of fact by OXY, when appropriate, upon which they may rely

3

when providing such release in the form set forth elsewhere herein. In this connection, Plaintiffs and their counsel confirm and acknowledge that such statements of fact, which are set forth in Exhibit 1 hereto, explain why they did not include certain claims in the Action in the first place. Plaintiffs agree to file in the form attached hereto as Exhibit 2 an Amendment and Supplement to Petition, including the claims identified in the definition of Settled Claims.

H.      Plaintiffs and their counsel enter into this Stipulation: (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class.

I.      OXY has denied and continues to deny the claims alleged by Plaintiffs against it in the Action. OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. OXY enters into this Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class, and OXY and to avoid the further expense, inconvenience, and disruption of defending against the Action and other possible actions. OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of the Claim for Wrongful Deductions and the possibility of being required to defend other claims set forth in the definition

4

of Settled Claims. OXY has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth herein.

J.     In view of the foregoing, and the other matters of record in the Action, the parties hereto now propose to settle and discharge the Action, in accordance with the terms and provisions of this Stipulation.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, that the Claim for Wrongful Deductions shall be fully and finally settled and compromised, subject to the approval of the Court pursuant to K.S.A. 60-223, upon and subject to the terms and conditions set forth below.

## SECTION I
### DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1     "Action" means the class action identified in the caption of this Stipulation.

1.2     "OXY" means OXY USA Inc., its  parents, subsidiaries, and all affiliated companies, including but not limited to Occidental Energy Marketing, Inc. ("OEMI"), and its predecessors. Reference to OXY in connection with the Settled Claims, including the dismissal of claims against OXY as specified in Section 4.2, shall also include all of OXY's present and former officers, directors, employees, agents, shareholders, partners, guarantors, attorneys, predecessors, successors, assigns, representatives and their heirs, successors, executors, and administrators.

1.3     The terms "heirs" and "successors," shall mean those persons or entities who have succeeded to the rights of Class Members having the right to participate in the distribution of the Net Settlement Fund.

1.4     "Claimant" means any Participating Class Member.

1.5     "Claims Administrator" means such person(s) as may be selected by Plaintiffs' Counsel to assist in the administration of the Settlement.

1.6     "Effective Date," or the date on which the Settlement becomes "effective," means the date on which the Judgment becomes final as a matter of law (which shall be deemed to be 30 days after the entry of the Judgment if no appeal is filed).  If an appeal is filed, the Effective Date shall be the date of the final affirmance on appeal or order dismissing such appeal by the appellate court of last resort.

1.7     "Escrow Agent" means Intrust Bank, or such other national bank designated by the Court and doing business in Wichita, Kansas, and having assets in excess of $1,000,000,000.

1.8     "Escrow Agreement" means the agreement concerning escrow referenced in Section 2.1 and attached as an exhibit to the Judgment.

1.9     "Fuel Charges" means gas used to operate compressors located on a Gathering Facility(ies).

1.10    "Gathering Charges" means all charges, expenses or assessments, including fuel, associated with any and all activities occurring between the wellhead of any well producing gas that is subject to a royalty interest owned by a member of the Plaintiff Class and the inlet to any mainline transmission facility, including but not limited to any facilities owned by Northern Natural Gas, Panhandle Eastern Pipeline Company, Kansas Power and Light, and/or their predecessors.  Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred.

1.11    "Gathering Facility" means all activities occurring between the wellhead of any well producing gas that is subject to a royalty interest owned by a member of the Plaintiff Class

6

and the inlet to any mainline transmission facility including, but not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred.

  1.12 "Hearing" means the hearing by the Court for the purposes set forth in Section 4.1 (h) herein.

  1.13 "Judgment" means the judgment required pursuant to Section 4.2 below.

  1.14 "Leases" means the leases referred to in paragraph C above.

  1.15 "Net Settlement Fund" means the Settlement Fund, less any fees and expenses which may be awarded by the Court to Plaintiffs' Counsel, and less any fees and expenses which may be incurred in the administration of the Settlement Fund (the "Notice and Administration Fund," as defined below).

  1.16 "Notice" means the notice mailed to the members of the Plaintiff Class substantially in the form annexed as an exhibit to the Notice Order.

  1.17 "Notice and Administration Fund" means a portion of the Settlement Fund, not to exceed $61,000 without prior Court approval, to be used for reasonable out-of-pocket costs and expenses of preparing and mailing the Notice, publishing the Summary Notice, locating members of the Plaintiff Class, determining the validity of any claimant's entitlement to a portion of the Net Settlement Fund, and all of the reasonable out-of-pocket expenses of administering the Settlement and distributing the Net Settlement Fund.

  1.18 "Notice Order" means the order required pursuant to Section 4.1 below.

  1.19 "Participating Class Members" means all Class Members who do not exclude themselves as provided for in the Notice Order.

1.20    "Payment Schedule" means the schedule showing the names and addresses of each Participating Class Member and the portion of the Net Settlement Fund to which each such member is entitled under the Plan of Allocation.    The Payment Schedule is not part of this Stipulation.

1.21    "Person" includes, without limitation, any individual, corporation, partnership or other entity, and his, her or its legal representatives, and all references to the masculine, feminine or neuter gender include all genders.

1.22    "Plaintiffs" means the named plaintiffs in the Action.

1.23    "Plaintiff Class" means the Plaintiff Class described in Paragraph C above.

1.24    "Plaintiffs' Counsel" means Fleeson, Gooing, Coulson & Kitch, L.L.C. and Kramer, Nordling & Nordling, LLC.

1.25    "Plan of Allocation" means a plan of allocation of the Net Settlement Fund which shall separately be submitted by Plaintiffs' Counsel to the Court, as may be modified by the Court. The Plan of Allocation is not part of this Stipulation.

1.26    "Settled Claims"    means any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act, conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breaches of other duties which occurred at any time prior to July 1, 2007, that were or could have been properly alleged in the

Action and that in any way relate to the Leases, OXY's operation of the Leases, or OXY's failure to operate the Leases, including, but not limited to, claims that:

(1) Under the Leases, or under any legal or equitable theory, OXY should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

(2) Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any and all claims that OXY failed to use the proper starting point for calculation of royalty to the Plaintiff Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

(3) Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY has

failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

(4)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

(5)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

(6)     OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

(7)     OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 *et seq.*, K.S.A. 55-1614 *et seq.*, and/or under any other legal or equitable theory;

(8)     Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties, should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to

10

produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

(9)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY owes additional royalty, including any royalty in excess of the royalties paid on 100% of the index price with respect to the Gas Purchase Contract effective July 1, 1998 between OXY and OEMI and their respective successors and assigns.

1.27     "Settlement" means the agreement to settle this Action as embodied in this Stipulation.

1.28     "Settlement Fund" means that Fund created pursuant to Section 2.1 below, together with any interest earned thereon.

1.29     "Stipulation" means this document, as read in its entirety.

1.30     "Summary Notice" means the notice published in the newspapers specified in Section 4.1(f).

## SECTION II
## THE SETTLEMENT FUND AND RELATED TERMS

2.1     Within ten business days of the Effective Date, OXY shall pay the sum of $16,700,000 by wire transfer in immediately available funds to the Escrow Agent for deposit in the Escrow Account which the Escrow Agent shall establish in accordance with the Escrow

Agreement. In the event the Effective Date is after November 21, 2007, OXY shall pay simple interest at the rate of 5.625 percent per annum until said sum, together with accrued simple interest, is deposited with the Escrow Agent. The sum of $16,700,000, plus accrued interest, if any, shall be the Settlement Fund. Upon request of OXY counsel, in writing, the Claims Administrator shall provide to OXY counsel, from time to time, in writing, an accounting of the balance in and disbursements from the Settlement Fund. Upon request of Plaintiffs' Counsel, in writing, OXY shall provide to Plaintiffs' Counsel an accounting of the balance of the Settlement Fund, showing accrued interest. OXY and Plaintiffs shall have no right or interest in or to such sums nor in and to the Settlement Fund, other than as provided in this Stipulation.

2.2    (a)    Subject to the conditions of this Stipulation, during the period that the Settlement Fund is held by the Escrow Agent, the Settlement Fund shall be deemed to be *in custodia legis* of the Court. It is specifically intended and agreed that these funds are not and shall not be subject to any lien, claim, etc. asserted against OXY, the purpose of the escrow and this Stipulation being to place these funds in the control of the Court pending further action in accordance with this Settlement and Stipulation.

(b)    Plaintiffs' Counsel are authorized to execute such transactions with respect to the Settlement Fund on behalf the Plaintiff Class as are consistent with the terms of this Stipulation.

2.3    Reasonable out-of-pocket costs and expenses of preparing and mailing the Notice, publishing the Summary Notice, locating Class Members, processing requests for exclusion received from Class Members, determining the validity of any Claimant's entitlement to a portion of the Settlement Fund, and all reasonable out-of-pocket expenses of administering the Settlement and distributing the Net Settlement Fund shall be borne by the Settlement Fund. Up

to, but no more than, $61,000 shall be available from the Settlement Fund for such costs and expenses without further Court approval.

2.4     Fuel Charges with respect to gas produced from any Lease shall cease in their entirety on gas produced on and after July 1, 2008. For the period July 1, 2007, through June 30, 2008, OXY shall be permitted to continue deducting Fuel Charges from Plaintiff Class' royalties using the same methodology currently being employed.   On gas produced from any Lease and not compressed on a Gathering Facility, beginning July 1, 2007, OXY shall cease any Deductions from Plaintiffs Class' royalties attributable to Fuel Charges for such gas. The royalty payment methodology described in this section shall be implemented within forty-five (45) days of the Effective Date.

2.5     With respect to all Gathering Charges that are not Fuel Charges, commencing with its issuance of royalty checks for July 2007 production, OXY shall only deduct fifteen cents per mmbtu ($0.15/mmbtu) of the pro-rata share of the Gathering Charges from its royalty payments to members of the Plaintiff Class or their successors in interest. The royalty payment methodology described in this section shall be implemented within forty-five (45) days of the Effective Date.

2.6     It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest with respect to gas produced on or after July 1, 2008,  shall not be diminished or reduced by any charge other than fifteen cents per mmbtu ($0.15/mmbtu) for Gathering Charges, taxes owed by them or the actual cost of transporting such gas on a transmission pipeline.

2.7     With respect to any Gathering Charges that are in excess of the amounts identified in Section 2.4 and Section 2.5 above and that are taken with respect to gas produced after July 1,

2007, OXY shall, within one hundred and twenty (120) days of the Effective Date, make one or more prior period adjustments, as applicable, to the royalty checks of the Plaintiff Class so as to conform to the Section 2.4 and Section 2.5 royalty payment methodology.  Such prior period adjustment or adjustments shall be made in accordance with OXY's standard practice in handling prior period adjustments.

2.8     OXY will continue to deduct all fees and costs payable to third-party mainline transmission companies so long as those fees and costs are incurred pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services.

2.9     Each settlement check issued to a member of the Plaintiff Class from the Settlement Fund shall include a legend on the back stating that:

> By endorsing this distribution check, payee represents and warrants that the payee is the current owner of the Settled Claims thus released, has not assigned or otherwise transferred the Settled Claims to anyone else, and will indemnify Plaintiffs' Counsel and OXY against a claim by anyone else as the owner of that Settled Claim.

Copies of the endorsements on checks issued from the Settlement Fund shall be provided to OXY at OXY's expense.

## SECTION III
## ADMINISTRATION AND DISTRIBUTION OF SETTLEMENT FUND

3.1     Plaintiffs' Counsel and such other authorized agents as may reasonably be retained and paid for as an expense of administration, subject to the supervision and approval of the Court, shall administer and calculate the amount to be paid to Participating Class Members, shall prepare and file the Payment Schedule, and shall oversee distribution of the Settlement Fund in accordance with this Stipulation and the Court's direction.

3.2     The Escrow Agent shall reimburse expenses incurred by Plaintiffs' Counsel for expenses chargeable to the Notice and Administration Fund in accordance with such orders as may be issued by the Court upon application of said Counsel.

3.3     Following the Effective Date, the remaining portion of the Settlement Fund shall be applied and disbursed by the Escrow Agent as follows:

          (a)     payment of any remaining out-of-pocket expenses described in Section 2.3, not already paid pursuant to Section 3.2;

          (b)     payment of Plaintiffs' Counsel's fees, and expenses approved by the Court pursuant to Section VI below;

          (c)     distribution of the Net Settlement Fund to Claimants;

          (d)     distribution to OXY of that portion of the Net Settlement Fund attributable to those Members of the Class who exclude themselves from the Class pursuant to the Notice described in Section 4.1 (e) or who cannot be identified or located; provided, however, that OXY agrees that it will not enter into any settlement with any such person or entity which is more favorable than the settlement being achieved by means of this Stipulation, providing that OXY reserves the right to settle any future litigation on an economical basis notwithstanding the foregoing.

          (e)     distributions under Sections 3.3(d) above shall occur no later than one year after the Court approves the Payment Schedule or such other time as the Court may order.

3.4     The Court's approval of the fairness and reasonableness of the Plan of Allocation and the Payment Schedule shall be determined separately from the Court's determination of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation and any award of Plaintiffs' Counsels' fees and expenses. Any order or proceedings relating to the Plan of Allocation or the Payment Schedule shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other Orders entered pursuant to or in furtherance of this Stipulation.

3.5     OXY shall have no responsibility for, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the allocation, determination, administration, calculation or payment of claims, or any losses incurred in connection therewith; provided however OXY agrees:

(a)     To provide in a readily accessible electronic format the following information for each class member: owner number, owner name, owner decimal interest, cost center, cost center name, production date, and owner gathering amount (deductions);

(b)     To provide to Plaintiffs' Counsel, in a readily accessible electronic format, the names, OXY I.D. numbers, tax I.D. numbers, and last known addresses of all Class Members who are currently or formerly OXY royalty owners;

(c)     To provide Plaintiffs' Counsel with  access to all information in its files, at mutually convenient times and locations or by electronic means, which Plaintiffs' Counsel may reasonably require to assist them in locating Class Members or identifying their heirs or successors, including, but not specifically limited to, furnishing such evidence that OXY may have regarding change of ownership among Class Members;

(d)     Under no circumstances shall the Plaintiff Class or Plaintiffs' Counsel be entitled to seek sanctions or contempt against OXY for any perceived or real failure by OXY to perform the tasks set forth in Subsections (a), (b) and (c) above.

3.6     Other than the right to obtain a refund pursuant to Sections 3.3(d), OXY shall have no right to participate in any proceedings regarding the disposition of any portion of the Net Settlement Fund.

3.7     No Claimant shall have any claim against Plaintiffs' Counsel, the Escrow Agent, the Claims Administrator or other agent designated by Plaintiffs' Counsel, OXY or OXY's counsel based on the distributions made in accordance with this Settlement, including, but not limited to, the Payment Schedule, and any further orders of the Court.

SECTION IV
IMPLEMENTATION OF PROPOSED SETTLEMENT

4.1     Preliminary Approval of Stipulation and Certification of Plaintiff Class.

As soon as practicable after this Stipulation has been executed, counsel for the parties

shall jointly submit this Stipulation to the Court for approval and shall jointly apply to the Court

for entry of the Notice Order (substantially in the form attached hereto as Exhibit 3) which shall,

among other things:

(a)     Set forth the recommendation of Plaintiffs' Counsel that the Stipulation and the Settlement set forth herein is fair, reasonable, adequate, in the best interests of the Class, and should be approved by the Court;

(b)     Pursuant to K.S.A. 60-215(a) and (d), approve the filing of Amendment and Supplement to Plaintiff's Amended Petition attached hereto as Exhibit 2;

(c)     Provide for the manner of exclusion from the Class;

(d)     Approve a form of Notice substantially in the form attached to the Notice Order for mailing to the Class Members;

(e)     Direct Plaintiffs' Counsel to mail or cause to be mailed the Notice to the Class Members;

(f)     Direct Plaintiffs' Counsel to cause the Notice to be published in the *Wichita Eagle,* Wichita, KS; *Tri-State News,* Elkhart, KS; *Lakin Independent,* Lakin, KS; *Garden City Telegram,* Garden City, KS; *Syracuse Journal,* Syracuse, KS; *Hugoton Hermes*, Hugoton, KS; *Southwest Daily Times*, Liberal, KS*; The Ulysses News*, Ulysses, KS; *Haskell County Monitor-Chief*, Sublette, KS; *The Hutchinson News*, Hutchinson, KS; and *Johnson Pioneer,* Johnson, KS;

(g)     Find that the mailing and publication pursuant to Sections 4.1(e) and (f) above constitute the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified through reasonable effort, and is sufficient notice of the matters set forth in the Notice to all Class Members, and that the Notice fully satisfies the requirements of due process and K.S.A. 60-223;

(h)   Schedule a hearing date for the Court to determine whether the Settlement and Plan of Allocation should be finally approved as fair, reasonable and adequate; determine whether an Order finally approving the Settlement and Plan of Allocation should be entered thereon; and, award counsel fees and expenses to Plaintiffs' Counsel;

(i)   Direct that Plaintiffs' Counsel post on their Website a preliminary Payment Schedule listing by OXY I.D. number the members of the Plaintiff Class and the amounts to which they are entitled under the proposed Plan of Allocation (prior to any reduction for attorneys fees and expenses and for the Notice and Administration Fund and prior to any accrued interest) by such date provided by the Court and that members of the Plaintiff Class have a designated period from the filing of such Payment Schedule to lodge any objections thereto;

(j)   Provide that any objections to the preliminary Payment Schedule, Settlement, Plan of Allocation or application for award of attorneys' fees and expenses shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Hearing (unless in its discretion, the Court shall direct otherwise) only if, on or before a date to be specified in the Notice Order, persons making objections shall file their objections and notice of their intentions to appear and copies of any papers in support of their position with the Clerk of the Court and serve such notice and papers on Plaintiffs' Counsel and OXY's Counsel;

(k)   Provide that, pending final determination of whether the Stipulation should be approved, no Participating Class Member, either directly, representatively, derivatively or in any other capacity, shall commence or prosecute against OXY or its respective predecessors and successors, and all of its respective present and former principals, officers, directors, employees, agents, shareholders, investors, insurers, affiliates, assigns, representatives, heirs, executors, and administrators, any action or proceeding in any court or tribunal asserting any of the Settled Claims;

(l)   Provide that OXY shall have no rights to any portion of the Settlement Fund, other than as specified in Section 3.3(d); and

(m)   Provide that the Hearing may, from time to time, and without further notice to the Class, be continued or adjourned by order of the Court.

4.2    Entry Of Final Judgment.

Upon approval by the Court of the Settlement, a Judgment shall be entered by the Court,

substantially in the form of Exhibit 4 hereto, which shall:

> (a)    Appoint Intrust Bank, or such other national bank designated by the Court and doing business in Wichita, Kansas, and having assets in excess of $1,000,000,000, as Escrow Agent, and approve the Escrow Agreement referenced in Section 2.1 above;

> (b)    Approve the Settlement as entered into in good faith, and as fair, reasonable and adequate to the Class within the meaning of K.S.A. 60-223, and direct the parties thereto to consummate the Settlement in accordance with the terms and provisions of the Stipulation;

> (c)    Dismiss the Action as against OXY with prejudice as to the Settled Claims as defined in Section 1.26 without costs and attorneys' fees to any party as against any other party; adjudge that the Settled Claims are settled, discharged, and released; adjudge that each Participating Class Member is deemed conclusively to have released the Settled Claims, notwithstanding that any Participating Class Member might hereafter discover facts in addition to or different from those which Members of the Class now know or believe to be true with respect to the Action and Settled Claims or the subject matter of the release; and bar and permanently enjoin any Participating Class Member from commencing or prosecuting either directly, representatively, derivatively or in any capacity, the Settled Claims against OXY;

> (d)    Award reasonable attorneys' fees and expenses to Plaintiffs' Counsel to be paid out of the Settlement Fund;

> (e)    Approve a Plan of Allocation;

> (f)    Establish procedures for the filing of a final Payment Schedule; and

> (g)    Reserve jurisdiction, without affecting the finality of the Judgment, over: (1) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (2) disposition of the Settlement Fund; and (3) enforcing and administering the Stipulation.

## SECTION V
## CONDITIONS OF SETTLEMENT

5.1     This Stipulation shall be effective only on the condition that all of the following

events occur (or as provided in a notice of intent to proceed by all parties pursuant to Section

5.4):

    (a)     The Court enters the Notice Order, substantially in the form of
Exhibit 3, as required by Section 4.1 herein;

    (b)     The Court enters the Judgment, substantially in the form of Exhibit
4, as required by Section 4.2 herein;

    (c)     OXY has not withdrawn from the Stipulation pursuant to Section
5.4; and

    (d)     There is an Effective Date.

5.2     Upon the occurrence of all of the events referenced in Section 5.1 above, or as

provided in notices of intent to proceed submitted by all parties to this Stipulation in accordance

with Section 5.4 below, all Participating Class Members: (a) shall be deemed to have dismissed

the Action against OXY with prejudice as to the Settled Claims as defined in Section 1.24; and

(b) acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle,

release and discharge the Settled Claims against OXY.

5.3     Upon the occurrence of all of the events referenced in Section 5.1 above, or as

provided in notices of intent to proceed submitted by all parties to this Stipulation in accordance

with Section 5.4 below, any and all interest or rights of OXY in or to the Settlement Fund shall

be absolutely and forever extinguished, other than its right to a remainder, if any, and to a refund

as provided in this Stipulation.

5.4     If the Court does not enter the Notice Order or Judgment, or if the Court enters

the Judgment and appellate review is sought and on such review the Judgment is materially

modified or reversed, then this Stipulation shall be canceled and terminated unless all of the

parties to this Stipulation, within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice of their intent to proceed with this Stipulation with revised conditions for the Stipulation to become effective in compliance with K.S.A. 60-223.  Such notice may be provided on behalf of OXY, by their respective counsel, and, on behalf of the Plaintiffs and the Class by Plaintiffs' Counsel.  Neither a modification of nor reversal on appeal of any amount of fees, costs, expenses and interest awarded by the Court to counsel for any of the Plaintiffs shall be deemed a material modification of or a part of the material terms of the Judgment or this Stipulation.

5.5     If this Stipulation does not become effective, the parties to this Stipulation shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation and related orders had not been executed.

### SECTION VI
### PLAINTIFFS' COUNSEL'S FEES AND COSTS

6.1     Plaintiffs' Counsel shall file with the Court an application for:

     (a)     reimbursement of their expenses incurred by them in connection with the prosecution of the Action; and

     (b)     for an award of attorneys' fees.

6.2     Any and all attorneys' fees and expenses awarded to Plaintiffs' Counsel by the Court shall be paid by the Escrow Agent to Plaintiffs' Counsel from the Settlement Fund at the time established by the Court in conjunction with the Judgment.

6.3     It is agreed that the allowance or disallowance by the Court of any applications by any counsel for fees, costs, and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, is not part of the Settlement, and any order or proceeding

relating thereto, or any appeal from any such order, shall not operate to terminate or cancel this Stipulation or to affect or delay the finality of the Judgment.

<div align="center">

SECTION VII
MISCELLANEOUS PROVISIONS

</div>

7.1    Neither the Stipulation nor the Exhibits hereto nor any action taken to carry out the Stipulation is, may be construed as, or may be used as an admission by or against OXY of any fault, wrongdoing, or liability whatsoever.  Entering into or carrying out the Stipulation and any negotiations or proceedings related thereto shall not in any event be construed as, or be deemed to be evidence of, an admission or concession with regard to the claims of the Plaintiffs or the denials or defenses by OXY, and shall not be offered or received in evidence in any action or proceeding against OXY in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation.

7.2    Within sixty (60) days of the Effective Date, Plaintiffs' Counsel shall return to counsel for OXY all documents that were produced by OXY in this lawsuit, including all copies thereof in the possession of counsel, the Named Plaintiffs, their experts, or any other agents or third parties.  Plaintiffs' Counsel shall also deliver to counsel for OXY the originals and all copies of the transcripts of any depositions taken in this lawsuit in which documents designated by OXY as confidential were discussed or in which testimony designated as confidential was given.

7.3    This Stipulation shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, executors, administrators, heirs and legal representatives, and upon any corporation or other entity into or with which any party hereto may hereafter merge, combine or consolidate, as the case may be; provided, however, that no assignment by any party hereto shall operate to relieve such party of any obligations hereunder.

7.4     This Stipulation may be executed in one or more original or telecopied counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Counsel for the parties to this Stipulation shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

7.5     All of the exhibits attached hereto, as well as the exhibits attached to those exhibits, are hereby incorporated by reference as though fully set forth herein.

7.6     This Stipulation may be amended or modified only by written instrument signed by counsel for OXY and Plaintiffs' Counsel.

7.7     This Stipulation and the exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

7.8     All of the terms of this Stipulation and the exhibits hereto shall be governed by and interpreted in accordance with the laws of the State of Kansas.

7.9     Plaintiffs and all Persons engaged by them to assist them in the prosecution of the Action, including but not limited to their attorneys, experts, accountant, and agents, agree, to the extent permitted by law, that all agreements made during the course of Action relating to the confidentiality of information shall survive this Settlement.

7.10    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation. All parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement and the Stipulation.

7.11   The Plaintiff Class agrees that it will not take further action to pursue the claims described in Section 1.24 until either (1) Judgment is entered in accordance with Section 4.2 or (2) the Court declines to approve this Stipulation.

7.12   All parties agree to deal in good faith in implementing the Settlement and the Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized respective counsel as of the date first above written.

| PLAINTIFFS' COUNSEL | DEFENDANT'S COUNSEL |
|---|---|
| **FLEESON, GOOING, COULSON & KITCH, L.L.C.** <br> 301 N. Main, 1900 Epic Center <br> Wichita, Kansas 67201-0997 <br> Telephone (316) 267-7361 | **SHARP McQUEEN, P.A.** <br> 419 N. Kansas <br> Liberal, KS 67905-2619 <br> (620) 624-2548 |
| -and- | -and- |
| **KRAMER, NORDLING & NORDLING, LLC** <br> 209 East Sixth Street <br> Hugoton, Kansas 67951 <br> Telephone (620) 544-4333 | **HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.** <br> 320 South Boston Avenue, Suite 400 <br> Tulsa, Oklahoma 74103-3708 <br> (918) 594-0400 |
| | -and- |
| | **GABLEGOTWALS** <br> 1100 ONEOK Plaza <br> 100 West 5th Street <br> Tulsa, OK 74103-4217 <br> (918) 595-4800 |
| By: _____ <br>     Gregory J. Stucky | By: _____ <br>     M. Benjamin Singletary |

**Exhibit 1 to Stipulation of Settlement**

## EXHIBIT 1 TO STIPULATION OF SETTLEMENT

At the request of Plaintiffs and Plaintiffs' counsel with respect to the inclusion of Settled Claims, Section 1.26 (2), (3), (4), (5), and (9) of the Stipulation of Settlement, OXY makes the following statement with regard to the matters set forth below:

(1)     Whether OXY Has Used the Correct Starting Point in its Royalty Calculations.

In the normal course of its business, OXY paid royalty based on the royalty owner's percentage interest multiplied by the proceeds received from the sale of that production less a pro rata share of Gathering Charges and Transportation Charges.   The starting point of this calculation is the sales proceeds.  How the sales proceeds have been determined has changed over time.   Prior to the formation of Occidental Energy Marketing Inc. ("OEMI"), OXY determined the sales proceeds for use in payment of royalties to Members of the Plaintiff Class by computing a Weighted Average Sales Price received for gas produced and sold.  After the formation of OEMI, in most cases the sales proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices.  The index prices included but were not necessarily limited to Inside FERC, PEPL (TX, OK), NoNat (Demarc) and WNG (TX, OK, KS).  In some cases, at specific delivery points, a price equal to the price that OEMI receives is used to establish sales proceeds.  It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty.

(2)     Whether OXY Is Correctly Computing Royalties on NGL's and Helium.

OXY now pays (and previously has paid) royalties on NGL's and helium by applying the applicable royalty percentage to one hundred percent (100%) of the proceeds of sale which it receives for liquid hydrocarbons and helium after deducting the cost of processing where

applicable and the applicable severance taxes.  OXY allocates back to each lease on a mmbtu basis with respect to liquids and on a volumetric basis with respect to helium.

(3)     Whether It Is Improper for OXY to Deduct Transportation Expenses.

When and if OXY deducts any expenses incurred for activities that take place after the gas enters the main-line transmission system, those expenses (and related deductions) do not (and will not) include any Gathering Charges, which are defined in Section 1.10 of the Stipulation of Settlement.  When OXY deducts such expenses from its royalty payments, the deduction is for transportation and fuel expenses charged by third parties to transport the gas to the point of sale.  Royalty owners are charged their proportionate share of such expenses, and the Stipulation of Settlement expressly provides for the continued deduction of such expenses.

(4)     Whether the Deductions Are Unreasonable in Amount.

OXY has, in calculating its royalty, deducted from its downstream sales price a pro-rata share of the Gathering Charge assessed by third parties and no more than its actual costs of operating its own Gathering Facilities.  These deductions are shown on royalty checks.  When taking such deductions, OXY has not included any other charge, expense or assessment not shown on the royalty check with respect to activities that take place off the gathering systems involved in this case.

(5)     Compressed and Non-Compressed Volumes.

In the course of finalizing the Settlement Term Sheet, OXY provided data concerning historical volume and gathering deductions attributable to royalty interests for selected Kansas Hugoton properties.  See Exhibit 1 to Settlement Term Sheet.  The information contained on Exhibit 1 represents a reasonable estimate and allocation of production and accounting numbers. OXY reasonably believes that the time and expense that would be required to further refine or

confirm the information contained in Exhibit 1 would outweigh any possible benefit to the refinement that may or may not result from such additional work.  Finally, with respect to the non-compressed volumes contained on Exhibit 1, OXY would advise that it has not been charged transportation charges in excess of the rates provided in FERC tariffs generally applicable to all transporters of gas.

**Exhibit 2 to Stipulation of Settlement**

FLEESON, GOOING, COULSON & KITCH, L.L.C.
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997
Telephone (316) 267-7361

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

| | | |
|---|---|---|
| OPAL LITTELL and CHERRY RIDER,<br>co-trustees of the Opal Littell<br>Family Trust, and BONNIE BEELMAN,<br>individually and as representative<br>plaintiffs on behalf of persons<br>or concerns similarly situated, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 98-CV-51 |
| | ) | |
| OXY USA INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDMENT AND SUPPLEMENT
## TO PETITION

COME NOW the Plaintiffs and Plaintiff Class, and pursuant to K.S.A. 60-215(a) and (d)

and the Stipulation of Settlement between the parties, hereby supplement and amend their

Petition to include the following:

1.    For purposes of describing claims that are to be released pursuant to the Stipulation of

Settlement for acts and omissions occurring prior to July 1, 2007, Plaintiffs and Plaintiff Class

hereby amend and supplement the Petition herein, deemed filed on November 13, 1998, to include,

in addition to those claims identified in the Petition, the following claims:

a.    Under the Leases, or under any legal or equitable theory, OXY USA Inc. ("OXY") should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

b.    OXY failed to use the proper starting point for calculation of royalty to the Plaintiff Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

c.    OXY has failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

d.    OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

e.      Deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

f.      OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

g.      OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 *et seq.*, K.S.A. 55-1614 *et seq.*, and/or under any other legal or equitable theory;

h.      Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties, should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

3

      i.      OXY owes additional royalty, including any royalty in excess of the royalties paid on

100% of the index price with respect to the Gas Purchase Contract effective June 1,

2000 between OXY and OEMI and their respective successors and assigns.

      2.      This amendment and supplement does not apply to, refer to, or seek any relief in

connection with, any acts or omissions by OXY that may occur in the future unless specifically set

forth in the Stipulation, and this amendment and supplement is not intended to make ineffective the

Petition, except to the extent that the Petition is inconsistent or contrary to the language contained

herein.

      WHEREFORE, Plaintiffs and Plaintiff Class pray that their Petition be amended and

supplemented in the manner described above.

Respectfully submitted,

FLEESON, GOOING, COULSON & KITCH, L.L.C.

By_____

      Thomas D. Kitch, #07034
      Gregory J. Stucky, #09674
      David G. Seely, #11397
      301 North Main, Suite 1900
      Wichita, Kansas 67202
      Telephone (316) 267-7361

-and-

      Erick E. Nordling
      KRAMER, NORDLING & NORDLING, L.L.C.
      209 East Sixth Street
      Hugoton, Kansas 67951
      Telephone (620) 544-4333

      *Attorneys for Plaintiffs and Plaintiff Class*

**Exhibit 3 to Stipulation of Settlement**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co-       )
trustees of the Opal Littell Family Trust, and    )
BONNIE BEELMAN, individually and as      )
representative plaintiffs on behalf of persons    )
or concerns similarly situated,          )
                            )
              Plaintiffs,         )
                            )
                            )    Case No. 98-CV-51
vs.                          )
                            )
OXY USA INC.,                   )
                            )
              Defendant.         )
                            )

## NOTICE ORDER

On this _____ day of _____, 2008, this case comes before the Court on the

joint motion of the parties requesting that the Court: (1) conditionally approve the Stipulation of

Settlement ("Stipulation"); (2) approve a Notice for mailing to the Plaintiff Class members; and

(3) schedule a Hearing to consider approval of the Stipulation, the Plan to Allocate the

Settlement proceeds among Plaintiff Class members, the appointment of an Escrow Agent, and

the approval of the amount of attorneys' fees and expenses. Plaintiffs and the Plaintiff Class

members appear by and through Thomas D. Kitch, Gregory J. Stucky, and David G. Seely of

Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas and Erick E. Nordling of Kramer,

Nordling & Nordling, LLC, Hugoton, Kansas. Defendant OXY USA Inc., ("OXY") appears by

and through Kerry McQueen of Sharp, McQueen, McKinley, McQueen & Dodge, P.A., of

Liberal, Kansas, T. Lane Wilson of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. of

Tulsa, Oklahoma and M. Benjamin Singletary of GABLEGOTWALS of Tulsa, Oklahoma.

WHEREUPON, the parties advise the Court that, after lengthy and difficult negotiations, they have entered into a Stipulation of Settlement ("Stipulation") which is subject to approval by this Court pursuant to K.S.A. 60-223 and is attached hereto as Exhibit A.

After hearing statements of counsel, after taking into account matters contained in the Court file and prior proceedings in this matter, and after otherwise being duly advised of pertinent circumstances, the Court makes the following findings:

(1)    The Stipulation sets forth the terms and conditions upon which Plaintiffs and OXY have agreed to settle the claim that OXY has failed to properly calculate and pay royalty under those oil and gas leases identified in the Plaintiff Class description set forth below by deducting from such payments the Gathering Charges as defined in the Stipulation (the "Claim for Wrongful Deductions") and other possible claims (the "Settled Claims"). The definitions in the Stipulation of Settlement are incorporated by reference.

(2)    On March 31, 2001, pursuant to K.S.A. 60-223, the Court certified the Action as a class action for purposes of pursuing the Claim for Wrongful Deductions and defined the class (the "Plaintiff Class") in the manner set forth in the Notice of Class Action mailed to members of the Plaintiff Class on or about July 24, 2001:

> All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas production from above the base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member. Plaintiffs exclude from the plaintiff class the United States of America insofar as its mineral interests are managed by the Mineral Management Service but otherwise include the instrumentalities of the United States of America and federally chartered corporations, including, but not limited to, the Farm Credit Bank of Wichita and Federal Land Bank.

(3)     The Claim for Wrongful Deductions was the subject of a bench trial before the Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from March 31, 2003 until April 7, 2003.  Thereafter, the parties filed proposed findings of fact and conclusions of law and presented oral argument to the Court on May 29, 2003.  In their submissions to the Court, Plaintiffs requested that: (1) OXY be ordered to provide an accounting for all deductions taken by it from royalty payments which it made to each individual member of the Plaintiff Class during the period from November 13, 1993, to the present for Gathering Charges, including fuel; (2) OXY be ordered to cease taking such deductions in the future; (3) OXY be ordered to pay prejudgment interest on the amount of all improper deductions; (4)  the Court determine whether OXY violated K.S.A. 55-1620; and (5) Plaintiffs' recover on other claims asserted in the Pretrial Order filed on October 24, 2002.

(4)     In February of 2007, not having received any ruling from the Court and desiring to bring closure to this litigation, which has now lasted for more than nine (9) years, the parties commenced settlement negotiations.  Those negotiations were complex and difficult and occurred over a period of six (6) months, addressing both the past and the future, involving face-to-face meetings and phone conferences between counsel for the Plaintiff Class and OXY. Finally, on August 9, 2007, the parties reached the agreement which is the subject of this Stipulation of Settlement and subject to court approval.

(5)     During the course of the negotiations described above and in response to inquiries from counsel for Plaintiffs, OXY estimated that the total amount of deductions being disputed in the Action from and after December 1993 through July 2007 and including deductions reflected in its royalty checks to the members of the Plaintiff Class (i.e., for production that occurred during the month of June 2007) would total $23.7 million, not including any liability for

3

prejudgment interest. Although Plaintiffs have no grounds to dispute this and believe that it is within the reasonable range of the computations they have been able to make with their own limited data, they have not (and cannot) perform an audit of such deductions or otherwise provide independent confirmation of the accuracy of such number. For all these reasons, when negotiating and assessing the reasonableness of the Settlement that has been reached, Plaintiffs and their counsel have relied on OXY's estimate of its potential liability for the period described above.

(6)     During the negotiations, OXY requested and Plaintiffs agreed to provide a release of all possible claims of members of the Plaintiff Class against OXY or any related company that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions. Such requested release includes those items listed in paragraphs 1 through 3 above and includes, but is not limited to, the additional items specifically listed in the definition of Settled Claims. The parties recognize that any such release, in order to satisfy the requirements of due process, must be based upon full disclosure of the terms of the settlement to the Class Members, including statements of fact by OXY, when appropriate, upon which they may rely when providing such release in the form set forth elsewhere herein. In this connection, Plaintiffs and their counsel confirm and acknowledge that such statements of fact, which are set forth in Exhibit 1 to the Stipulation, explain why they did not include certain claims in the Action in the first place. Plaintiffs agree to file in the form attached to the Stipulation as Exhibit 2 an Amendment and Supplement to Petition, listing the claims identified in the definition of Settled Claims.

(7)     Plaintiffs and their counsel enter into this Stipulation: (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the

Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class.

(8)    OXY has denied and continues to deny the claims alleged by Plaintiffs against it in the Action.  OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action.  OXY enters into this Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class, and OXY and to avoid the further expense, inconvenience, and disruption of defending against the Action and other possible actions.  OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of the Claim for Wrongful Deductions and the possibility of being required to defend other claims such as those set forth in the definition of Settled Claims.  OXY has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth herein.

(9)    In view of the foregoing, and the other matters of record in the Action, the parties hereto now propose to settle and discharge the Action, in accordance with the terms and provisions of their Stipulation.

(10)    The Court has reviewed the Stipulation agreed to by the parties and, subject to further proceedings, finds that it is fair, reasonable, and adequate.

5

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that:

1. The Stipulation is conditionally approved, subject to further proceedings as set forth in the following paragraphs.

2. OXY has delivered to Plaintiffs' Counsel, in a readily accessible electronic format, the names, the OXY I.D. numbers, tax I.D numbers, and addresses of members of the Plaintiff Class who are currently or formerly OXY USA Inc., royalty owners.

3. On or before January 24, 2008, Plaintiffs' Counsel shall mail to those persons and entities appearing on the list described in paragraph 2, a copy of the Notice, including the Plan of Allocation, which is attached hereto as Exhibit B. The Court approves the Notice attached hereto as Exhibit C, which advises members of the Plaintiff Class that the Action is to be settled on the terms and conditions set forth in the Stipulation, that the Settled Claims will be dismissed with prejudice if judgment is entered pursuant to the Stipulation, that each member has the right to opt out of the Plaintiff Class, and that each remaining member of the Plaintiff Class has the right to appear at the hearing scheduled below to object to any terms of the settlement or to the Plan of Allocation or to the application for attorneys' fees and expenses to be filed by Plaintiffs' Counsel.

4. OXY has delivered to Class Counsel, in a readily accessible electronic format, the following information for each member of the Plaintiff Class: owner number, owner name, owner decimal number, cost center, cost center name, production date, and owner gathering amount (deduction).

5. On or before January 24, 2008, Class Counsel shall post on its website (www.fleeson.com) a preliminary Payment Schedule that assumes that the Plan of Allocation will be approved. The preliminary Payment Schedule need not include any fees and expenses that may later be approved by the Court and need not include any accrued interest, but shall

6

conspicuously state whether such fees and/or interest is so excluded or included. The preliminary Payment Schedule shall refer to members by OXY owner number and not by name. Within ten (10) days of such posting, Plaintiff Class Counsel shall file the preliminary Payment Schedule with the clerk.

6.      Within fifteen (15) days of mailing the Notice, Plaintiff Class Counsel shall file with the clerk an affidavit identifying the persons to whom the Notice has been mailed.

7.      Within ten (10) days after the date provided for mailing of the Notice, Plaintiffs' Counsel shall cause a copy of the Notice, attached hereto as Exhibit D to be published in the publications identified in Section 4.1(f) of the Stipulation, and a week after the first publication, cause a copy of the Notice to be again published in the same newspapers.

8.      Mailing and publication as set forth herein constitutes the best notice practicable under the circumstances, including individual notice to all Plaintiff Class members who can be identified through reasonable effort, and is sufficient notice of the matters set forth in the Notice to all Plaintiff Class members. The Notice together with the mailing and publication set forth herein fully satisfy the requirements of due process as required under K.S.A. 60-223.

9.      On March 4, 2008 at 9:00 a.m., a hearing ("Hearing") will be held in the courtroom in the Stevens County Courthouse, Hugoton, Kansas to determine whether the Stipulation and Plan of Allocation should be finally approved as fair, reasonable and adequate, to consider any objections thereto, to determine whether judgment should be entered as contemplated by the Stipulation, and to consider the application for attorney fees and expenses.

10.     Plaintiffs' Counsel shall file any application for attorney fees and expenses on or before February 20, 2008.

7

11. Any objections to the Stipulation, Plan of Allocation, the preliminary Payment Schedule, or application for award of attorneys' fees and expenses shall be heard and any documents submitted in support of said objections shall be received and considered by the court at the hearing, only if, on or before February 26, 2008, persons making objections follow the procedures set forth in the Notice.

12. Pending final determination of whether the Stipulation should be approved, no participating Plaintiff Class member, either directly, representatively, derivatively, or in any capacity, shall commence or prosecute against OXY, as OXY is defined in the Stipulation, any action or proceeding in any court or tribunal asserting any of the Settled Claims.

13. OXY shall have no right to any portion of the Settlement Fund other than as specified in Section 3.3(d) of the Stipulation.

14. The Hearing may, from time to time, and without further notice to the Plaintiff Class, be continued or adjourned by order of the Court.

IT IS SO ORDERED as of _____, 2008.

_____
Honorable Tom R. Smith, District Judge

**APPROVED:**

| PLAINTIFFS' COUNSEL | DEFENDANT'S COUNSEL |
|---|---|
| **FLEESON, GOOING, COULSON & KITCH, L.L.C.**<br>301 N. Main, 1900 Epic Center<br>Wichita, Kansas 67201-0997<br>Telephone (316) 267-7361<br><br>-and-<br><br>**KRAMER, NORDLING & NORDLING, LLC**<br>209 East Sixth Street<br>Hugoton, Kansas 67951<br>Telephone (620) 544-4333 | **SHARP McQUEEN, P.A.**<br>419 N. Kansas<br>Liberal, KS 67905-2619<br>(620) 624-2548<br><br>-and-<br><br>**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>(918) 594-0400<br><br>-and-<br><br>**GableGotwals**<br>1100 ONEOK Plaza<br>100 West 5th Street<br>Tulsa, OK 74103-4217<br>(918) 595-4800 |
| By:_____ | By:_____ |

781967.1:633090:01230

**Exhibit A to Notice Order**
**(This Exhibit is the Stipulation of Settlement)**

**Exhibit B to Notice Order**

## PLAN OF ALLOCATION

The total amount of Deductions charged to the account of each Participating Class Member shall be determined and the Net Settlement Fund shall be divided among such Participating Class Members based upon the ratio of his or her total Deductions to the total amount of Deductions taken from all Participating Class Members.

EXHIBIT B

**Exhibit C to Notice Order**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER,                    CASE NO. 98-CV-51
co-trustees of the Opal Littell Family Trust,
and BONNIE BEELMAN, individually
and as representative plaintiffs on behalf of
person or concerns similarly situated,

            Plaintiffs,

      v.

OXY USA, Inc.,

            Defendant.

# NOTICE OF PROPOSED
# SETTLEMENT OF CLASS ACTION

### THIS IS AN OFFICIAL NOTICE SENT TO YOU UNDER COURT ORDER FROM THE HONORABLE TOM R. SMITH, PRESIDING JUDGE, TO:

All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas production from above the base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member. Plaintiffs exclude from the plaintiff class the United States of America insofar as its mineral interests are managed by the Mineral Management Service but otherwise include the instrumentalities of the United States of America and federally chartered corporations, including, but not limited to, the Farm Credit Bank of Wichita and the Federal Land Bank.

The above-described persons or entities are called "the Class."

### THIS NOTICE CONTAINS INFORMATION ABOUT YOUR RIGHTS AS A MEMBER OF THE PLAINTIFF CLASS. PLEASE READ CAREFULLY.

You are being sent this Notice because you appear to be a member of the Plaintiff Class. The purpose of this Notice is to inform you that:

1.     The Plaintiffs and OXY USA Inc. ("OXY") have entered into a Stipulation of Settlement (the "Settlement Agreement") pursuant to which they have agreed to settle certain claims which have been asserted or could have been asserted on behalf of the Plaintiff Class against OXY;

2.     The District Court of Stevens County must approve the Settlement Agreement before it can become effective;

3.     You should carefully review the information set forth below to assist you in understanding the nature of the dispute that is being settled and the manner in which you will benefit from such settlement;

4.     The District Court of Stevens County will conduct a hearing on March 4, 2008 at 9:00 a.m. for the purpose of making a final determination as to whether the Settlement Agreement is reasonable, adequate and fair; whether the Plan of Allocation and Payment Schedule proposed by the Plaintiffs for distributing money to the members of the Plaintiff Class should be approved; establishing the amount of the Notice and Administration Fund; awarding attorneys fees and expenses; and considering other matters which may come before the Court; and

5.     You have the right to appear and participate in the above hearing, secure additional information and take such action as you may deem appropriate in accordance with the directions set forth below.

### TO OBTAIN THE BENEFITS OF THIS PROPOSED SETTLEMENT YOU DO NOT HAVE TO DO ANYTHING.

### SUMMARY OF THE LITIGATION

Plaintiffs commenced this action on November 13, 1998, claiming that OXY was improperly deducting expenses, which are generally identified as "gathering/compression" or "marketing deduct" on its monthly gas revenue detail (hereafter referred to as "Deductions"), from their monthly royalty payments.

Throughout this case, OXY has claimed that the Deductions are proper under Kansas law and has continued to subtract such expenses from its royalty payments to plaintiffs.

On March 6, 2001, this Court ruled that this lawsuit could be maintained as a class action, and designated Plaintiffs Opal Littell and Cherry Rider, co-trustees of the Opal Littell Family Trust, and Bonnie Beelman to serve as representatives of the Class, and Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, and Kramer, Nordling & Nordling, LLC, Hugoton, Kansas, to serve as Class Counsel.

On or about July 24, 2001, Class Counsel sent a written "Notice of Class Action" to approximately 2600 members of the Plaintiff Class. Unless you excluded yourself from the Class, the above representative Plaintiffs and Class Counsel have been acting on your behalf in this litigation since that time.

This action was tried to the Court, sitting without a jury, in late April and early May of 2003. The evidence presented by the parties raised numerous issues which the trial judge was requested to resolve, including but not limited to the following:

1.      Whether all or a portion of the expenses being deducted by OXY were (and still are) being incurred to produce the gas in a captive state and in paying quantities.

2.      Whether all or a portion of the expenses being deducted by OXY were (and still are) being incurred to place the gas in marketable condition.

3.      Whether all or some of the leases under which OXY was paying royalties to the Plaintiff Class permit it to deduct expenses incurred off the leased premises, regardless of the purpose for which they were (are) being incurred.

4.      Whether the raw gas produced by OXY is in marketable condition when it emerges from the well.

5.      Whether Kansas law requires OXY to bear all expenses associated with placing the raw gas in the condition required by the pressure and quality specifications set forth in the tariffs published by the transmission pipeline companies, which transport the gas from the Hugoton Field to the markets where it is consumed.

6.      Whether any of the raw gas produced by OXY meets (or has ever met) the tariff specifications without first being compressed, dehydrated, processed or treated on or adjacent to the gathering systems which connect the wells to such transmission pipelines.

7.      Whether any of the raw gas produced by OXY has ever flowed out of (or could ever flow out of) the wells and into the gathering system without the assistance of some or all the compressors located on or at the end of the gathering systems to which the wells are connected.

8.      Whether OXY's utilization of equipment, consisting primarily of pipelines, compressors and dehydrators, owned and operated by third parties in the Hugoton Field (i.e., ONEOK Field Services Company, Duke Energy Field Services, which purchased gathering facilities owned by Panhandle Field Services, Anadarko Gathering Company, Timberland Gathering and Processing Company, El Paso Field Services Company, Panhandle Field Services, Pioneer Natural Resources and Frontstreet Partners, which purchased gathering facilities owned by Williams Field Services) to gather, compress, dehydrate and treat its gas; as well as its utilization of plants not owned by OXY (i.e., Lakin, National Helium, Bushton, Jayhawk, and Satanta) to process such gas, constitutes evidence that its gas is in marketable condition at the wellhead, thereby entitling it to take the Deductions.

9.      Whether the fact that raw gas could be sold at the wellhead or used to heat houses or power engines inside the field, without first being placed in the condition required by the transmission pipeline tariffs, constitutes evidence that the gas which OXY actually delivers to the transmission pipeline is in marketable condition at the wellhead, thereby entitling it to take the Deductions.

During the trial the parties presented thousands of pages of documents and testimony, and expert witnesses were called upon to explain complex principles associated with the production and marketing of natural gas, as well as the economics and practices of the natural gas industry.

Although it has received written briefs and heard oral arguments from the parties suggesting how these issues should be resolved, the Court has not yet ruled on whether OXY is entitled to take the Deductions from its royalty payments to the Plaintiff Class.

You may examine many of the significant papers filed in this lawsuit, including a proposed Preliminary Payment Schedule, by accessing the following Web Site: www.fleeson.com. The official court file may be inspected during regular office hours at the Office of the Clerk, 200 East 6th Street, Hugoton, Kansas 67951.

## **BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT**

OXY estimates that the principal amount of Deductions, excluding any interest, which it subtracted from royalty payments to the Class for gas produced during the period from December 1, 1993, through June 30, 2007, to have been $23.7 million.

Under the Settlement Agreement, upon fulfillment of the conditions set forth below, OXY will deposit $16.7 million, plus simple interest accruing at the rate of 5.625 percent from November 21, 2007, until the date of deposit, in escrow in a banking institution approved by the Court, which is hereafter referred to as the "Settlement Fund" and is to be distributed to the Class in accordance with the Plan of Allocation (see below), in exchange for OXY's full and complete release from liability by the Plaintiffs and the Class (also described below).

OXY will deposit $16.7 million as referenced in the foregoing paragraph after all of the following events occur:

> (a)     The Court enters a Notice Order as set forth in the Settlement Agreement, providing for notice to the Class;

> (b)     The Court enters the Judgment as set forth in the Settlement Agreement;

> (c)     OXY has not withdrawn from the Settlement Agreement pursuant to its terms; and

> (d)     The Judgment becomes final as set forth in the Settlement Agreement.

In addition, when calculating royalty payments to the Class on gas produced on or after July 1, 2007, OXY has agreed to limit Deductions in the following manner:

(1)     Commencing with its payment of royalties on gas produced on or after July 1, 2008, OXY shall cease taking Deductions for fuel used to operate compressors.

(2)    Commencing with its payment of royalties on gas produced on or after July 1, 2007, OXY shall limit its Deductions for Gathering Charges to 15 cents per mmbtu.

The Settlement Agreement cannot be implemented unless and until it has been approved by the Court, which has set this matter for hearing on March 4, 2008.  Not later than 120 days after the settlement has been approved and becomes effective, OXY will make retroactive adjustments  to the royalty accounts of the Class Members, giving them credit for and paying to them the difference between the Deductions taken for expenses other than compressor fuel and the amount (15 cents per mmbtu) which it is allowed to assess for other Gathering Charges under the terms of the Settlement Agreement for gas produced on or after July 1, 2007.

Representative Plaintiffs and Class Counsel believe the settlement is in the best interests of the Class and will present testimony at the hearing that it is fair and reasonable for a number of reasons, including the following:

1.    The benefits generated by the Settlement Agreement far outweigh the risks associated with continuing this litigation.

2.    The avoidance of further delay in a case that has already lasted nine years and otherwise could continue for several more years.

3.    The elimination of uncertainty, including the risk of substantial increases in Deductions due to higher volumes and prices of compressor fuel, with regard to the manner in which royalties will be calculated in the future.

4.    When compared to the total possible future Deductions (fuel plus gathering fees) and  the price received for residue gas, the amount of the gathering Deduction permitted to be taken under the Settlement Agreement (15 cents per mmbtu plus compressor fuel for a period of only one year)  is nominal.

5.    The present value of the substantial curtailment of the Deductions, as reflected in increased royalties to be received by the Class in the future, is substantial.

6.    The relief obtained for the Class is substantially similar to what has been achieved in other settlements approved by the Court in other class actions in the Hugoton Field when the amount at issue is adjusted downward to account for the following unique circumstance:  A relatively small (and steadily declining) percentage of the gas involved in this case flows directly into transmission pipeline facilities without first being compressed, dehydrated or processed. OXY estimates that the gathering fees deducted from royalty payments for this non-compressed gas (exclusive of fuel charges) to have been approximately $3.8 million.

As used in this Notice and for purposes of the payment of damages, the release received by OXY in exchange therefore and the manner in which royalties on residue gas are to be computed in the future, "Deduction" is defined as follows:

Any and all charges, expenses or assessments, including fuel, associated with any and all activities occurring between the wellheads and the point at which the gas

enters a transmission pipeline facility functioning under the terms of a tariff approved by the Federal Energy Regulatory Commission or its successor, including but not limited to compression and dehydration (but excluding the extraction of natural gas liquids, helium or other marketable products in a processing plant), regardless of (1) whether such activities occur on or off the leased premises, (2) what entity provides such services or how it is paid for; and (3) where or how title to the gas is transferred (commonly referred to as "gathering").

It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest on residue gas produced from and after July 1, 2007, shall not be diminished or reduced by any charge other than taxes owed by them and (1) their allocated share of compressor fuel for a period of one year and (2) a gathering fee of 15 cents per mmbtu.

Nothing contained in the Settlement Agreement is intended to alter or restrict OXY's ongoing practice of charging the accounts of its royalty owners with a pro-rata share of the fees and costs which it incurs to process the gas in a processing plant and to transport it on mainline transmission pipelines under approved FERC tariffs, so long as such royalty owners continue to receive the benefits of such activities in the form of their allocated share of the proceeds of sale received by OXY for the natural gas liquids, helium or other extracted products and the residue gas which is sold after such transportation and processing occur.

## RELEASE OF CLAIMS AGAINST OXY BY THE CLASS

In exchange for its payment of the Settlement Fund, OXY requires that it be released from any and all claims that it underpaid royalties due to the Plaintiff Class on gas produced during the period ending July 1, 2007, and any claim that it is not entitled, in the future, to make the Deductions for fuel and gathering charges referenced above. Specifically, if the Settlement is approved, OXY would be released by all members of the Plaintiff Class from:

Any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act, conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to July 1, 2007, that were or could have been properly alleged in the Action and that in any way relate to the Leases, OXY's operation of the Leases or its failure to operate the Leases, including but not limited to claims that OXY improperly deducted expenses or otherwise failed to fully, fairly and accurately account for and pay to its royalty owners what they were due under the Leases.

These are called the "Settled Claims."

As a member of the Plaintiff Class, you will be consenting to the above release of Settled Claims. In this connection, you should understand the following:

1.    The release will not affect any claim not included in the Settled Claims, including a claim for surface damage, nor will it affect mathematical errors or other events requiring subsequent period adjustments which are made by OXY in the ordinary course of its business.

2.    Except as required to bring and pursue this action for allegedly wrongful Deductions, Class Counsel have made no investigation of the manner in which OXY has operated the leases or accounted to the Plaintiff Class for royalties owed to them under such leases.

3.    Other than OXY's subtraction of the Deductions from royalty payments, Class Counsel are not aware of any activities by OXY during the period covered by this lawsuit which gave rise to a claim for damages which they believe could have been meritoriously asserted against OXY on behalf of the Plaintiff Class.

## PROPOSED PLAN OF ALLOCATION AND PAYMENT

If the Court approves the Settlement Agreement, the Settlement Fund, after certain reductions for fees and expenses, plus interest earned thereon, will be distributed to those members of the Plaintiff Class participating in the Settlement ("Participating Class Members") in accordance with the Plan of Allocation approved by the Court.

If the Court approves the Settlement Agreement, the Settlement Fund plus accumulated interest will be reduced by: (1) up to a maximum of $61,000, unless a greater amount is approved by the Court (the "Notice and Administration Fund"), for out-of-pocket expenses incurred to administer the Settlement Fund, including escrow fees, the reproduction and mailing of this Notice, the performance of computations necessary to make distribution to Participating Class Members under the Plan of Allocation, the preparation and submission of a detailed listing of the payments to be made to such Class Members (the "Payment Schedule") to the Court, for its approval, the subsequent distribution of such monies to such Class Members, and related activities; and (2) reasonable attorneys fees and expenses incurred by Class Counsel on behalf of the Plaintiff Class as determined by the Court. The remainder of the Settlement Fund, after such reductions, is called the Net Settlement Fund.

At the Settlement Hearing described below, Class Counsel will request that the Court approve allocation of the Net Settlement Fund on the following basis:

The total amount of Deductions charged to the account of each Participating Class Member shall be determined and the Net Settlement Fund shall be divided among such Participating Class Members based upon the ratio of his or her total Deductions to the total amount of Deductions taken from all Participating Class Members.

"Participating Class Member" means each Class Member who does not "opt out" of the class under the procedure described below.

Prior to the Settlement Hearing described below, Class Counsel will perform the calculations necessary to show what each Class Member would receive under the proposed Plan of Allocation prior to any reduction for any award or allowance made by the Court for the Notice and Administration Fund and attorneys fees and expenses and prior to any accrued interest. Class Counsel will file this "Preliminary Payment Schedule" with the Clerk of the District Court of Stevens County, Kansas, on or before February 4, 2008. You may inspect the Preliminary Payment Schedule in the Clerk's office during normal business hours or by accessing Class Counsel's website (http://www.fleeson.com). Please note that the Preliminary Payment Schedule will identify Class Members by reference to their OXY Owner Numbers and not by name.

No distributions will be made to Participating Class Members until after the Judgment approving the Settlement has become final for all purposes, which will not occur until the time in which an appeal can be filed has expired or any appeal therefrom has been fully resolved.

## APPLICATION FOR ATTORNEYS FEES AND EXPENSES

At the Settlement Hearing described below, the Court will determine the fair and reasonable amount of attorneys' fees and expenses to be awarded Class Counsel. Class Counsel will apply to the Court for reimbursement of out-of-pocket expenses which they have advanced on behalf of the Plaintiff Class and for an award of attorneys' fees. Class Counsel intend to seek reimbursement for such expenses totaling approximately $166,136.00. Class Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third (1/3rd) of the value of the settlement to the Class which remains following payment of: the expenses charged to the Notice and Administration Fund, and the reimbursement of out-of-pocket expenses incurred by Class Counsel and approved by the Court. In their fee application, Class Counsel will not request a percentage of the value represented by the additional royalty income which the Plaintiff Class will receive in connection with gas produced from and after July 1, 2007. No distribution of fees and expenses to Plaintiffs' Counsel will be made until after the Judgment approving the Settlement has become final.

## ELECTIONS BY MEMBERS OF THE PLAINTIFF CLASS

If you are a member of the Plaintiff Class, you have a choice whether to (a) participate in the proposed Settlement by remaining a member of the Plaintiff Class or (b) decline to participate in the proposed Settlement by excluding yourself as a member of the Plaintiff Class. Either of these two choices will have its consequences, which you should understand before making your decision:

If you wish to participate in the proposed Settlement, you are not required to do anything at this time. If the Court approves the proposed Settlement, you would then become entitled to

receive your allocated portion of the Net Settlement Fund under the Plan of Allocation approved by the Court. In return, you would be barred from pursuing any of the Settled Claims against OXY.

If you wish to be excluded from the proposed Settlement, you must complete the attached "Exclusion Request" form and return it to "Clerk of the Court" by mail postmarked no later than February 26, 2008. If you elect to be excluded, you will not be entitled to share in the Net Settlement Fund but will be free to pursue any claims against OXY that you might have on your own and at your own expense.

## THE SETTLEMENT HEARING

A Hearing will be held on March 4, 2008 at 9:00 a.m. in the courtroom of the District Court of Stevens County, Kansas, in the county courthouse, at 200 East 6th Street. Hugoton, Kansas, to determine (a) whether the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Plaintiff Class and should be approved by the Court; (b) whether the preliminary Payment Schedule should be approved; (c) whether the proposed Plan of Allocation for distribution of the Net Settlement Fund should be approved; (d) whether the Notice and Administration Fund should be approved; (e) whether the application for reasonable fees and expenses of Class Counsel should be approved; and to take any further action which the Court deems appropriate.

At that Hearing, Class Counsel will express the opinion that the proposed Settlement is fair, adequate, and reasonable and in the best interest of the Plaintiff Class and should be approved.

Any member of the Plaintiff Class, who does not exclude himself or herself as a member, may appear at the Hearing and object to the proposed Settlement, the proposed Plan of Allocation, the Preliminary Payment Schedule and/or the application for reasonable attorneys fees and expenses of Class Counsel. In order to appear and object, that member must give notice of such person's intention to appear at the Hearing. The Notice must contain: (1) a detailed statement indicating the basis for such objection; (2) a list of any witnesses the objecting party may call; (3) the name to whom the Notice of Proposed Settlement of Class Action that was sent; and (4) the objecting party's current name, address and telephone number. The Notice must be mailed by United States first class mail, postmarked no later than February 26, 2008, to each of the following addresses:

Ms. Koleen Nosekabel, Clerk
Stevens County District Court
200 East 6th Street
Hugoton, Kansas 67951

Mr. Lane Wilson, Esq.
Hall, Estill, Gable, Golden & Nelson, P.C.
320 S. Boston Ave. Suite 400
Tulsa, Oklahoma 74103-3708

Mr. David G. Seely, Esq.
Fleeson, Gooing, Coulson & Kitch, L.L.C.
P.O. Box 997
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997

(To be sure that such statement is handled appropriately, it must begin by referring to "Case No. 98-CV-51")

Any member of the Plaintiff Class who does not make his or her objection in the manner stated may be deemed to have waived such objection and may not be permitted to raise or pursue such objection at the Hearing or any other hearing in this action or any appeal of this action.

A Participating Class Member does not need to appear at the Hearing or take any other action to participate in the proposed Settlement.

The Hearing and any further proceedings may, from time to time, and without further notice to the Plaintiff Class, be continued or adjourned by order of the Court.

## **ADDITIONAL INFORMATION**

Any questions you may have about the matters in this Notice should not be directed to the Court or the Office of the Clerk, but may be directed by telephone or in writing to the following Class Counsel:

Gregory J. Stucky, Esq.
FLEESON, GOOING, COULSON, & KITCH, L.L.C.
P.O. Box 997
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997
Telephone: (316) 267-7361
Fax: (316) 267-1754

Erick E. Nordling, Esq.
KRAMER, NORDLING, & NORDLING, LLC
209 East Sixth Street
Hugoton, Kansas 67951
Telephone: (620) 544-4333
Fax: (620) 544-2230

You may also review many of the important papers filed in this lawsuit at the Web site www.fleeson.com.

PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK ASKING FOR INFORMATION.

Dated: _____, 2008            _____
                                           DISTRICT COURT JUDGE

Littell, et al. v. OXY USA INC, 98 CV 51, Stevens County, KS

## NOTICE OF EXCLUSION FROM THE PLAINTIFF CLASS

### READ THE ENCLOSED LEGAL NOTICE CAREFULLY BEFORE FILLING OUT THIS FORM

The undersigned has read the Notice of Proposed Settlement of Class Action, dated _____, 2008 and does NOT wish to remain a member of the Plaintiff Class described in that Notice, understanding that by executing this exclusion the undersigned will not be entitled to share in the Settlement described therein.

Dated: _____, 2008      Name _____

Owner No.: _____
(from mailing label on envelope)

Address: _____
_____

By: _____
Name
Title, if applicable

If you want to exclude yourself from the Plaintiff Class, you must complete and return this form by mailing it before February 26, 2008, to

Clerk of the Stevens County District Court
Stevens County Courthouse
200 E. 6th Street
Hugoton, KS 67951

A separate request for exclusion should be completed and timely mailed for each person or concern electing to be excluded from the class.

### DO NOT FILL OUT THIS FORM IF YOU WANT TO REMAIN A MEMBER OF THE PLAINTIFF CLASS AND WANT TO PARTICIPATE IN THE SETTLEMENT

784564.1:633090:01230

**Exhibit D to Notice Order**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co-          )
trustees of the Opal Littell Family Trust, and    )
BONNIE BELLMAN, individually and as         )
representative plaintiffs on behalf of persons   )
or concerns similarly situated,                 )
                                                )
        Plaintiffs,                          )
                                                )
                                                )    Case No. 98-CV-51
                                                )
vs.                                             )
                                                )
OXY USA INC.,                                   )
                                                )
        Defendant.                           )
                                                )

## PUBLISHED NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

### THIS NOTICE MAY AFFECT YOUR RIGHTS.
### PLEASE READ CAREFULLY

FROM THE HONORABLE TOM R. SMITH, PRESIDING JUDGE, TO:

All persons or concerns owning mineral interests in lands located in the areal
confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases
owned in whole or in part by defendant with respect to gas production from
above the base of the Panoma-Council Grove Field, whose royalty payments
have been reduced by a "gathering/compression" deduction or "marketing
deduct" identified on the monthly gas revenue detail sent by defendant to
each such member. Plaintiffs exclude from the plaintiff class the United
States of America insofar as its mineral interests are managed by the Mineral
Management Service but otherwise include the instrumentalities of the
United States of America and federally chartered corporations, including, but
not limited to, the Farm Credit Bank of Wichita and Federal Land Bank.

    The above described persons are called the "Plaintiff Class." On March 13, 2001,
pursuant to K.S.A. 60-223, the Court certified the Action as a class action for purposes of
pursuing the Claim for Wrongful Deductions and defined the Plaintiff Class.

The Claim for Wrongful Deductions was the subject of a bench trial before the Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from March 31, 2003 until April 7, 2003. Since that time, the named Plaintiffs and Defendant OXY USA Inc. have reached a proposed settlement of certain claims that would inure to the benefit of and bind each member of the Plaintiff Class who does not elect to exclude himself or herself from the proposed settlement. The Court has scheduled a hearing on March 4, 2008, at 9:00 o'clock a.m., at the Stevens County courthouse located at 200 East 6th Street, Hugoton, Kansas, to consider approval of the proposed settlement, the payment of attorney fees and expenses, the manner in which the proceeds of the proposed settlement should be allocated among the members of the Plaintiff Class, and certain other matters related to the proposed settlement.

A more comprehensive notice has been sent to those members of the Plaintiff Class whose addresses are known. If you fit within the definition of the Plaintiff Class but have not received a mailed notice, contact either of the following attorneys **immediately,**

<table>
<tr><td>Gregory J. Stucky, Esq.,<br>**FLEESON, GOOING,<br>COULSON & KITCH, L.L.C.**<br>125 North Market, Suite 1600<br>Wichita, Kansas 67202<br>Telephone (316) 267-7361</td><td>**or**</td><td>Erick E. Nordling, Esq.,<br>**KRAMER, NORDLING &<br>NORDLING, LLC**<br>209 East Sixth Street<br>Hugoton, Kansas 67951<br>Telephone (620) 544-4333</td></tr>
</table>

and be prepared to supply (1) the legal description of the property in which you own(ed) your royalty interest; (2) any previous name under which you owned or by which you acquired that royalty interest; and (3) any previous address to which your royalty payments were sent by OXY USA Inc.

PLEASE DO NOT CONTACT THE JUDGE OR THE COURT'S CLERK FOR ANY INFORMATION.

DATED, This _____ of _____, 2008          BY THE COURT:


_____
District Court Judge

**Exhibit 4 to Stipulation of Settlement**

**IN THE TWENTY-SIXTH JUDICIAL DISTRICT**
**DISTRICT COURT, STEVENS COUNTY, KANSAS**
**CIVIL DEPARTMENT**

**OPAL LITTELL and CHERRY RIDER,**
**co-trustees of the Opal Littell Family Trust,**
**and BONNIE BELLMAN, individually and**
**as representative plaintiffs on behalf of**
**persons or concerns similarly situated,**

   **Plaintiffs,**

v.            **Case No. 98-CV-51**

**OXY USA INC.,**

   **Defendant.**

(Pursuant to K.S.A. Chapter 60)

## JOURNAL ENTRY OF JUDGMENT

  On this _____ day of _____, 2008, this case comes on for hearing to

consider: (1) approval of the Stipulation of Settlement ("Stipulation") attached as Exhibit A; (2)

approval of the Plan of Allocation of the settlement proceeds among Plaintiff Class members, as

reflected in the Preliminary Distribution Schedule; (3) approval of the amount of attorneys' fees

and expenses; and (4) approval of the form of Escrow Agreement attached hereto as Exhibit C.

Plaintiffs and the Plaintiff Class appear by and through Thomas D. Kitch, Gregory J. Stucky and

David G. Seely of Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas and Erick E.

Nordling of Kramer, Nordling & Nordling, LLC, Hugoton, Kansas. Defendant OXY USA Inc.

("OXY") appears by and through T. Lane Wilson of Hall, Estill, Hardwick, Gable, Golden &

Nelson, P.C., M. Benjamin Singletary of GableGotwals and Kerry E. McQueen of Sharp &

McQueen P.A.

  WHEREUPON, the parties request the Court to give final approval to the Stipulation of

Settlement which was conditionally approved as of _____ __, 2008.

{703529;}

After hearing statements of counsel, after being advised by class representatives concerning the proposed settlement set forth in the Stipulation, after taking into account matters contained in the Court file and prior proceedings in this matter, and after otherwise being duly advised of pertinent circumstances, the Court makes the following findings:

1.     The definitions in Section I of the Stipulation of Settlement are incorporated by reference.

2.     Pursuant to the Notice Order entered as of ____  __, 2008, Plaintiffs' Counsel mailed the Notice approved by this Court to all members of the Plaintiff Class who could be reasonably identified.  In addition, the Notice was published once for two consecutive weeks, in the Wichita Eagle, Wichita, Kansas; Tri-State News, Elkhart, Kansas; Lakin Independent, Lakin, Kansas; Garden City Telegram, Garden City, Kansas; Syracuse Journal, Syracuse, Kansas; Hugoton Hermes, Hugoton, Kansas; Southwest Dailey Times, Liberal, Kansas; The Ulysses News, Ulysses, Kansas; Haskell County Monitor-Chief, Sublett, Kansas; Johnson Pioneer, Johnson, Kansas; and The Hutchinson News, Hutchinson, Kansas.   The Court finds that reasonable notice has been given to members of the Plaintiff Class of this hearing.

3.     The Court then inquired as to whether there was any objection to the claims proposed to be settled and dismissed with prejudice under the Stipulation which are referred to as the "Settled Claims."  No objection was made.  The Settled Claims are defined as any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act,

conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to July 2007, which were or could have been properly alleged and in any way related to the Leases, OXY's operation of the Leases or OXY's failure to operate the Leases, including but not limited to claims that:

(a)     Under the Leases, or under any legal or equitable theory, OXY should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

(b)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any and all claims that OXY failed to use the proper starting point for calculation of royalty to the Plaintiff

Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

(c)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 of the Stipulation, any claim that OXY has failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

(d)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

(e)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

(f)     OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

(g)     OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 et seq., K.S.A. 55-1614 et seq., and/or under any other legal or equitable theory;

(h)     Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties,

should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

(i)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that OXY owes additional royalty, including any royalty in excess of the royalties paid on 100% of the index price with respect to any gas purchase contract between OXY and OEMI and their respective successors and assigns.

4.     The Court then inquired as to whether any members of the Plaintiff Class had elected to exclude themselves from the Plaintiff Class. Attached hereto as Exhibit B is a list of those persons, firms and corporations who filed with the Clerk of the District Court their election to opt out of the Plaintiff Class. As explained in the Notice to members of the Plaintiff Class, K.S.A. 60-223(c)(2) provides that this Court shall exclude any member from the Plaintiff Class if that member so requests. Accordingly, this Court finds that those listed on Exhibit B must be excluded from the Plaintiff Class.

5.     The Court next considered whether the Settlement set forth in the Stipulation should be approved pursuant to K.S.A. 60-223(e).  K.S.A. 60-223(e) provides that an action brought as a class action "shall not be dismissed or compromised without the approval of the court" and that "notice of the proposed dismissal or compromise shall be given to the class in such a manner as the court directs."  The Court directed appropriate notice, which has been given, and, at the hearing held as noticed, all parties interested have had an opportunity to be heard as to whether or not the settlement as set forth in the Stipulation shall be approved by the Court.

6.     Plaintiffs and Plaintiffs' Counsel entered into the Stipulation:  (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class;

7.     OXY has denied and continues to deny the respective claims alleged by Plaintiffs against it in the Action.  OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny its own wrongdoing or legal liability arising out of the conduct alleged in the Action.  OXY entered into the Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class and OXY and to avoid the further expense, inconvenience and disruption of defending against the Action and other possible actions.  OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that

{703529;}                                            6

substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of this lawsuit and the possibility of defending other claims set forth in the definition of "Settled Claims." OXY has, therefore, determined that it is desirable and beneficial to it that the action be settled in the manner and upon the terms and conditions set forth in the Stipulation.

      8.    The Court has considered and has been impressed with the presentation made in support of the settlement, as set forth in the Stipulation, by members of the Plaintiff Class. The lessors who have expressed approval of the settlement as set forth in the Stipulation are owners of substantial mineral interests and, in the Court's view, the expressed opinion of such lessors should be given the highest possible regard, since such individuals, because of their direct personal financial involvement, are most directly affected by the outcome of this action.

      9.    The Court finds that a class action settlement should be approved only if it is fair, reasonable and adequate after comparing the terms of the settlement with the likely rewards of litigation. While this Court need not, and should not, decide the merits of the controversy, this Court notes that there exist serious questions of law and fact which place the ultimate outcome of this litigation in doubt and that, while the Plaintiff Class might possibly ultimately receive more, if the case was to prosecuted to its ultimate conclusion, it is also possible that there would be no recovery.

      10.    The Court finds that the Settlement as set forth in the Stipulation was arrived at through arms-length and vigorous and extensive negotiations between plaintiffs' counsel and counsel for the defendant.

11.     The Court finds that the Settlement as set forth in the Stipulation was arrived at in good faith and was based on a realistic appraisal by the parties and their counsel of the difficulties inherent in a case of this magnitude and complexity.

12.     The Court recognizes that if this Settlement as set forth in the Stipulation had not been reached, even if the Plaintiff Class had prevailed, any recovery would have been delayed for a lengthy period of time given the high probability of an appeal and, in the event of a reversal or modification, a further delay resulting from another lengthy trial.

13.     Based on all of the foregoing, the Court finds the Settlement as set forth in the Stipulation to be bona fide, fair, just, reasonable and adequate.

14.     The Court then considered the Plan of Allocation proposed by the Plaintiffs and Plaintiffs' Counsel, a copy of which is attached hereto as Exhibit D, as reflected in the Preliminary Distribution Schedule filed herein on _____ and posted on the web site maintained by Plaintiffs' Counsel Fleeson, Gooing, Coulson & Kitch (www.fleeson.com) on _____. Defendant OXY took no position as to how the Net Settlement Fund, as defined in the Stipulation, should be allocated among members of the Plaintiff Class.  OXY's position is that the amount paid pursuant to the Stipulation settles all of the Settled Claims as defined in the Stipulation and provides adequate consideration for dismissal with prejudice of all of the Settled Claims.

15.     The Court finds that the Plan of Allocation provides a well-defined method to calculate the amount owed to each member of the Plaintiff Class.

16.     Based on the foregoing, the Court finds that the Plan of Allocation is fair, reasonable, capable of implementation without undue administrative expense, and should be approved along with the Preliminary Distribution Schedule.  In approving the Plan of Allocation,

the Court specifically finds that the consideration paid by OXY, as provided in the Stipulation, fully discharges OXY from any liability with respect to all of the Settled Claims defined in paragraph 3 above, and in particular, those Settled Claims listed in subparagraphs (a) through (i) thereof, for all time periods through the date judgment is entered herein.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that:

1.     The Stipulation is fair, reasonable, bona fide and adequate to the Plaintiff Class as required by K.S.A. 60-223. The Stipulation is approved by the Court and is binding on the Plaintiff Class.

2.     The Settled Claims as defined in paragraph 3 above, for all time periods through the date of this judgment, are fully and completely settled, discharged, and released. Each Plaintiff Class member is deemed conclusively to have released and settled the Settled Claims covering all time periods through the date of this judgment, notwithstanding that any member of the Plaintiff Class may hereafter discover facts in addition to or different from those which the members of the Plaintiff Class now know or believe to be true with respect to the action and the Settled Claims; provided, however, said Plaintiff Class members are entitled to rely upon the statements made by OXY in Exhibit 1 to the Stipulation of Settlement.

3.     All of the Settled Claims as defined in paragraph 3 above, covering all time periods through the date of this judgment, are hereby dismissed with prejudice.

4.     All members of the Plaintiff Class are barred and permanently enjoined from commencing or prosecuting either directly, representatively, derivatively or in any capacity, any of the Settled Claims as defined in paragraph 3 above, for all time periods through the date of this judgment, against OXY and its respective predecessors and successors, and all of its present

and former principals, officers, directors, employees, agents, shareholders, investors, insurers, affiliates, assigns, representatives, heirs, executors and administrators.

5.    The Plan of Allocation attached as Exhibit D, along with the Preliminary Distribution Schedule, are approved as fair, reasonable and adequate to the Plaintiff Class.

6.    The persons, firms and corporations listed on Exhibit B attached hereto have opted out of the Plaintiff Class and are excluded from the Plaintiff Class pursuant to K.S.A. 60-223(c)(2).

7.    The Court finds that Plaintiffs' Counsel should be reimbursed $ _____ for expenses advanced by them in this action, that the amount of the Notice and Administration Fund shall be $ _____ and that said counsel should be awarded reasonable attorneys' fees calculated as follows:

and directs that such fees and expenses be paid to Plaintiffs' Counsel from the Settlement Fund.

8.    Plaintiff Class Counsel shall file a Final Payment Schedule with the Clerk of the District Court on or before _____ __, 200__. The Final Payment Schedule shall utilize the same calculations set forth in the Preliminary Payment Schedule, adjusted by the addition of accumulated interest and reduced by the fees and expenses set forth in the preceding paragraph.

8.    The Court approves the form of Escrow Agreement attached hereto and the appointment of Intrust Bank, N.A., Wichita, Kansas, as the Escrow Agent thereunder.

9.    The Court reserves jurisdiction, without affecting the finality of judgment, to supervise the implementation of the Settlement.

IT IS SO ORDERED.

_____
TOM R. SMITH, DISTRICT JUDGE

**APPROVED:**

_____

T. Lane Wilson, OBA #16343
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 400
Tulsa, OK  74103-3708
Telephone (918) 594-0400

-and-

M. Benjamin Singletary, OBA #8273
**GABLEGOTWALS**
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4217
Telephone (918) 595-4800

_____

Thomas D. Kitch
Gregory J. Stucky
David G. Seely
**FLEESON, GOOING, COULSON &**
**KITCH, L.L.C.**
125 North Market, Suite 1600
Wichita, Kansas 67202
Telephone (316) 267-7361

_____

Kerry E. McQueen
**SHARP & McQUEEN, P.A.**
419 N. Kansas - P.O. Box 2619
Liberal, KS 67905-2619
Telephone (316) 624-2548

_____

Erick E. Nordling
**KRAMER, NORDLING & NORDLING,**
**LLC**
209 East Sixth Street
Hugoton, Kansas 67951
Telephone (620) 544-4333

764142.1:633090:01230

**Exhibit A to Journal Entry of Judgment**
**(This Exhibit is the Stipulation of Settlement)**

**Exhibit B to Journal Entry of Judgment
(Opt Out List)**

**Exhibit C to Journal Entry of Judgment**

## ESCROW AGREEMENT

This ESCROW AGREEMENT (the "Agreement") is entered into this __ day of _____, 2008, by and among Plaintiffs and Plaintiffs' Counsel in Opal Littell and Cherry Rider, co-trustees of the Opal Littell Family Trust, and Bonnie Beelman, individually and as representative plaintiffs on behalf of persons or concerns similarly situated, v. OXY USA Inc.; Case No. 98-CV-51, in the Twenty-Sixth Judicial District, District Court, Stevens County, Kansas, OXY USA Inc. ("OXY"), and Intrust Bank, N.A., Wichita, Kansas (the "Escrow Agent.")

### RECITALS

WHEREAS, Plaintiffs' Counsel have been delegated certain duties in the Stipulation of Settlement which is attached hereto as Exhibit 1; and,

WHEREAS, on the __ day of _____, 2008, the District Court of Stevens County entered its Journal Entry of Judgment, which is attached hereto as Exhibit 2; and,

WHEREAS, pursuant to the terms of the Stipulation of Settlement as approved by the Journal Entry of Judgment, OXY is obligated to deposit $16.7 million plus accrued interest in escrow within ten business days of the Effective Date, as defined in the Stipulation of Settlement; and,

WHEREAS, the District Court of Stevens County has approved the form of this Escrow Agreement and the designation of Intrust Bank, N.A., as Escrow Agent hereunder.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants, terms and conditions set forth in this Agreement, the parties hereto agree as follows:

{703538;}

1.      Unless otherwise defined herein, the capitalized terms used herein shall have the same meaning as those terms defined in the Stipulation.

2.      Appointment of the Escrow Agent.  Intrust Bank, N.A. is hereby appointed to serve as Escrow Agent hereunder and agrees to perform the duties set forth herein.

3.      Deposit of Escrow Amount.  Within ten business days of the Effective Date as defined in the Stipulation of Settlement, OXY will deposit with the Escrow Agent, the sum of $16.7 million plus accrued interest.  The deposit is hereafter referred to as the "Escrow Amount."

4.      The Escrow Fund.  The Escrow Amount and the balance remaining therein at any given time as amounts are withdrawn (the "Escrow Fund") shall be held by the Escrow Agent as a trust fund in a separate account on the terms and subject to the conditions of this Agreement.

5.      Permitted Disbursement from Escrow Fund.  Subject to the limitations described in paragraph 8 below, the Escrow Agent shall take such actions with respect to the Escrow Fund as are authorized from time to time by the District Court of Stevens County, Kansas ("the Court") or by instructions from all or some of the parties hereto, as more particularly described herein.  Escrow Agent's sole obligation shall be to comply with such duly approved and executed Orders and with such instructions, and Escrow Agent shall be entitled to rely on certified copies of Orders of the Court and on instructions of the parties as more fully described herein.

6.      Investment of the Escrow Fund.  The Escrow Agent shall forthwith invest all of the Escrow Amount in Securities Sold under Repurchase Agreements.  Securities sold nightly will be invested in either U.S. Government Securities or U.S. Agency Securities.  A demand deposit checking account will also be established.  Disbursement checks will be drawn on the demand deposit checking account.  The remaining Escrow Fund will be swept one hundred

percent into Securities Sold Under Repurchase Agreements every night. In exchange for services rendered hereunder, the Escrow Agent shall be entitled to retain all interest generated as the result of such investment.

7.    <u>Termination.</u> This Agreement shall terminate when the entire amount of the Escrow Fund has been distributed.

8.    <u>Duties and Obligations of the Escrow Agent.</u> The duties and obligations of the Escrow Agent shall be limited to and determined solely by the provisions of this Escrow Agreement, the Orders issued from time to time by the Court, and written instructions signed by all or some of the parties as more specifically described below. Although a copy of the Stipulation is attached hereto for the convenience of the parties thereto, Escrow Agent is not charged with knowledge of any duties or responsibilities contained therein or in any other agreement or document. In furtherance and not in limitation of the foregoing, the parties to this Escrow Agreement agree that the Escrow Agent shall make distributions in accordance with the following provisions:

(a)    The Escrow Agent shall reimburse expenses incurred by Plaintiffs' Counsel for expenses chargeable to the Notice and Administration Fund as provided in the Stipulation of Settlement, in accordance with such Orders as may be issued by the Court upon application of Plaintiffs' Counsel;

(b)    The Escrow Agent shall distribute to Plaintiffs' Counsel the attorneys' fees and expenses provided by the Court, in accordance with such Orders as may be issued by the Court upon application of Plaintiffs' Counsel;

(c)    The Escrow Agent shall distribute the Net Settlement Fund to Participating Class Members in accordance with the written instructions of Plaintiffs'

Counsel, which shall be in the form of checks made payable to Participating Class Members;

(d)     The Escrow Agent shall not be liable for any loss of earnings or reduction in the value of the principal resulting from its compliance with the directions contained herein or in any Order issued by the Court, with regard to the investment of the Escrow Amount or the Escrow Fund, including any liquidation of any investment prior to its maturity;

(e)     The Escrow Agent shall be fully protected in relying in good faith on the contents of any Order issued by the Court or on the instructions of the parties as provided for herein;

(f)     The Escrow Agent shall not be liable for any error of judgment, or for any act done or omitted by it, or for any mistake in fact or law, or for anything it may do or refrain from doing in connection herewith; provided, however, that notwithstanding any other provision in this Agreement, the Escrow Agent shall be liable for its willful misconduct or gross negligence or breach of this Agreement;

(g)     The Escrow Agent may seek the advice of legal counsel selected with reasonable care in the event of any dispute or question as the construction of any of the provisions of this Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the opinion of such counsel;

(h)     The Escrow Agent may execute any of its own powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through agents or attorneys selected with reasonable care and shall not be responsible for and shall not be

under a duty to examine into or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto;

(i)     In view of the provisions of Paragraph 6 above, Escrow Agent acknowledges that the Escrow Fund will not generate any income that would be taxable to the fund itself or to the parties hereto or to the recipients of distributions therefrom. The Escrow Agent shall (i) maintain copies of the certified Orders of the Court, the instructions given by the parties pursuant to this Escrow Agreement, and records of all receipts and disbursements, as well as each investment and reinvestment, performed in accordance with such Orders and instructions; and (ii) shall provide copies of such records to Plaintiffs' Counsel and OXY upon request and upon termination of this Agreement.

(j)     Any dispute concerning the distribution of funds from the Escrow Account shall be resolved in arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.

9.     Escrow Fees and Expenses.   In addition to the compensation described in Paragraph 6 above, the Escrow Agent shall be paid a fee in the amount of five thousand dollars ($5,000.00) for services to be rendered under this Agreement. In addition, Escrow Agent shall be entitled to be reimbursed for any and all out-of-pocket expenses incurred by it in connection with the discharge of its duties hereunder. Escrow Agent shall also be indemnified and held harmless against any and all expenses and fees, including reasonable attorney fees, which it may incur under Paragraph 8(g) above, as well as the reasonable costs and expenses of defending against any claim or liability relating to this Agreement; provided, however, Escrow Agent shall

not be indemnified or held harmless with regard to a meritorious claim for its own willful misconduct or gross negligence.

      10.    **Limitation of OXY's Liability.**  OXY shall have no responsibility to oversee, review or approve any distributions made by the Escrow Agent.

      11.    Resignation or Removal of the Escrow Agent.

      (a)    The Escrow Agent may resign as such 30 days following the giving of prior written notice thereof to the Plaintiffs' Counsel. In addition, the Escrow Agent may be removed and replaced on a date designated in a written instrument signed by the Plaintiffs' Counsel and OXY and delivered to the Escrow Agent. No such resignation or removal shall become effective until a successor escrow agent has acknowledged its appointment as such as provided in paragraph (c) below. In either event, upon the effective date of such resignation or removal, the Escrow Agent shall deliver the property comprising the Escrow Fund to such successor agent, together with such records maintained by the Escrow Agent in connection with its duties hereunder and other information with respect to the Escrow Fund as such successor may reasonably request.

      (b)    If a successor escrow agent shall not have acknowledged its appointment as such as provided in paragraph (c) below, in the case of resignation, prior to the expiration of 30 days following the date of a notice of resignation, or in the case of removal, on the date designated for the Escrow Agent's removal, as the case may be, because Plaintiffs' Counsel have been unable to designate such successor escrow agent, or for any other reason, the Escrow Agent may select a successor escrow agent and any such resulting appointment shall be binding upon all of the parties to this Agreement.

(c)     Upon written acknowledgment by a successor agent appointed in accordance with the foregoing provisions of this Section 10 of its agreement to serve as escrow agent hereunder, and the receipt of the property then comprising the Escrow Fund, the Escrow Agent shall be fully released and relieved of all duties, responsibilities and obligations under this Agreement, subject to the proviso contained in Paragraph 8(h), and such successor escrow agent shall for all purposes hereof be the Escrow Agent.

12.     Miscellaneous.

(a)     Waiver of Breach.  No breach of any provision in this Agreement shall be deemed waived unless expressly waived in writing by the party who might assert such breach.  No waiver by any party of any breach or right hereunder shall operate as a waiver of any other breach or right or the same or a similar breach or right on another occasion.

(b)     Entire Agreement/Modification.  This Agreement shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supercede all previous oral and written and all contemporaneous oral negotiations, commitments, agreements and understanding relating hereto.  Any modification of this Agreement shall be effective only if it is in writing and signed by the parties to this Agreement.

(c)     Governing Law.  The validity of this Agreement and the interpretation and performance of all its terms shall be governed by the laws of the State of Kansas.

(d)     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but together shall constitute one and the same document.

(e)    Survival.  Each of the provisions of this Agreement shall survive the execution hereof.

(f)    Assignment.  This Agreement may not be assigned by the Escrow Agent to a third party without the prior written consent of both Plaintiffs' Counsel and OXY's counsel.

13.    Effective Date of this Agreement.

This Agreement shall become effective as of the date on which OXY makes the deposit referred to above.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed and delivered as of the date first written above.

**INTRUST BANK, N.A.,**
"Escrow Agent"


By:_____


**FLEESON, GOOING, COULSON & KITCH, LLC,**
counsel for Plaintiffs and the Class


By:_____
Thomas D. Kitch


**HALL, ESTILL, HARDWICK, GABLE, GOLDEN
& NELSON, P.C.,**
counsel for Defendant


By:_____
T. Lane Wilson


784883.1:999914:00014

**Exhibit 2 to Escrow Agreement
(This Exhibit is the same as
Exhibit 4 to Stipulation of Settlement)**

**Exhibit 1 to Escrow Agreement**
**(This Exhibit is the same as the Stipulation of Settlement)**

**Exhibit D to Journal Entry of Judgment**
**(This Exhibit is the same as Exhibit B to Notice Order)**

ELECTRONICALLY FILED
2018 Aug 07 PM 4:54
CLERK OF THE GRANT COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000039

### IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 2 to**

**PLAINTIFF'S MOTION TO AMEND CLASS ACTION PETITIONS
IN MORTON COUNTY CASE NO. 2016-CV-13 AND
GRANT COUNTY CASE NO. 2017-CV-39
AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

s/Barbara C. Frankland
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

Eric L. Witcher KS#14344
Graybill, Witcher & Carey, LLP
450 Morton Avenue
Elkhart, KS 67950
(620) 697-4514
(620) 697-4502 (fax)
ewitch67950@yahoo.com
*Plaintiff's Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:

Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

s/Barbara C. Frankland__
Barbara C. Frankland

IN THE DISTRICT COURT OF ~~MORTON~~ <u>GRANT</u> COUNTY, KANSAS

| | |
|---|---|
| ~~Phillip Fink,~~ <u>COOPER CLARK FOUNDATION</u> ) | |
| on behalf of ~~himself~~_____)<u>itself</u>_____)   Case No. | |
| <u>2016-CV-39</u> | |
| and all others similarly situated,_____)_____)   **LEAD** | |
| **CASE** | |
| ) | |
| Plaintiff,                                      )   <u>**Consolidated with:**</u> | |
| _____) | |
| _____ | |
| ~~v.~~_____                                  )   Case No. _____2016-CV-17 | |
| _____) | |
| <u>v.</u>_____)   (Haskell County)_____ | |
| _____)           <u>and</u> | |
| _____)   <u>Case No. 2016-CV-13</u> | |
| <u>Oxy USA, Inc.,</u>_____) | |
| <u>(Morton County)</u> | |
| )_____ | |
| _____<u>Defendant.</u>_____) | |
| (Pursuant_____)   <u>**\*This filing pertains only to**</u> ~~Chapter 60)~~ | |
| | |
| | |
| _____)   **Case No. 2016-CV-13** | |

<u>**FIRST AMENDED CLASS ACTION PETITION**</u>

Plaintiff brings this class action to recover royalties due on ~~gas,~~<u>Residue Gas only,</u>[1] and

would show the Court as follows:

<u>**NATURE OF THE ACTION**</u>

<u>1.</u>____The prior class action *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct.

Stevens Cnty~~)~~<u>.)</u> settled <u>state-wide</u> claims for the improper <u>deductions from royalties. *See* Stip. of</u>

<u>Settlement, *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.) ("*Littell*</u>

---

[1]____Plaintiff drops its claims for underpayment of royalty on NGLs and Helium and focuses its claims on the underpayment of royalty on Residue Gas only.

Settlement"), attached hereto as **Exhibit 1**.

2.      As part of the *Littell* Settlement, the *Littell* Class and OXY agreed that OXY would limit its deduction of ~~Midstream GCDT~~"Gathering Charges" to $0.15/MMBtu from royalty paid for gas production after July 2007. (*Littell* Settlement ¶2.5; *see also id.* at ¶2.6). The *Littell* Settlement defines "Gathering Charges" as "all charges, expenses, or assessments, including fuel associated with any and all activities occurring between the wellhead of any well producing gas…and the inlet to any mainline transmission facility.…Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred." (*Littell* Settlement ¶1.10). Plaintiff asserts no claim for Gathering Charges because OXY appears to deduct only $0.15/MMBtu from royalty as agreed under the *Littell* Settlement.

3.      In other respects, however, OXY appears to violate provisions of the *Littell* Settlement, specifically:

a.      OXY agreed not to deduct any "Fuel Charges" from royalty on gas produced on or after July 1, 2008. (*Littell* Settlement ¶2.4). "Fuel Charges" is defined as "gas used to operate compressors located on a Gathering Facility." (*Littell* Settlement ¶1.9). "Gathering Facility" is defined as "all activities occurring between the wellhead of any well producing gas… and the inlet to any mainline transmission facility…" (*Littell* Settlement ¶1.11). But despite these provisions, OXY continues to deduct "Fuel Lost & Unaccounted for" ("FL&U") from royalty; thereby, paying royalty on less than the full volume of gas produced from the Class Wells;

b.      The *Littell* Settlement allows OXY to deduct from royalty "all fees and costs

2                          ~~18~~

payable to third-party mainline transmission companies so long as those fees and costs are incurred ~~before the~~ pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services." (*Littell* Settlement ¶2.8). But mainline transmission costs are for transportation of Residue gas on the high pressure transmission line, in this case, at the tailgate of the processing plant.[2] after recompression so that the Residue can enter the high pressure line. But OXY has not limited its transportation deductions to the mainline transmission lines. Instead its deductions include other undisclosed components that OXY is calling mainline transportation. This practice violates the *Littell* Settlement.

4.      Apart from the *Littell* Settlement, OXY gives away gas from the Class Wells for the Midstream Service Provider to use as fuel to run its plant operations, i.e. "Plant Fuel". Processing and the Plant Fuel consumed during processing separates raw-make NGLs from Residue and is usually charged against Residue. Under the gas contract applicable in this case, title to the Residue Gas remains with OXY and never transfers to Regency Midcon Gas, LLC.[3] Under

---

[2]      ~~In *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016. *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit. *Id.* (ECF No. 239). Judge Melgren suggested that the case might have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case is the result.~~

[3]      In *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016. *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit. *Id.* (ECF No. 239). Judge Melgren suggested that the case might

*Fawcett v. Oil Producers, Inc., of Kansas,* there is no sale, or even purported sale, before the gas is processed, making the Plant Fuel non-deductible as a processing fee.

5.      Also apart from the *Littell* Settlement, OXY paid royalty on a starting price significantly less than either the Index Price or Weighted Average Sales Price ("WASP") under the OXY/OEMI contracts.

6.      Additionally, given the affiliate relationship between OXY and OEMI, OXY should have paid royalty on the highest of the two starting prices (Index or WASP) at which OEMI sold the Residue Gas to third parties in arm's length transactions.

7.      As in the original petition, Plaintiff includes the claim for interest on the amounts that OXY refunded in unlawfully withheld Conservation Fees.

1.8.      Plaintiff and the Class bring claims based upon OXY's underpayment of royalties based on deductions taken ~~after~~in violation of the *Littell* Stipulation of Settlement, and taken during processing ~~plant inlet~~to obtain Residue, all as more fully described above and below.

## VENUE AND JURISDICTION

2.9.      This Court has both specific and general jurisdiction over Defendant because its wrongful acts occurred and caused damages to Plaintiff and Class members in this County, and Defendant is authorized to do and does or did substantial business in Kansas, both generally and specifically as to this case.

3.10.      Venue is proper in this Court because many, if not all, of the wells, including Plaintiff's well, and royalties therefrom, are located in this County.

---

have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case based on one gathering and processing agreement, as well as the Master Service Agreement and Master Gas Sales and Purchase Agreement between OXY and its affiliate OEMI, is the result.

## PARTIES

4.11.    Plaintiff is a royalty owner in ~~one or more~~at least the Williams J #1; Baughman O; Ellis B; and Smith O wells in ~~this~~Morton County, which Defendant operated and marketed gas from~~. In paying~~ under a Gathering and Processing Agreement with Regency Midcon Gas, LLC (dated September 1, 2003), paid royalties on gas produced, ~~Defendant~~and deducted Processing costs~~.~~ from those royalty payments.

5.12.    Defendant OXY USA Inc. ("OXY") is believed to be a Delaware corporation with its principal place of business in Texas, authorized to do business in the State of Kansas, and doing business in the State of Kansas. ~~OXY can be served by serving~~Service of process was obtained through OXY's resident agent, The Corporation Company, Inc.~~, 112 SW 7th Street, Suite 3C, Topeka, KS 66603~~. OXY has already appeared in this action.

a.      OXY is (or was during the Class Period) in the business of producing and marketing gas and constituent products from the wells in which Class members hold royalty interests.

b.      ~~OXY was the third largest operator of natural gas wells in Kansas from 2010-2014, producing 8.6% of the total gas volume in Kansas, and sold all of its Kansas leases, wells, and assets to Merit Energy in 2014, and paid royalties to Class members through April, 2014.~~

c.      ~~OXY marketed almost all of its Kansas residue gas and almost half of its NGLs through its affiliate, Occidental Energy Marketing, Inc. ("OEMI"), which OEMI then resold to third parties.~~

b.      During the Class Period, July 1, 2007 to April 30, 2014, OXY was one of the largest gas producers in this County. And, from 2010 to 2014, OXY was the third

largest operator of natural gas wells in Kansas, producing 8.6% of the total gas volume in Kansas.

  c. OXY marketed all of its Kansas residue gas to its affiliate, Occidental Energy Marketing, Inc. ("OEMI") at Index price, which OEMI then resold to third parties at WASP which was often higher than Index.

  d. In 2014, OXY sold all of its Kansas leases, wells, and assets to Merit Energy Company. OXY paid royalties to Class members through April, 2014, the end date of the proposed Class Period in this case.

## ROYALTY UNDERPAYMENT FOR GAS

6.13. Raw gas taken from Plaintiff's wells, and ~~that~~ from the wells of all Class members ~~contain~~, contains various valuable elements and substances along with worthless and deleterious substances.

7.14. During the Class Period, Defendant had a working interest in each of Plaintiff's wells and ~~that~~in the wells of every Class member.

8.15. In the leases covering the wells in which Plaintiff and the Class Members own royalty interests, Defendant had an implied covenant to market the valuable elements and substances ~~contained in each lease with Plaintiff and all Class members.~~.

9.16. None of the leases upon which Class Wells exist *expressly* authorized all of the deductions from royalty owners complained of in this case.

10.17. Raw gas, including its valuable constituent parts, produced from Class Wells during the Class Period was never ~~been~~ sold "at the well" or "at the mouth of the well~~.~~," but off the lease.

11. Instead, ~~all of~~ the gas from Class Wells was first sold:

  (a) as Residue after processing, to OEMI ~~and thereafter in an arm's length transaction;~~

or,

(b)  as NGLs after processing (including TF&S), either to as Residue Gas. OEMI or to a third party.

12.    To be in marketable condition, the valuable gas components must be segregated from: (a) the raw gas stream, (b) the worthless and deleterious components, and (c) each other, to achieve the fungible quality necessary for trading in a market. The fungible product is then priced and completely sold in a real commercial market.

13.    For the gas from each Class Well, this segregation into marketable products requires one or more of the following processes: (a) separation of liquids from gas; (b) Gathering; (c) Compression; (d) Dehydration; (e) Treatment; and (f) Processing (including helium processing to Grade A and TF&S for NGLs).

14.    This segregation process is sometimes known as gas conditioning, field services, post-production, or Midstream Services.

15.    While it is possible to "sell" gas and its valuable constituent parts before it is commercial grade or marketable condition, such as to a local irrigator, less than 2% of the gas is sold that way, and even then the products are priced at commercial grade. None of the gas from Class Wells was produced and marketed during the Class Period to be sold only to local irrigators, and none of the Class gas is sold that way, rather it is marketed under gas contracts.

16.    All other gas and its valuable constituents, which includes all Class gas, was sold at commercial grade, or not sold at all but given away to the Midstream Service Provider as an in-kind fee for services.

17.    Some of the gas marketing contracts fictitiously refer to paper title transfers at the gathering line inlet, but in truth, the gas (and its valuable constituents) was not and could not be

7                          18

sold there because, among other reasons:

> a. During the Class Period, none of the gas or its constituent parts is in commercial grade at the gathering line inlet;

18. b. There is no fungible commercial grade market price index at the gathering line inlet; such commercial grade market index prices only occur at the Residue Gas interstate pipeline index pool for "pipeline quality" gas that meets the FERC tariff quality, at fractionated NGL commercial quality posted pricing (known as OPIS), and at Grade A commercial grade pricing; in arm's length transactions to one or more third-parties to obtain generally a higher WASP price.

> c. Custody transfer occurs at the gathering line inlet so that third parties, rather than OXY, can perform gathering and processing services. But even if paper title transfers, no sale is completed at the custody transfer meter. Under some types of gas contracts (but not others), so-called paper title transfer purports to occur there, but the risk of loss and downstream gas conditioning costs remain on OXY. Likewise, the Midstream Service Provider continues to owe contractual duties to OXY after the title transfer, including the obligation to use its best efforts to sell the gas and constituent parts in the actual commercial market and remit all or most of the proceeds therefrom to OXY.

19. Even if a paper title transfer at the gathering line inlet could be considered a sale, it would be bad faith to include a title transfer clause at the gathering line inlet since the same Midstream Services could be obtained for the same price without it.

20. Plaintiff and the Class complain in this case about not being paid the full gross value for all valuable constituents coming from Class Wells. Instead, OXY paid royalties on the net value after deducting Processing costs.

21. ~~**Uniform Processing Deductions Taken**. In the *Littell* Settlement, OXY represented: "OXY now pays (and previously has paid) royalties on NGLs and Helium by applying the applicable royalty percentage to one hundred percent (100%) of the proceeds of sale which it receives from liquid hydrocarbons and helium *after deducting the cost of processing* where applicable." *See Littell* Settlement Exhibit 1, ¶ 2, P's Ex. 32C (emphasis added). Incredibly, sometimes OXY did not even pay at all for the valuable helium that came from Class Wells.~~

22. ~~In addition, the gas marketing contracts refer to a sale to Occidental Energy Marketing Inc. ("OEMI"), an affiliate of OXY, which later resells NGLs and/or Residue Gas to a third party in an arm's length sale.~~

19. ~~OXY Pays~~All of the Class Residue Gas produced from Class Wells is marketed, but not sold, under the September 1, 2003 gas contract between OXY and Regency Midcon Gas, LLC.

23. ~~**OXY Paid**~~ **Royalty** ~~Owners a~~**Using Lower Affiliate Sale Price** ~~Rather than the Commercial Price~~. ~~Defendant has~~. OXY admitted in the *Littell* Settlement Agreement, Ex. 1, that it ~~sells~~sold Residue Gas to ~~OEMI at Index price and that~~ OEMI ~~at~~ sometimes received higher than Index price ~~but sometimes~~when it sold the Residue Gas to third parties. OXY claimed that it was entitled to keep this differential and owed nothing to the royalty owners when OEMI ~~receives~~received a higher than Index price. ~~Furthermore, "~~*See Littell* Settlement, Exhibit 1, ¶1 ("It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of index price, if any, are for services provided by OEMI and are not subject to royalty.~~"~~

~~24.~~20. ~~Plaintiff and the Class complain in this case about being paid based on the affiliate sale price, instead of the higher arm's length third party starting price. .~~.")[4] However, OXY cannot use a

---

[4]   OEMI charged OXY a marketing fee under the Master Services Agreement. OXY claims it did not deduct this fee from royalty owners so Plaintiff does not seek recovery of that fee. But

sale to its affiliate to obtain for itself a starting price higher than the starting price on which it bases its royalty payments. The starting price on which OXY paid royalty should be the higher of the Index or WASP price that OEMI obtains in its sale of the Residue Gas in the arm's length transactions with third parties, and nothing less.

25.21.  **Illegal Conservation Fee.** Defendant wrongfully deducted from royalties the statutory Conservation Fee that it owes to help fund the KCC, but. But, under *Hockett,* royalty owners do not owe the statutory Conservation Fee. *Hockett v. Trees Oil Co.,* 292 Kan. 213, 251 P.3d 65 (2011). In 2012, OXY refunded the Conservation Fees illegally deducted, due to the *Roderick* lawsuit previously filed, *see supra* n.13, but OXY did not pay interest on refunded amounts at the full 10% per annum interest. Accordingly, Plaintiff seeks to recover interests on the principal amounts refunded.

26.22.  Defendant settled similar claims in Kansas under *Littell* before July 1, 2007, so this case only seeks recovery for these wrongful deductions on or after July 1, 2007.

27.  *~~Marketable Product Rule and Good Faith.~~*

a.  ~~OXY may contend that the Class gas and its constituent parts are marketable products before or at the gathering line inlet so that all Midstream Service Costs are deductible, including the Processing cost disputed.~~

b.  ~~Plaintiff and the Class contend that the gas and its constituent parts are not marketable products until after the Midstream Services have been completed so the gas constituents are in fungible commercial grade, ready for a complete and~~

---

Plaintiff does seek to recover royalty on the higher price that OEMI received even though OXY claims that OEMI did not always get a higher WASP price. But OEMI usually got a higher WASP price for the Residue Gas from Class Wells. Royalty owners should have gotten that higher price too.

~~absolute sale, in a commercial market to a third party in an arm's length~~

~~transaction. Second, under the facts of this Class case, any sale before Processing~~

~~would not be in good faith and would not be for the mutual benefit of lessor and~~

~~lessee.~~

**~~28.~~23.   The *Fawcett* Case Was Decided On Concessions Not Made Here.**

a.      ***Fawcett* Concession #1**: "The gas in this case was sold at the wellhead."

*Fawcett v. Oil Producers of Kansas, Inc.,* <u>302 Kan. 350, 359,</u> 352 P.3d 1032~~, 1039~~ ~~(Kan.~~

(<u>2015</u>) (quoting the Court of Appeals opinion, *Fawcett,* <u>49 Kan. App. 2d 194, 199,</u> 306

P.3d 318, 321 ~~(Kan.App.~~ 2013) ("[T]he geography of the sale of gas was at the well and the

geography for the calculation of the royalty was also at the well" and stating, "The parties

have taken no exception to the panel's conclusions in this regard.")). But, in this case, the

location of the sale was after Processing, not at the well. All of the Class gas in this case,

including Plaintiff's gas, is sold under a gas contract and an affiliate sale agreement where

the sale is not completed until after the processing services have been performed and the

~~gas products are~~<u>Residue Gas is</u> ready for the first commercial market identified in those gas

contracts—the Index pool for Residue Gas ~~and the OPIS market for fractionated NGLs.~~.

b.      ***Fawcett* Concession #2**: The "at the well" language in the lease sets the

valuation point. *See Fawcett,* ~~352 P.3d~~<u>302 Kan.</u> at ~~1036, 1039~~<u>359</u> (quoted above). That is a

legal conclusion that is not conceded here, and is contrary to Kansas law. Rather, the "at

the well" phrase describes the gas constituents produced "at the well" upon which the

proceeds or market value royalty must be paid. Texas law interprets "at the well" to be a

valuation point so that subsequent Midstream Service costs can be deducted, but Kansas

law rejected that <u>interpretation</u> in *Sternberger*~~.~~ <u>*v. Marathon Oil Co.,* 257 Kan. 315, 341,</u>

<div align="center">

11          ~~18~~

</div>

894 P.2d 788, 805 (1995). Factually, the only gas sold "at the well" is for irrigation purposes, which ~~constitutes less than 2% of the gas coming from Class Wells. However, irrigation gas~~ is not ~~within the Class~~part of this case because irrigation gas is not marketed under the gas ~~contract(s)~~contracts in question.

     c.-    ***Fawcett* Concession #3**: "Fawcett does not challenge [a] OPIK's good faith, [b] its prudence in entering into the purchase agreements at issue, or [c] their material terms. Accordingly, we need not dwell further on what this [duty of good faith] might entail." *Fawcett,* ~~252 P.3d~~350 Kan. at ~~1042~~ (366 ([a-]-[c] added). First, Plaintiff and the Class here do contest all three. [a] OXY's good faith ~~even if it tries~~ as to ~~claim~~royalty owners because OXY entered into gas contracts focused on its own interest in a "net" revenue stream rather than the royalty owners' right to a "gross" revenue stream and manipulated the terms of the gas contract through a premature or ~~manufacture an excuse, such as via a~~unnecessary title transfer clause~~, for not paying royalty based on its actual arm's length sales after all of the Midstream Services have been performed. Second, Plaintiff and the Class do contest~~ to impose a "net" payment on royalty owners; [b] OXY's prudence in entering into the ~~arm's length gas contracts because the gas contracts show (i) the completion of gas sales for fungible residue and NGLs products in the commercial marketplace, but (ii) not for helium which is not sold as Grade A Helium in a commercial marketplace and is not prudent. Third, Plaintiff and the Class do not contest~~2003 Gas Contract and OEMI Agreements because they are contrary to a prudent operator's conduct to act to mutually benefit royalty owners as well as itself and to obtain the best available price. The OEMI Agreements financially benefit only OXY by its own admission: "Prior to the formation of [OEMI], OXY determined the sales proceeds for use in the payment of royalties…by computing a Weighted Average Sales

Price received for gas produced and sold. After the formation of OEMI, in most cases the sale proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices…It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty." Exhibit 1 to the *Littell* Settlement at (2). Before OEMI's formation, OXY performed the same function as OEMI; hence, there was no reason for the OEMI agreement at all, except to financially benefit OEMI/OXY when OEMI sold the Residue gas at higher than the Index price at which OXY sold the Residue to OEMI; [c] the material terms of ~~OXY arm's length gas contracts with third parties. But Plaintiff and the Class do contest the~~ : (i) the 2003 Gas Contract because it is based on a fiction that title can be transferred to some molecules mixed within a single commingled gas stream and not others; and (ii) the material terms of the ~~affiliate sales and the failure to insist on Grade A helium payment. OXY can conduct its business as it sees fit, by doing all or part of the necessary Midstream Services itself, through an affiliate, or hiring a third party to perform the services, but OXY cannot use the affiliate and third party contract to unilaterally shift Midstream Service Costs onto royalty owners.~~ OEMI Agreements because they were completely unnecessary and used to obtain for OEMI a higher starting price for Residue than the Index price OXY provided to royalty owners.

d. ~~-~~ **Not Raised in *Fawcett*.** ~~-~~ Under Kansas law, mutual consent is the only way a lessee can impose GCDTP costs on royalty owners, i.e. by Express Deduction (ED) leases. There are ~~no~~only a few ED Leases in this ~~case and they are excluded from the~~ Class ~~case.~~by definition. This issue was not raised ~~and~~or ruled upon by the Kansas Supreme Court in *Fawcett*, and if given the chance, without the appellate concessions listed above, the Kansas

Supreme Court would likely uphold the mutual consent rule ~~and~~to bar OXY and other lessees from ~~unilaterally amending the silent~~treating leases ~~into~~that say nothing about the lessee's authority to deduct costs from royalty as ED leases by ~~the way it drafts its~~ their drafting of gas contracts, especially ~~since~~because title transfer clauses are ~~not necessary~~unnecessary to receive Midstream Services.~~—~~as this case illustrates for Residue. This will be a common question of law for the entire Class.

     e.-  ***Fawcett* Requirements.** ~~Gas quality can be a completely objective determination~~**was based on** ~~pressure, water vapor content, and gas analysis, but measured against what? *Fawcett* suggests~~**a false factual premise without factual support.** Had the undisputed fact been presented that ~~the quality can be measured against what a (i) true "purchaser" (a/k/a good faith sale for mutual benefit), (ii) in the "market," (iii) would "accept."~~

        i.  ~~Under (i), No Midstream company is a service provider is a true purchaser unless it buys the gas at the Index, OPIS, and Grade A markets. Before that, the gas sale would be a sham sale or at best a conditional sale based only on~~most Kansas gas receives Midstream Services without ~~a paper title transfer, but not a completed sale. In this case, the true purchase and sale occurs at the interstate pipeline Index pool, OPIS for NGLs, and Grade A for helium. Any purported sale before that would not be in good faith or for mutual benefit.~~

        ii.  ~~Under (ii), since a sale can be done anywhere under any circumstances, it must done in a market, otherwise the "duty to prepare the gas for market" could be avoided. *Gilmore*, 388 P.2d at 603-04, Syl. ¶5 ("[A] lessee who~~

14      ~~18~~

fails to use reasonable diligence in finding a market for gas produced and further fails to see that such gas is prepared for market, runs the risk<u>the outcome</u> of ~~causing the lease to lapse or to be declared to be abandoned.")~~. There is no "market" before Index, OPIS, or Grade A.

iii. ~~Under (iii), the Midstream company does not accept any gas for the purpose of sale at the gathering line inlet, only for the purpose of gathering in a secret deal for gas conditioning to be sold later at the first real commercial market. The interstate pipeline pool is where the true purchaser accepts the gas at FERC tariff quality. The diagram below illustrates the point. The common issue is whether the sale of residue gas occurs at points 1 or 3 on the diagram. Point 1 is the gathering line inlet. No sale occurs here. Point 3 is the inlet to the interstate or intrastate pipeline. The completed sale occurs here.~~



Similar diagrams can be drawn for each gas product, such as helium and NGLs.

iv.     **Good Faith After *Fawcett*.** The implied duty of good faith arises from the lease and prevents the lessee-defendant from exercising its discretion to improperly influence any of these (i)-(iii) factors so as to shift the burden of paying for Midstream GCDTP Costs onto royalty owners. That is exactly what defendants often try to do by including a title transfer clause in some of its gas contracts in an effort to manufacture a "sale," a "purchaser," and "market" when there are none. But OXY has made no such attempt in this Class, and the very existence of gas contracts such as those in this Class case, show that including a title transfer clause is not necessary to obtain the necessary Midstream Services and it only included as detriment to royalty owners and a benefit to lessee (violating the mutual benefit ports on the good faith duty). *Fawcett* may have been different.

29.     ***Class's Residue Gas Claims.***- From July 1, 2007 to April 30, 2014, Plaintiff and

the Class were underpaid royalties for Residue Gas due to ~~deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties for: (a) Residue Gas processing deductions (including but not limited to fees, retainage, plant fuel, recompression, treatment, etc.); and (b) for paying on a starting price based on the OXY/OEMI price instead of the higher OEMI/Third Party arm's length pricing.[5]~~

30. ~~*Class's NGL Claims*.  From July 1, 2007 to April 30, 2014, OXY underpaid to Plaintiff and the Class royalties for NGLs due to deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties (a) by the amount of the NGLs processing deductions (such as retainage percentage and TF&S); (b) by not receiving payment based on the full NGL recovery factors for each NGL; and (c) for paying on a starting price based on the OXY/OEMI price instead of the higher OEMI/Third Party arm's length pricing.~~

~~31.~~24.  ***Class's Helium Claims***. ~~From July 1, 2007 to April 30, 2014, OXY underpaid to Plaintiff and the Class royalties for Helium due to deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties by way of: (a) Helium processing deductions; and, (b) not obtaining the Grade A Helium price.~~OXY using an unfair and improper starting price by the subterfuge of an affiliate sale contract and by taking (directly or indirectly) volumetric and fee deductions occurring before any purported sale of Residue and not expressly authorized by the *Littell* Class Settlement.

~~32.~~25.  ***Class's Conservation Fee Interest Claims***. From July 1, 2007 to January 1, 2012, OXY wrongfully deducted Conservation Fees from royalties paid to the Plaintiff and the Class ~~royalties, and~~. OXY thereafter ~~did refund the wrongful deductions~~refunded the wrongfully deducted amounts but ~~without paying the~~ paid no interest on those amounts. This action seeks recovery of

---

[5]      ~~The Residue Gas and NGL affiliate sale issue involves a marketing fee charged by OEMI which OXY claims was not deducted from royalty owners. Second, although OXY claims that OEMI did not always get a higher WASP than Index, OEMI usually did get a higher WASP price, but royalty owners never did.~~

interest at 10% per annum ~~interest.~~ under K.S.A. 16-201.

## CLASS ACTION ALLEGATIONS

~~33.~~26.  Plaintiff brings this action individually and, pursuant to K.S.A. 60-223(a) and (b)(3), as representative of a Class defined as follows:

> All royalty owners in ~~Morton County,~~ Kansas wells~~: (a) where~~ from which OXY USA Inc. ~~was the operator (or, as a non-operator, separately~~ marketed gas)~~; (b) who were paid royalties for gas, NGLs, or Helium~~ production from July 1, 2007 to April 30, 2014~~; and (c) whose gas was marketed by~~, under the Gas Processing Contract between OXY USA, Inc. ~~under the Sept.~~and Regency Midcon Gas, LLC dated September 1~~.~~, 2003 ~~gas contract~~, as amended.~~.⁶~~
>
> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judge(s) together with their immediate family members; and, (3) OXY USA Inc. its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors.

~~34.~~27.  The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. ~~For instance,~~ OXY ~~has~~ marketed ~~Class~~ gas from ~~over 20~~approximately 86 wells~~,~~ in Morton County under the Gathering and Processing Agreement between Oxy USA, Inc. and Regency Midcon Gas, LLC, dated September 1, 2003, as amended ("2003 Gas Contract"). With more than one royalty owner for each well.~~Thus,~~ there are ~~more than 40~~at least 172 Class members. Some of these Class Members~~, some of whom remain~~ reside in Kansas, ~~though many~~although others reside in ~~numerous~~a number of other states ~~such that~~, making joinder ~~is~~ impracticable.

~~35.~~28.  The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

a.     Whether Plaintiff and the Class members are the beneficiaries of an

---

⁶     ~~This gas contract and Class covers approximately 86 wells all in Morton County, Kansas.~~

implied duty to market in their oil and gas leases;

> b. ~~If so, whether under *Fawcett* (without the appellate concessions), the quality of the gas, the location of the completed sale, and the actual first market are relevant factual considerations for determining whether the gas has been prepared for market;~~
>
>> i. ~~Is the quality of gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~
>>
>> ii. ~~Is the location of the completed sale of gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~
>>
>> iii. ~~Is the market for gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~
>>
>> iv. ~~Is a paper title transfer clause in a gas contract that does not transfer the subsequent risk of loss or subsequent cost, a good faith completed market sale?~~
>
> c. ~~Whether Defendant deducted (in cash or in kind) amounts for preparing the gas for market before paying royalty to Plaintiff and the Class members.~~
>
> b. Whether OXY's continued deduction of FL&U after July 1, 2008 breached the *Littell* Settlement and resulted in OXY's payment of royalty on less than the full volume of Residue Gas produced;

19    ~~18~~

      c.      Whether OXY's deduction of transportation costs from Residue Gas included costs not attributable to mainline transportation;

      d.      Whether OXY's deduction of processing fees and plant fuel from Residue Gas occurred before the Residue Gas was sold so as to breach the implied duty to market and of good faith under *Fawcett*;

      e.      Whether Defendant (including any of its affiliates) paid royalty to Plaintiff and the Class members based on ~~a~~the lowest, rather than the highest, starting price ~~below what Defendant or its affiliates received in arm's length sales transactions;~~ for Residue Gas.

      ~~d.~~   f.     Whether Defendant ~~paid royalty to Plaintiff and the Class members for all gas constituents, such as NGLs and helium, produced from their wells.~~

      ~~Whether Kansas law imposes the~~ owes interest on the amounts of Conservation Fee ~~on Plaintiff and the Class members, and if not, whether Defendant~~that it improperly deducted ~~Conservation Fees from~~ and later refunded to royalty owners ~~or failed to fully reimburse the royalty owners for wrongfully withheld Conservation Fee with interest~~.

~~36.~~29.  Plaintiff is typical of other class members because OXY ~~pays~~paid royalty to Plaintiff and other class members using a common method based on the net revenue OXY ~~receives~~received under the 2003 Gas Contract and ~~its~~ ~~marketing contract(s). The marketing~~Agreements with its affiliate OEMI. Royalty owners do not know or approve any contract terms ~~are unknown to and unapproved by royalty owners. The contracts are~~ . The 2003 Gas Contract was necessary to ~~place~~transform the raw gas ~~and its constituent parts~~ into ~~marketable~~

~~condition.~~Residue Gas for it to be sold to OEMI. Plaintiff and the Class members are also typical because their leases ~~do not~~ contain ~~an~~no express provision authorizing deductions of all of the ~~gas conditioning~~ costs, both monetary and volumetric, for sale of the Residue Gas to ~~make~~OEMI. Plaintiff and the Class members are also typical because OXY paid them no interest on the ~~gas into marketable condition, and of~~refunded Conservation Fees.

~~37.~~30.  Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a royalty owner paid by Defendant, and understand ~~his~~its duties as Class representative. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

~~38.~~31.  This action is properly maintainable as a class action under (b)(3). Common questions of law *or* fact exist as to all members of the Class and those common questions predominate over any questions solely affecting individual members of such Class. *See* ¶ ~~34~~28, above. ~~There is no need for~~ Individual Class members do not need to testify in order to establish Defendant's liability or even damages to the Class.

~~39.~~32.  Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all Class members.

40.33. Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by the members of the Class because joinder of all members of those Class would be either highly impracticable or impossible and because the amounts at stake for individual Class members, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

## COUNT I—BREACH OF LEASE

41.34. Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-3933.

35. Plaintiff and members of the Class entered into written, fully executed, oil and gas leases with Defendant, and .

36. Those leases include implied covenants including: (a) duty to market; (b) duty of good faith and fair dealing; (c) mutual benefit rule; and, (d) duty to get the best reasonable price for the gas products.

42.37. Defendant entered into a gas contract to obtain the best reasonable price for gas products,Residue gas (namely Index or WASP thereafter), but failed to pay on the full volume of gas productsResidue Gas coming from each Class Well at that full commercialthe best price available and deducted amounts not authorized under the leases or under the *Littell* Settlement.

43.38. At all material times, Plaintiff and the Class have performed their terms and obligations under the leases.

44.39. Defendant breached the implied covenants of the leases by its actions and/or inactions.

45.40. As a result of Defendant's breaches, Plaintiff and the Class have been damaged

through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

<p align="center">**COUNT II—BREACH OF *LITTELL* SETTLEMENT**</p>

41.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-40, above.

42.     In the fall of 2007, OXY and the Settlement Class of mineral interest owners in Kansas wells settled claims for royalty underpayment and agreed to certain provisions to govern the payment of royalty in the future. *See Littell* Settlement, Exhibit 1

43.     As set forth above, OXY agreed to not deduct FL&U from gas produced after July 1, 2008, but OXY continued to do so.

44.     As set forth above, OXY agreed to deduct only the actual costs for mainline transportation costs from gas produced after July 1, 2007. But OXY deducted costs that were not mainline transportation.

45.     In so doing, Defendant breached the *Littell* Settlement.

46.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

<p align="center">**PRAYER FOR RELIEF**</p>

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a.     ~~The case be certified~~Certifying this action as a class action, with the appointment of Plaintiff ~~appointed as the~~ Class Representative and Plaintiff's Counsel as Class Counsel;

b.     Awarding Plaintiff and the Class damages from Defendant's breach of lease and breach of the *Littell* Settlement with interest at the highest allowable rate at law or equity;

<p align="center">23          ~~18~~</p>

c.    Granting Plaintiff and the Class the costs of prosecuting this action together with reasonable attorney's fees out of the recovery ~~in the unlikely event that Defendant claims a statute applies which would authorize the same~~; and,

d.    Granting such other relief as this Court may deem just, equitable and proper.

~~WHEREFORE, this case should be certified as a class action, Defendant should be ordered to pay Plaintiff and the Class for improper deductions, underpricing, and Conservation Fee subtractions, including pre-judgment and post-judgment interest at the highest statutory, equitable, or common law rate of 10% per annum. *See Lightcap*~~

*v. Mobil Oil Corp.,* 221 Kan. 448, 468-69, 562 P.2d 1, *cert. denied,* 434 U.S. 876 (1977), and for such other relief as the Court deems proper.

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com

rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

Eric L. Witcher KS#14344
Graybill, Witcher & Carey, LLP
450 Morton Avenue
Elkhart, KS 67950
(620) 697-4514
(620) 697-4502 (fax)
ewitch67950@yahoo.com

*Plaintiff's Counsel*

25                    18

## <u>CERTIFICATE OF SERVICE</u>

_____ I hereby certify that on the ___ day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:

Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

_____        _/s/ Rex A. Sharp_____
                                        Rex A. Sharp

ELECTRONICALLY FILED
2018 Aug 07 PM 4:55
CLERK OF THE GRANT COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000039

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 3 to**

**PLAINTIFF'S MOTION TO AMEND CLASS ACTION PETITIONS
IN MORTON COUNTY CASE NO. 2016-CV-13 AND
GRANT COUNTY CASE NO. 2017-CV-39
AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

s/Barbara C. Frankland
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

Eric L. Witcher KS#14344
Graybill, Witcher & Carey, LLP
450 Morton Avenue
Elkhart, KS 67950
(620) 697-4514
(620) 697-4502 (fax)
ewitch67950@yahoo.com
*Plaintiff's Counsel*

1

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:


Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

s/Barbara C. Frankland_____
Barbara C. Frankland

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | **\*This filing pertains only to** |
| | ) | **Case No. 2016-CV-39** |

## FIRST AMENDED CLASS ACTION PETITION

Plaintiff brings this class action to recover royalties due on Residue Gas only,[1] and would show the Court as follows:

## NATURE OF THE ACTION

1.      The prior class action *Littell, et al. v. OXY USA, Inc.*, No. 98-CV-51 (Kan. Dist. Ct. Stevens Cnty.) settled state-wide claims for the improper deductions from royalties. *See* Stip. of Settlement, *Littell, et al. v. OXY USA, Inc.*, No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.) ("*Littell* Settlement"), attached hereto as **Exhibit 1**.

2.      As part of the *Littell* Settlement, the *Littell* Class and OXY agreed that OXY would limit its deduction of "Gathering Charges" to $0.15/MMBtu from royalty paid for gas production after July 2007. (*Littell* Settlement ¶2.5; *see also id.* at ¶2.6). The *Littell* Settlement defines "Gathering Charges" as "all charges, expenses, or assessments, including fuel associated with any and all activities occurring between the wellhead of any well producing gas…and the inlet to any

---

[1]     Plaintiff drops its claims for underpayment of royalty on NGLs and Helium and focuses its claims on the underpayment of royalty on Residue Gas only.

mainline transmission facility....Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred." (*Littell* Settlement ¶1.10). Plaintiff asserts no claim for Gathering Charges because OXY appears to deduct only $0.15/MMBtu from royalty as agreed under the *Littell* Settlement.

3.      In other respects, however, OXY appears to violate provisions of the *Littell* Settlement, specifically:

a.      OXY agreed not to deduct any "Fuel Charges" from royalty on gas produced on or after July 1, 2008. (*Littell* Settlement ¶2.4). "Fuel Charges" is defined as "gas used to operate compressors located on a Gathering Facility." (*Littell* Settlement ¶1.9). "Gathering Facility" is defined as "all activities occurring between the wellhead of any well producing gas… and the inlet to any mainline transmission facility…" (*Littell* Settlement ¶1.11). But despite these provisions, OXY continues to deduct "Fuel Lost & Unaccounted for" ("FL&U") from royalty; thereby, paying royalty on less than the full volume of gas produced from the Class Wells;

b.      The *Littell* Settlement allows OXY to deduct from royalty "all fees and costs payable to third-party mainline transmission companies so long as those fees and costs are incurred pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services." (*Littell* Settlement ¶2.8). But mainline transmission costs are for transportation of Residue gas on the high pressure transmission line, in this case, at the tailgate of the processing plant after recompression so that the Residue can enter the high pressure line. But OXY has not limited its transportation deductions to the mainline transmission lines. Instead its deductions include other

2

undisclosed components that OXY is calling mainline transportation. This practice violates the *Littell* Settlement.

4.      Apart from the *Littell* Settlement, OXY gives away gas from the Class Wells for the Midstream Service Provider to use as fuel to run its plant operations, i.e. "Plant Fuel". Processing and the Plant Fuel consumed during processing separates raw-make NGLs from Residue and is usually charged against Residue. Under the gas contract applicable in this case, title to the Residue Gas remains with OXY and never transfers to Duke Energy Field Services, LP. [2] Under *Fawcett v. Oil Producers, Inc., of Kansas,* there is no sale, or even purported sale, before the gas is processed, making the Plant Fuel non-deductible as a processing fee.

5.      Also apart from the *Littell* Settlement, OXY paid royalty on a starting price significantly less than either the Index Price or Weighted Average Sales Price ("WASP") under the OXY/OEMI contracts.

6.      Additionally, given the affiliate relationship between OXY and OEMI, OXY should have paid royalty on the highest of the two starting prices (Index or WASP) at which OEMI sold the Residue Gas to third parties in arm's length transactions.

7.      As in the original petition, Plaintiff includes the claim for interest on the amounts that OXY refunded in unlawfully withheld Conservation Fees.

---

[2]     In *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016. *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit. *Id.* (ECF No. 239). Judge Melgren suggested that the case might have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case based on one processing agreement, as well as the Master Service Agreement and Master Gas Sales and Purchase Agreement between OXY and its affiliate OEMI, is the result.

8.     Plaintiff and the Class bring claims based upon OXY's underpayment of royalties based on deductions taken in violation of the *Littell* Stipulation of Settlement, and taken during processing to obtain Residue, all as more fully described above and below.

## VENUE AND JURISDICTION

9.     This Court has both specific and general jurisdiction over Defendant because its wrongful acts occurred and caused damages to Plaintiff and Class members in this County, and Defendant is authorized to do and does or did substantial business in Kansas, both generally and specifically as to this case.

10.     Venue is proper in this Court because many, if not all, of the wells, including Plaintiff's well, and royalties therefrom, are located in this County.

## PARTIES

11.     Plaintiff is a royalty owner in at least the Cooper D-1; D-2, D-3; E-1; E-2; E-3 wells in Grant County, from which Defendant operated and marketed gas under a Gas Gathering Agreement and a Gas Processing Contract, both with Duke Energy Field Services, LP and both dated August 1, 2005 (together the "2005 Gas Contracts"), paid royalties on gas produced, and deducted Processing costs from those royalty payments.

12.     Defendant OXY USA Inc. ("OXY") is believed to be a Delaware corporation with its principal place of business in Texas, authorized to do business in the State of Kansas, and doing business in the State of Kansas. Service of process was obtained through OXY's resident agent, The Corporation Company, Inc. OXY has already appeared in this action.

   a.     OXY is (or was during the Class Period) in the business of producing and marketing gas and constituent products from the wells in which Class members hold royalty interests.

4

b. During the Class Period, July 1, 2007 to April 30, 2014, OXY was one of the largest gas producers in this County. And, from 2010 to 2014, OXY was the third largest operator of natural gas wells in Kansas, producing 8.6% of the total gas volume in Kansas.

c. OXY marketed all of its Kansas residue gas to its affiliate, Occidental Energy Marketing, Inc. ("OEMI") at Index price, which OEMI then resold to third parties at WASP which was often higher than Index.

d. In 2014, OXY sold all of its Kansas leases, wells, and assets to Merit Energy Company. OXY paid royalties to Class members through April, 2014, the end date of the proposed Class Period in this case.

## ROYALTY UNDERPAYMENT FOR GAS

13. Raw gas taken from Plaintiff's wells, and from the wells of all Class members, contains various valuable elements and substances along with worthless and deleterious substances.

14. During the Class Period, Defendant had a working interest in each of Plaintiff's wells and in the wells of every Class member.

15. In the leases covering the wells in which Plaintiff and the Class Members own royalty interests, Defendant had an implied covenant to market the valuable elements and substances.

16. None of the leases upon which Class Wells exist *expressly* authorized all of the deductions from royalty owners complained of in this case.

17. Raw gas, including its valuable constituent parts, produced from Class Wells during the Class Period was never sold "at the well" or "at the mouth of the well," but off the lease.

18.     Instead, the gas from Class Wells was first sold after processing to OEMI as Residue Gas. OEMI then sold the Residue Gas in arm's length transactions to one or more third-parties to obtain generally a higher WASP price.

19.     All of the Class Residue Gas produced from Class Wells is marketed, but not sold, under the August 1, 2005 Gas Contracts between OXY and Duke Energy Field Services, LP.

20.     **OXY Paid Royalty Using Lower Affiliate Sale Price**. OXY admitted in the *Littell* Settlement Agreement, Ex. 1, that it sold Residue Gas to OEMI at Index price and that OEMI sometimes received higher than Index price when it sold the Residue Gas to third parties. OXY claimed that it was entitled to keep this differential and owed nothing to the royalty owners when OEMI received a higher than Index price. *See Littell* Settlement Exhibit 1, ¶1 ("It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of index price, if any, are for services provided by OEMI and are not subject to royalty.").[3] However, OXY cannot use a sale to its affiliate to obtain for itself a starting price higher than the starting price on which it bases its royalty payments. The starting price on which OXY paid royalty should be the higher of the Index or WASP price that OEMI obtains in its sale of the Residue Gas in the arm's length transactions with third parties, and nothing less.

21.     **Illegal Conservation Fee.** Defendant wrongfully deducted from royalties the statutory Conservation Fee that it owes to help fund the KCC. But, under *Hockett,* royalty owners do not owe the statutory Conservation Fee. *Hockett v. Trees Oil Co.,* 292 Kan. 213, 251 P.3d 65

---

[3]     OEMI charged OXY a marketing fee under the Master Services Agreement. OXY claims it did not deduct this fee from royalty owners so Plaintiff does not seek recovery of that fee. But Plaintiff does seek to recover royalty on the higher price that OEMI received even though OXY claims that OEMI did not <u>always</u> get a higher WASP price. But OEMI <u>usually</u> got a higher WASP price for the Residue Gas from Class Wells. Royalty owners should have gotten that higher price too.

(2011). In 2012, OXY refunded the Conservation Fees illegally deducted, due to the *Roderick* lawsuit previously filed, *see supra* n.2, but OXY did not pay interest on refunded amounts at the full 10% per annum interest. Accordingly, Plaintiff seeks to recover interests on the principal amounts refunded.

22.     Defendant settled similar claims in Kansas under *Littell* before July 1, 2007, so this case only seeks recovery for these wrongful deductions on or after July 1, 2007.

23.     **The *Fawcett* Case Was Decided On Concessions Not Made Here.**

a.     ***Fawcett* Concession #1**: "The gas in this case was sold at the wellhead." *Fawcett v. Oil Producers of Kansas, Inc.,* 302 Kan. 350, 359, 352 P.3d 1032 (2015) (quoting the Court of Appeals opinion, *Fawcett,* 49 Kan. App. 2d 194, 199, 306 P.3d 318, 321 (2013) ("[T]he geography of the sale of gas was at the well and the geography for the calculation of the royalty was also at the well" and stating, "The parties have taken no exception to the panel's conclusions in this regard.")). But, in this case, the location of the sale was after Processing, not at the well. All of the Class gas in this case, including Plaintiff's gas, is sold under a gas contract and an affiliate sale agreement where the sale is not completed until after the processing services have been performed and the Residue Gas is ready for the first commercial market identified in those gas contracts—the Index pool for Residue Gas.

b.     ***Fawcett* Concession #2**: The "at the well" language in the lease sets the valuation point. *See Fawcett,* 302 Kan. at 359 (quoted above). That is a legal conclusion that is not conceded here, and is contrary to Kansas law. Rather, the "at the well" phrase describes the gas constituents produced "at the well" upon which the proceeds or market value royalty must be paid. Texas law interprets "at the well" to be a valuation point so that

7

subsequent Midstream Service costs can be deducted, but Kansas law rejected that interpretation in *Sternberger v. Marathon Oil Co.,* 257 Kan. 315, 341, 894 P.2d 788, 805 (1995). Factually, the only gas sold "at the well" is for irrigation purposes, which is not part of this case because irrigation gas is not marketed under the gas contracts in question.

      c.    *Fawcett* **Concession #3**: "Fawcett does not challenge [a] OPIK's good faith, [b] its prudence in entering into the purchase agreements at issue, or [c] their material terms. Accordingly, we need not dwell further on what this [duty of good faith] might entail." *Fawcett,* 350 Kan. at 366 ([a]-[c] added). First, Plaintiff and the Class here do contest all three. [a] OXY's good faith as to royalty owners because OXY entered into gas contracts focused on its own interest in a "net" revenue stream rather than the royalty owners' right to a "gross" revenue stream and manipulated the terms of the gas contract through a premature or unnecessary title transfer clause to impose a "net" payment on royalty owners; [b] OXY's prudence in entering into the 2005 Gas Contracts and OEMI Agreements because they are contrary to a prudent operator's conduct to act to mutually benefit royalty owners as well as itself and to obtain the best available price. The OEMI Agreements financially benefit only OXY by its own admission: "Prior to the formation of [OEMI], OXY determined the sales proceeds for use in the payment of royalties…by computing a Weighted Average Sales Price received for gas produced and sold. After the formation of OEMI, in most cases the sale proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices…It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty." Exhibit 1 to the *Littell* Settlement at (2). Before

OEMI's formation, OXY performed the same function as OEMI; hence, there was no reason for the OEMI agreement at all, except to financially benefit OEMI/OXY when OEMI sold the Residue gas at higher than the Index price at which OXY sold the Residue to OEMI; [c] the material terms of: (i) the 2005 Duke Gas Contract because it is based on a fiction that title can be transferred to some molecules mixed within a single commingled gas stream and not others; and (ii) the material terms of the OEMI Agreements because they were completely unnecessary and used to obtain for OEMI a higher starting price for Residue than the Index price OXY provided to royalty owners.

        d.     **Not Raised in *Fawcett*.** Under Kansas law, mutual consent is the only way a lessee can impose GCDTP costs on royalty owners, i.e. by Express Deduction (ED) leases. There are only a few ED Leases in this case and they are excluded from the Class by definition. This issue was not raised or ruled upon by the Kansas Supreme Court in *Fawcett*, and if given the chance, without the appellate concessions listed above, the Kansas Supreme Court would likely uphold the mutual consent rule to bar OXY and other lessees from treating leases that say nothing about the lessee's authority to deduct costs from royalty as ED leases by their drafting of gas contracts, especially because title transfer clauses are unnecessary to receive Midstream Services—as this case illustrates for Residue. This will be a common question of law for the entire Class.

        e.     ***Fawcett* was based on a false factual premise without factual support.** Had the undisputed fact been presented that most Kansas gas receives Midstream Services without a paper title transfer, the outcome of *Fawcett* may have been different.

24.     ***Class's Residue Gas Claims*.** From July 1, 2007 to April 30, 2014, Plaintiff and the Class were underpaid royalties for Residue Gas due to OXY using an unfair and improper starting

price by the subterfuge of an affiliate sale contract and by taking (directly or indirectly) volumetric and fee deductions occurring before any purported sale of Residue and not expressly authorized by the *Littell* Class Settlement.

25.    ***Class's Conservation Fee Interest Claims***. From July 1, 2007 to January 1, 2012, OXY wrongfully deducted Conservation Fees from royalties paid to the Plaintiff and the Class. OXY thereafter refunded the wrongfully deducted amounts but paid no interest on those amounts. This action seeks recovery of interest at 10% per annum under K.S.A. 16-201.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action individually and, pursuant to K.S.A. 60-223(a) and (b)(3), as representative of a Class defined as follows:

> All royalty owners in Kansas wells from which OXY USA Inc. marketed gas production from July 1, 2007 to April 30, 2014, under the Gas Gathering Agreement between OXY USA, Inc. and Duke Energy Field Services, LP dated August 1, 2005, as amended, and the Gas Processing Contract between OXY USA, Inc. and Duke Energy Field Services, LP dated August 1, 2005, as amended.

> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judge(s) together with their immediate family members; (3) OXY USA Inc. its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors; and (4) royalty owners being paid under leases that provide royalty owed is "less a proportionate part of...the cost incurred by Lessee in delivering, processing or otherwise marketing such gas or other substances" or similar express language.

27.    The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. OXY marketed gas from approximately 300 wells or more under the 2005 Gas Contracts. With more than one royalty owner for each well, there at least 600 Class members. Some of these Class Members reside in Kansas, although others reside in a number of other states, making joinder impracticable.

28.    The questions of fact or law common to Plaintiff and the Class include, without

limitation, one or more of the following:

> a.     Whether Plaintiff and the Class members are the beneficiaries of an implied duty to market in their oil and gas leases;

> b.     Whether OXY's continued deduction of FL&U after July 1, 2008 breached the *Littell* Settlement and resulted in OXY's payment of royalty on less than the full volume of Residue Gas produced;

> c.     Whether OXY's deduction of transportation costs from Residue Gas included costs not attributable to mainline transportation;

> d.     Whether OXY's deduction of processing fees and plant fuel from Residue Gas occurred before the Residue Gas was sold so as to breach the implied duty to market and of good faith under *Fawcett*;

> e.     Whether Defendant (including any of its affiliates) paid royalty to Plaintiff and the Class members based on the lowest, rather than the highest, starting price for Residue Gas.

> f.     Whether Defendant owes interest on the amounts of Conservation Fee that it improperly deducted and later refunded to royalty owners.

29.     Plaintiff is typical of other class members because OXY paid royalty to Plaintiff and other class members using a common method based on the net revenue OXY received under the 2005 Gas Contracts and its Agreements with its affiliate OEMI. Royalty owners do not know or approve any contract terms. The 2005 Gas Contracts were necessary to transform the raw gas into Residue Gas for it to be sold to OEMI. Plaintiff and the Class members are also typical because their leases contain no express provision authorizing deductions of all of the costs, both monetary and volumetric, for sale of the Residue Gas to OEMI. Plaintiff and the Class members are also

typical because OXY paid them no interest on the refunded Conservation Fees.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a royalty owner paid by Defendant, and understand its duties as Class representative. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

31.     This action is properly maintainable as a class action under (b)(3). Common questions of law *or* fact exist as to all members of the Class and those common questions predominate over any questions solely affecting individual members of such Class. *See* ¶28, above. Individual Class members do not need to testify in order to establish Defendant's liability or even damages to the Class.

32.     Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all Class members.

33.     Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by the members of the Class because joinder of all members of those Class would be either highly impracticable or impossible and because the amounts at stake for individual Class members, while significant in the aggregate, are not great enough to enable them

to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

### COUNT I—BREACH OF LEASE

34.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-33.

35.     Plaintiff and members of the Class entered into written, fully executed, oil and gas leases with Defendant.

36.     Those leases include implied covenants including: (a) duty to market; (b) duty of good faith and fair dealing; (c) mutual benefit rule; and, (d) duty to get the best reasonable price for the gas products.

37.     Defendant entered into a gas contract to obtain the best reasonable price for Residue gas (namely Index or WASP thereafter), but failed to pay on the full volume of Residue Gas coming from each Class Well at the best price available and deducted amounts not authorized under the leases or under the *Littell* Settlement.

38.     At all material times, Plaintiff and the Class have performed their terms and obligations under the leases.

39.     Defendant breached the implied covenants of the leases by its actions and/or inactions.

40.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

### COUNT II—BREACH OF *LITTELL* SETTLEMENT

41.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-

40, above.

42.     In the fall of 2007, OXY and the Settlement Class of mineral interest owners in Kansas wells settled claims for royalty underpayment and agreed to certain provisions to govern the payment of royalty in the future. *See* Stipulation of Settlement, *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.), attached as **Exhibit 1.**

43.     As set forth above, OXY agreed to not deduct FL&U from gas produced after July 1, 2008, but OXY continued to do so.

44.     As set forth above, OXY agreed to deduct only the actual costs for mainline transportation costs from gas produced after July 1, 2007. But OXY deducted costs that were not mainline transportation.

45.     In so doing, Defendant breached the *Littell* Settlement.

46.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a.     Certifying this action as a class action, with the appointment of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

b.     Awarding Plaintiff and the Class damages from Defendant's breach of lease and breach of the *Littell* Settlement with interest at the highest allowable rate at law or equity;

c.     Granting Plaintiff and the Class the costs of prosecuting this action together with reasonable attorney's fees out of the recovery; and,

d.     Granting such other relief as this Court may deem just, equitable and proper.

Respectfully submitted,

*s/ Barbara C. Frankland*
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

*Plaintiff's Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August 2018, a true and correct copy of the above and foregoing document was emailed to the following:


Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com


                                        *s/ Barbara C. Frankland*
                                        Barbara C. Frankland

# EXHIBIT 1

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co-    )
trustees of the Opal Littell Family Trust, and    )
BONNIE BEELMAN, individually and as    )
representative plaintiffs on behalf of persons    )
or concerns similarly situated,    )
                                                )
                        Plaintiffs,    )
                                                )
                                                )    Case No. 98-CV-51
vs.                                          )
                                                )
OXY USA INC.,                          )
                                                )
                        Defendant.    )
                                                )

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated  January 18, 2007, is made and

entered into in the above-captioned class action (the "Action") by and among the plaintiffs in the

Action (the "Plaintiffs"), on their own behalf and on behalf of the Plaintiff Class as defined

herein, and OXY USA Inc. ("OXY") .

WHEREAS:

A.     On November 13, 1998, the Action was filed in this Court.

B.     This Stipulation sets forth the terms and conditions upon which Plaintiffs and

OXY have agreed to settle all claims asserted in the Action, including the claim that OXY has

failed to properly calculate and pay royalty under those oil and gas leases identified in the

Plaintiff Class description set forth below by deducting from such payments the Gathering

Charges, including fuel charges, charged by those gathering companies (including OXY) that

gather gas that is produced by OXY and that is subject to the Plaintiffs' royalty interests within

the Kansas Hugoton Field (the "Claim for Wrongful Deductions").

C.  On March 13, 2001, pursuant to K.S.A. 60-223, the Court certified the Action as a class action for purposes of pursuing the Claim for Wrongful Deductions and defined the class ("the Plaintiff Class") in the manner set forth in the Notice of Class Action mailed to members of the Plaintiff Class on or about July 24, 2001, as follows:

> All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas production from above the base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member. Plaintiffs exclude from the plaintiff class the United States of America insofar as its mineral interests are managed by the Mineral Management Service but otherwise include the instrumentalities of the United States of America and federally chartered corporations, including, but not limited to, the Farm Credit Bank of Wichita and Federal Land Bank.

D.  The Claim for Wrongful Deductions was the subject of a bench trial before the Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from March 31, 2003 until April 7, 2003. Thereafter, the parties filed proposed findings of fact and conclusions of law and presented oral argument to the Court on May 29, 2003. In their submissions to the Court, Plaintiffs requested that OXY be ordered to: (1) provide an accounting for all deductions taken by it from royalty payments which it made to each individual member of the Plaintiff Class during the period from November 13, 1993, to the present for Gathering Charges, including fuel; (2) cease taking such deductions in the future; (3) pay prejudgment interest on the amount of all improper deductions; (4) determine whether OXY violated K.S.A. 55-1620; and (5) recover on other claims asserted in the Pretrial Order filed on October 24, 2002.

E.  In February of 2007, not having received any ruling from the Court and desiring to bring closure to this litigation, which has now lasted more than nine (9) years, the parties commenced settlement negotiations. Those negotiations were complex and difficult and

occurred over a period of six (6) months, addressing both the past and the future, involving face-to-face meetings and phone conferences between counsel for the Plaintiff Class and OXY. Finally, on August 9, 2007, the parties reached the tentative agreement which is the subject of this Stipulation of Settlement.

F.      During the course of the negotiations described above and in response to inquiries from counsel for Plaintiffs, OXY estimated that the total amount of deductions being disputed in the Action from and after December 1993 to July 2007 and including deductions reflected in its royalty checks to the members of the Plaintiff Class in the month of July, 2007 (i.e., for production that occurred during the month of June 2007) would total $23.7 million, not including any liability for prejudgment interest.  Although Plaintiffs have no grounds to dispute this and believe that it is within the reasonable range of the computations they have been able to make with their own limited data, they have not (and cannot) perform an audit of such deductions or otherwise provide independent confirmation of the accuracy of such number.  For all these reasons, when negotiating and assessing the reasonableness of the Settlement that has been reached, Plaintiffs and their counsel have relied on OXY's estimate of its potential liability for the period described above.

G.      During the negotiations, OXY requested and Plaintiffs agreed to provide a release of all possible claims of members of the Plaintiff Class against OXY or any related company that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions.  Such requested release includes those items listed in paragraph D above and those items specifically listed in the definition of Settled Claims.  The parties recognize that any such release, in order to satisfy the requirements of due process, must be based upon full disclosure to the Class Members, including statements of fact by OXY, when appropriate, upon which they may rely

when providing such release in the form set forth elsewhere herein.  In this connection, Plaintiffs and their counsel confirm and acknowledge that such statements of fact, which are set forth in Exhibit 1 hereto, explain why they did not include certain claims in the Action in the first place. Plaintiffs agree to file in the form attached hereto as Exhibit 2 an Amendment and Supplement to Petition, including the claims identified in the definition of Settled Claims.

H.      Plaintiffs and their counsel enter into this Stipulation: (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class.

I.       OXY has denied and continues to deny the claims alleged by Plaintiffs against it in the Action.  OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action.  OXY enters into this Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class, and OXY and to avoid the further expense, inconvenience, and disruption of defending against the Action and other possible actions.  OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of the Claim for Wrongful Deductions and the possibility of being required to defend other claims set forth in the definition

of Settled Claims.  OXY has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth herein.

J.    In view of the foregoing, and the other matters of record in the Action, the parties hereto now propose to settle and discharge the Action, in accordance with the terms and provisions of this Stipulation.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, that the Claim for Wrongful Deductions shall be fully and finally settled and compromised, subject to the approval of the Court pursuant to K.S.A. 60-223, upon and subject to the terms and conditions set forth below.

## SECTION I
## DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" means the class action identified in the caption of this Stipulation.

1.2    "OXY" means OXY USA Inc., its  parents, subsidiaries, and all affiliated companies, including but not limited to Occidental Energy Marketing, Inc. ("OEMI"), and its predecessors.  Reference to OXY in connection with the Settled Claims, including the dismissal of claims against OXY as specified in Section 4.2, shall also include all of OXY's present and former officers, directors, employees, agents, shareholders, partners, guarantors, attorneys, predecessors, successors, assigns, representatives and their heirs, successors, executors, and administrators.

1.3    The terms "heirs" and "successors," shall mean those persons or entities who have succeeded to the rights of Class Members having the right to participate in the distribution of the Net Settlement Fund.

1.4    "Claimant" means any Participating Class Member.

1.5    "Claims Administrator" means such person(s) as may be selected by Plaintiffs' Counsel to assist in the administration of the Settlement.

1.6    "Effective Date," or the date on which the Settlement becomes "effective," means the date on which the Judgment becomes final as a matter of law (which shall be deemed to be 30 days after the entry of the Judgment if no appeal is filed). If an appeal is filed, the Effective Date shall be the date of the final affirmance on appeal or order dismissing such appeal by the appellate court of last resort.

1.7    "Escrow Agent" means Intrust Bank, or such other national bank designated by the Court and doing business in Wichita, Kansas, and having assets in excess of $1,000,000,000.

1.8    "Escrow Agreement" means the agreement concerning escrow referenced in Section 2.1 and attached as an exhibit to the Judgment.

1.9    "Fuel Charges" means gas used to operate compressors located on a Gathering Facility(ies).

1.10    "Gathering Charges" means all charges, expenses or assessments, including fuel, associated with any and all activities occurring between the wellhead of any well producing gas that is subject to a royalty interest owned by a member of the Plaintiff Class and the inlet to any mainline transmission facility, including but not limited to any facilities owned by Northern Natural Gas, Panhandle Eastern Pipeline Company, Kansas Power and Light, and/or their predecessors. Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred.

1.11    "Gathering Facility" means all activities occurring between the wellhead of any well producing gas that is subject to a royalty interest owned by a member of the Plaintiff Class

and the inlet to any mainline transmission facility including, but not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred.

1.12    "Hearing" means the hearing by the Court for the purposes set forth in Section 4.1 (h) herein.

1.13    "Judgment" means the judgment required pursuant to Section 4.2 below.

1.14    "Leases" means the leases referred to in paragraph C above.

1.15    "Net Settlement Fund" means the Settlement Fund, less any fees and expenses which may be awarded by the Court to Plaintiffs' Counsel, and less any fees and expenses which may be incurred in the administration of the Settlement Fund (the "Notice and Administration Fund," as defined below).

1.16    "Notice" means the notice mailed to the members of the Plaintiff Class substantially in the form annexed as an exhibit to the Notice Order.

1.17    "Notice and Administration Fund" means a portion of the Settlement Fund, not to exceed $61,000 without prior Court approval, to be used for reasonable out-of-pocket costs and expenses of preparing and mailing the Notice, publishing the Summary Notice, locating members of the Plaintiff Class, determining the validity of any claimant's entitlement to a portion of the Net Settlement Fund, and all of the reasonable out-of-pocket expenses of administering the Settlement and distributing the Net Settlement Fund.

1.18    "Notice Order" means the order required pursuant to Section 4.1 below.

1.19    "Participating Class Members" means all Class Members who do not exclude themselves as provided for in the Notice Order.

7

1.20    "Payment Schedule" means the schedule showing the names and addresses of each Participating Class Member and the portion of the Net Settlement Fund to which each such member is entitled under the Plan of Allocation.    The Payment Schedule is not part of this Stipulation.

1.21    "Person" includes, without limitation, any individual, corporation, partnership or other entity, and his, her or its legal representatives, and all references to the masculine, feminine or neuter gender include all genders.

1.22    "Plaintiffs" means the named plaintiffs in the Action.

1.23    "Plaintiff Class" means the Plaintiff Class described in Paragraph C above.

1.24    "Plaintiffs' Counsel" means Fleeson, Gooing, Coulson & Kitch, L.L.C. and Kramer, Nordling & Nordling, LLC.

1.25    "Plan of Allocation" means a plan of allocation of the Net Settlement Fund which shall separately be submitted by Plaintiffs' Counsel to the Court, as may be modified by the Court. The Plan of Allocation is not part of this Stipulation.

1.26    "Settled Claims"  means any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act, conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breaches of other duties which occurred at any time prior to July 1, 2007, that were or could have been properly alleged in the

8

Action and that in any way relate to the Leases, OXY's operation of the Leases, or OXY's failure to operate the Leases, including, but not limited to, claims that:

(1)     Under the Leases, or under any legal or equitable theory, OXY should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

(2)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any and all claims that OXY failed to use the proper starting point for calculation of royalty to the Plaintiff Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

(3)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY has

failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

(4)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

(5)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

(6)     OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

(7)     OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 *et seq.*, K.S.A. 55-1614 *et seq.*, and/or under any other legal or equitable theory;

(8)     Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties, should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to

produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

(9)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 attached hereto, any claim that OXY owes additional royalty, including any royalty in excess of the royalties paid on 100% of the index price with respect to the Gas Purchase Contract effective July 1, 1998 between OXY and OEMI and their respective successors and assigns.

1.27     "Settlement" means the agreement to settle this Action as embodied in this Stipulation.

1.28     "Settlement Fund" means that Fund created pursuant to Section 2.1 below, together with any interest earned thereon.

1.29     "Stipulation" means this document, as read in its entirety.

1.30     "Summary Notice" means the notice published in the newspapers specified in Section 4.1(f).

## SECTION II
### THE SETTLEMENT FUND AND RELATED TERMS

2.1     Within ten business days of the Effective Date, OXY shall pay the sum of $16,700,000 by wire transfer in immediately available funds to the Escrow Agent for deposit in the Escrow Account which the Escrow Agent shall establish in accordance with the Escrow

Agreement. In the event the Effective Date is after November 21, 2007, OXY shall pay simple interest at the rate of 5.625 percent per annum until said sum, together with accrued simple interest, is deposited with the Escrow Agent. The sum of $16,700,000, plus accrued interest, if any, shall be the Settlement Fund. Upon request of OXY counsel, in writing, the Claims Administrator shall provide to OXY counsel, from time to time, in writing, an accounting of the balance in and disbursements from the Settlement Fund. Upon request of Plaintiffs' Counsel, in writing, OXY shall provide to Plaintiffs' Counsel an accounting of the balance of the Settlement Fund, showing accrued interest. OXY and Plaintiffs shall have no right or interest in or to such sums nor in and to the Settlement Fund, other than as provided in this Stipulation.

2.2   (a)   Subject to the conditions of this Stipulation, during the period that the Settlement Fund is held by the Escrow Agent, the Settlement Fund shall be deemed to be *in custodia legis* of the Court. It is specifically intended and agreed that these funds are not and shall not be subject to any lien, claim, etc. asserted against OXY, the purpose of the escrow and this Stipulation being to place these funds in the control of the Court pending further action in accordance with this Settlement and Stipulation.

(b)   Plaintiffs' Counsel are authorized to execute such transactions with respect to the Settlement Fund on behalf the Plaintiff Class as are consistent with the terms of this Stipulation.

2.3   Reasonable out-of-pocket costs and expenses of preparing and mailing the Notice, publishing the Summary Notice, locating Class Members, processing requests for exclusion received from Class Members, determining the validity of any Claimant's entitlement to a portion of the Settlement Fund, and all reasonable out-of-pocket expenses of administering the Settlement and distributing the Net Settlement Fund shall be borne by the Settlement Fund. Up

to, but no more than, $61,000 shall be available from the Settlement Fund for such costs and expenses without further Court approval.

2.4    Fuel Charges with respect to gas produced from any Lease shall cease in their entirety on gas produced on and after July 1, 2008. For the period July 1, 2007, through June 30, 2008, OXY shall be permitted to continue deducting Fuel Charges from Plaintiff Class' royalties using the same methodology currently being employed.   On gas produced from any Lease and not compressed on a Gathering Facility, beginning July 1, 2007, OXY shall cease any Deductions from Plaintiffs Class' royalties attributable to Fuel Charges for such gas. The royalty payment methodology described in this section shall be implemented within forty-five (45) days of the Effective Date.

2.5    With respect to all Gathering Charges that are not Fuel Charges, commencing with its issuance of royalty checks for July 2007 production, OXY shall only deduct fifteen cents per mmbtu ($0.15/mmbtu) of the pro-rata share of the Gathering Charges from its royalty payments to members of the Plaintiff Class or their successors in interest. The royalty payment methodology described in this section shall be implemented within forty-five (45) days of the Effective Date.

2.6    It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest with respect to gas produced on or after July 1, 2008,  shall not be diminished or reduced by any charge other than fifteen cents per mmbtu ($0.15/mmbtu) for Gathering Charges, taxes owed by them or the actual cost of transporting such gas on a transmission pipeline.

2.7    With respect to any Gathering Charges that are in excess of the amounts identified in Section 2.4 and Section 2.5 above and that are taken with respect to gas produced after July 1,

13

2007, OXY shall, within one hundred and twenty (120) days of the Effective Date, make one or more prior period adjustments, as applicable, to the royalty checks of the Plaintiff Class so as to conform to the Section 2.4 and Section 2.5 royalty payment methodology. Such prior period adjustment or adjustments shall be made in accordance with OXY's standard practice in handling prior period adjustments.

2.8     OXY will continue to deduct all fees and costs payable to third-party mainline transmission companies so long as those fees and costs are incurred pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services.

2.9     Each settlement check issued to a member of the Plaintiff Class from the Settlement Fund shall include a legend on the back stating that:

> By endorsing this distribution check, payee represents and warrants that the payee is the current owner of the Settled Claims thus released, has not assigned or otherwise transferred the Settled Claims to anyone else, and will indemnify Plaintiffs' Counsel and OXY against a claim by anyone else as the owner of that Settled Claim.

Copies of the endorsements on checks issued from the Settlement Fund shall be provided to OXY at OXY's expense.

SECTION III
ADMINISTRATION AND DISTRIBUTION OF SETTLEMENT FUND

3.1     Plaintiffs' Counsel and such other authorized agents as may reasonably be retained and paid for as an expense of administration, subject to the supervision and approval of the Court, shall administer and calculate the amount to be paid to Participating Class Members, shall prepare and file the Payment Schedule, and shall oversee distribution of the Settlement Fund in accordance with this Stipulation and the Court's direction.

3.2     The Escrow Agent shall reimburse expenses incurred by Plaintiffs' Counsel for expenses chargeable to the Notice and Administration Fund in accordance with such orders as may be issued by the Court upon application of said Counsel.

3.3     Following the Effective Date, the remaining portion of the Settlement Fund shall be applied and disbursed by the Escrow Agent as follows:

(a)     payment of any remaining out-of-pocket expenses described in Section 2.3, not already paid pursuant to Section 3.2;

(b)     payment of Plaintiffs' Counsel's fees, and expenses approved by the Court pursuant to Section VI below;

(c)     distribution of the Net Settlement Fund to Claimants;

(d)     distribution to OXY of that portion of the Net Settlement Fund attributable to those Members of the Class who exclude themselves from the Class pursuant to the Notice described in Section 4.1 (e) or who cannot be identified or located; provided, however, that OXY agrees that it will not enter into any settlement with any such person or entity which is more favorable than the settlement being achieved by means of this Stipulation, providing that OXY reserves the right to settle any future litigation on an economical basis notwithstanding the foregoing.

(e)     distributions under Sections 3.3(d) above shall occur no later than one year after the Court approves the Payment Schedule or such other time as the Court may order.

3.4     The Court's approval of the fairness and reasonableness of the Plan of Allocation and the Payment Schedule shall be determined separately from the Court's determination of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation and any award of Plaintiffs' Counsels' fees and expenses.  Any order or proceedings relating to the Plan of Allocation or the Payment Schedule shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other Orders entered pursuant to or in furtherance of this Stipulation.

3.5    OXY shall have no responsibility for, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the allocation, determination, administration, calculation or payment of claims, or any losses incurred in connection therewith; provided however OXY agrees:

      (a)    To provide in a readily accessible electronic format the following information for each class member: owner number, owner name, owner decimal interest, cost center, cost center name, production date, and owner gathering amount (deductions);

      (b)    To provide to Plaintiffs' Counsel, in a readily accessible electronic format, the names, OXY I.D. numbers, tax I.D. numbers, and last known addresses of all Class Members who are currently or formerly OXY royalty owners;

      (c)    To provide Plaintiffs' Counsel with  access to all information in its files, at mutually convenient times and locations or by electronic means, which Plaintiffs' Counsel may reasonably require to assist them in locating Class Members or identifying their heirs or successors, including, but not specifically limited to, furnishing such evidence that OXY may have regarding change of ownership among Class Members;

      (d)    Under no circumstances shall the Plaintiff Class or Plaintiffs' Counsel be entitled to seek sanctions or contempt against OXY for any perceived or real failure by OXY to perform the tasks set forth in Subsections (a), (b) and (c) above.

3.6    Other than the right to obtain a refund pursuant to Sections 3.3(d), OXY shall have no right to participate in any proceedings regarding the disposition of any portion of the Net Settlement Fund.

3.7    No Claimant shall have any claim against Plaintiffs' Counsel, the Escrow Agent, the Claims Administrator or other agent designated by Plaintiffs' Counsel, OXY or OXY's counsel based on the distributions made in accordance with this Settlement, including, but not limited to, the Payment Schedule, and any further orders of the Court.

SECTION IV
IMPLEMENTATION OF PROPOSED SETTLEMENT

4.1     Preliminary Approval of Stipulation and Certification of Plaintiff Class.

As soon as practicable after this Stipulation has been executed, counsel for the parties

shall jointly submit this Stipulation to the Court for approval and shall jointly apply to the Court

for entry of the Notice Order (substantially in the form attached hereto as Exhibit 3) which shall,

among other things:

(a)     Set forth the recommendation of Plaintiffs' Counsel that the Stipulation and the Settlement set forth herein is fair, reasonable, adequate, in the best interests of the Class, and should be approved by the Court;

(b)     Pursuant to K.S.A. 60-215(a) and (d), approve the filing of Amendment and Supplement to Plaintiff's Amended Petition attached hereto as Exhibit 2;

(c)     Provide for the manner of exclusion from the Class;

(d)     Approve a form of Notice substantially in the form attached to the Notice Order for mailing to the Class Members;

(e)     Direct Plaintiffs' Counsel to mail or cause to be mailed the Notice to the Class Members;

(f)     Direct Plaintiffs' Counsel to cause the Notice to be published in the *Wichita Eagle,* Wichita, KS; *Tri-State News,* Elkhart, KS; *Lakin Independent,* Lakin, KS; *Garden City Telegram,* Garden City, KS; *Syracuse Journal,* Syracuse, KS; *Hugoton Hermes*, Hugoton, KS; *Southwest Daily Times*, Liberal, KS*; The Ulysses News*, Ulysses, KS; *Haskell County Monitor-Chief*, Sublette, KS; *The Hutchinson News*, Hutchinson, KS; and *Johnson Pioneer,* Johnson, KS;

(g)     Find that the mailing and publication pursuant to Sections 4.1(e) and (f) above constitute the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified through reasonable effort, and is sufficient notice of the matters set forth in the Notice to all Class Members, and that the Notice fully satisfies the requirements of due process and K.S.A. 60-223;

(h)     Schedule a hearing date for the Court to determine whether the Settlement and Plan of Allocation should be finally approved as fair, reasonable and adequate; determine whether an Order finally approving the Settlement and Plan of Allocation should be entered thereon; and, award counsel fees and expenses to Plaintiffs' Counsel;

(i)     Direct that Plaintiffs' Counsel  post on their Website a preliminary Payment Schedule listing by OXY I.D. number the members of the Plaintiff Class and the amounts to which they are entitled under the proposed Plan of Allocation (prior to any reduction for attorneys fees and expenses and for the Notice and Administration Fund and prior to any accrued interest)  by such date provided by the Court and that members of the Plaintiff Class have a designated period from the filing of such Payment Schedule to lodge any objections thereto;

(j)     Provide that any objections to the preliminary Payment Schedule, Settlement, Plan of Allocation or application for award of attorneys' fees and expenses shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Hearing (unless in its discretion, the Court shall direct otherwise) only if, on or before a date to be specified in the Notice Order, persons making objections shall file their objections and notice of their intentions to appear and copies of any papers in support of their position with the Clerk of the Court and serve such notice and papers on Plaintiffs' Counsel and OXY's Counsel;

(k)     Provide that, pending final determination of whether the Stipulation should be approved, no Participating Class Member, either directly, representatively, derivatively or in any other capacity, shall commence or prosecute against OXY or its respective predecessors and successors, and all of its respective present and former principals, officers, directors, employees, agents, shareholders, investors, insurers, affiliates, assigns, representatives, heirs, executors, and administrators, any action or proceeding in any court or tribunal asserting any of the Settled Claims;

(l)     Provide that OXY shall have no rights to any portion of the Settlement Fund, other than as specified in Section 3.3(d); and

(m)     Provide that the Hearing may, from time to time, and without further notice to the Class, be continued or adjourned by order of the Court.

4.2     Entry Of Final Judgment.

Upon approval by the Court of the Settlement, a Judgment shall be entered by the Court,

substantially in the form of Exhibit 4 hereto, which shall:

<div style="margin-left:2em">

(a)     Appoint Intrust Bank, or such other national bank designated by the Court and doing business in Wichita, Kansas, and having assets in excess of $1,000,000,000, as Escrow Agent, and approve the Escrow Agreement referenced in Section 2.1 above;

(b)     Approve the Settlement as entered into in good faith, and as fair, reasonable and adequate to the Class within the meaning of K.S.A. 60-223, and direct the parties thereto to consummate the Settlement in accordance with the terms and provisions of the Stipulation;

(c)     Dismiss the Action as against OXY with prejudice as to the Settled Claims as defined in Section 1.26 without costs and attorneys' fees to any party as against any other party; adjudge that the Settled Claims are settled, discharged, and released; adjudge that each Participating Class Member is deemed conclusively to have released the Settled Claims, notwithstanding that any Participating Class Member might hereafter discover facts in addition to or different from those which Members of the Class now know or believe to be true with respect to the Action and Settled Claims or the subject matter of the release; and bar and permanently enjoin any Participating Class Member from commencing or prosecuting either directly, representatively, derivatively or in any capacity, the Settled Claims against OXY;

(d)     Award reasonable attorneys' fees and expenses to Plaintiffs' Counsel to be paid out of the Settlement Fund;

(e)     Approve a Plan of Allocation;

(f)     Establish procedures for the filing of a final Payment Schedule; and

(g)     Reserve jurisdiction, without affecting the finality of the Judgment, over:  (1) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (2) disposition of the Settlement Fund; and (3) enforcing and administering the Stipulation.

</div>

## SECTION V
## CONDITIONS OF SETTLEMENT

5.1     This Stipulation shall be effective only on the condition that all of the following

events occur (or as provided in a notice of intent to proceed by all parties pursuant to Section

5.4):

        (a)     The Court enters the Notice Order, substantially in the form of
               Exhibit 3, as required by Section 4.1 herein;

        (b)     The Court enters the Judgment, substantially in the form of Exhibit
               4, as required by Section 4.2 herein;

        (c)     OXY has not withdrawn from the Stipulation pursuant to Section
               5.4; and

        (d)     There is an Effective Date.

5.2     Upon the occurrence of all of the events referenced in Section 5.1 above, or as

provided in notices of intent to proceed submitted by all parties to this Stipulation in accordance

with Section 5.4 below, all Participating Class Members: (a) shall be deemed to have dismissed

the Action against OXY with prejudice as to the Settled Claims as defined in Section 1.24; and

(b) acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle,

release and discharge the Settled Claims against OXY.

5.3     Upon the occurrence of all of the events referenced in Section 5.1 above, or as

provided in notices of intent to proceed submitted by all parties to this Stipulation in accordance

with Section 5.4 below, any and all interest or rights of OXY in or to the Settlement Fund shall

be absolutely and forever extinguished, other than its right to a remainder, if any, and to a refund

as provided in this Stipulation.

5.4     If the Court does not enter the Notice Order or Judgment, or if the Court enters

the Judgment and appellate review is sought and on such review the Judgment is materially

modified or reversed, then this Stipulation shall be canceled and terminated unless all of the

parties to this Stipulation, within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice of their intent to proceed with this Stipulation with revised conditions for the Stipulation to become effective in compliance with K.S.A. 60-223.  Such notice may be provided on behalf of OXY, by their respective counsel, and, on behalf of the Plaintiffs and the Class by Plaintiffs' Counsel.  Neither a modification of nor reversal on appeal of any amount of fees, costs, expenses and interest awarded by the Court to counsel for any of the Plaintiffs shall be deemed a material modification of or a part of the material terms of the Judgment or this Stipulation.

5.5     If this Stipulation does not become effective, the parties to this Stipulation shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation and related orders had not been executed.

<div align="center">

SECTION VI
PLAINTIFFS' COUNSEL'S FEES AND COSTS
</div>

6.1     Plaintiffs' Counsel shall file with the Court an application for:

     (a)     reimbursement of their expenses incurred by them in connection with the prosecution of the Action; and

     (b)     for an award of attorneys' fees.

6.2     Any and all attorneys' fees and expenses awarded to Plaintiffs' Counsel by the Court shall be paid by the Escrow Agent to Plaintiffs' Counsel from the Settlement Fund at the time established by the Court in conjunction with the Judgment.

6.3     It is agreed that the allowance or disallowance by the Court of any applications by any counsel for fees, costs, and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, is not part of the Settlement, and any order or proceeding

<div align="center">21</div>

relating thereto, or any appeal from any such order, shall not operate to terminate or cancel this Stipulation or to affect or delay the finality of the Judgment.

### SECTION VII
### MISCELLANEOUS PROVISIONS

7.1     Neither the Stipulation nor the Exhibits hereto nor any action taken to carry out the Stipulation is, may be construed as, or may be used as an admission by or against OXY of any fault, wrongdoing, or liability whatsoever.  Entering into or carrying out the Stipulation and any negotiations or proceedings related thereto shall not in any event be construed as, or be deemed to be evidence of, an admission or concession with regard to the claims of the Plaintiffs or the denials or defenses by OXY, and shall not be offered or received in evidence in any action or proceeding against OXY in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation.

7.2     Within sixty (60) days of the Effective Date, Plaintiffs' Counsel shall return to counsel for OXY all documents that were produced by OXY in this lawsuit, including all copies thereof in the possession of counsel, the Named Plaintiffs, their experts, or any other agents or third parties.  Plaintiffs' Counsel shall also deliver to counsel for OXY the originals and all copies of the transcripts of any depositions taken in this lawsuit in which documents designated by OXY as confidential were discussed or in which testimony designated as confidential was given.

7.3     This Stipulation shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, executors, administrators, heirs and legal representatives, and upon any corporation or other entity into or with which any party hereto may hereafter merge, combine or consolidate, as the case may be; provided, however, that no assignment by any party hereto shall operate to relieve such party of any obligations hereunder.

7.4    This Stipulation may be executed in one or more original or telecopied counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Counsel for the parties to this Stipulation shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

7.5    All of the exhibits attached hereto, as well as the exhibits attached to those exhibits, are hereby incorporated by reference as though fully set forth herein.

7.6    This Stipulation may be amended or modified only by written instrument signed by counsel for OXY and Plaintiffs' Counsel.

7.7    This Stipulation and the exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

7.8    All of the terms of this Stipulation and the exhibits hereto shall be governed by and interpreted in accordance with the laws of the State of Kansas.

7.9    Plaintiffs and all Persons engaged by them to assist them in the prosecution of the Action, including but not limited to their attorneys, experts, accountant, and agents, agree, to the extent permitted by law, that all agreements made during the course of Action relating to the confidentiality of information shall survive this Settlement.

7.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation. All parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement and the Stipulation.

23

7.11   The Plaintiff Class agrees that it will not take further action to pursue the claims described in Section 1.24 until either (1) Judgment is entered in accordance with Section 4.2 or (2) the Court declines to approve this Stipulation.

7.12   All parties agree to deal in good faith in implementing the Settlement and the Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized respective counsel as of the date first above written.

| PLAINTIFFS' COUNSEL | DEFENDANT'S COUNSEL |
|---|---|
| **FLEESON, GOOING, COULSON & KITCH, L.L.C.**<br>301 N. Main, 1900 Epic Center<br>Wichita, Kansas 67201-0997<br>Telephone (316) 267-7361<br><br>-and-<br><br>**KRAMER, NORDLING & NORDLING, LLC**<br>209 East Sixth Street<br>Hugoton, Kansas 67951<br>Telephone (620) 544-4333 | **SHARP McQUEEN, P.A.**<br>419 N. Kansas<br>Liberal, KS 67905-2619<br>(620) 624-2548<br><br>-and-<br><br>**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>(918) 594-0400<br><br>-and-<br><br>**GABLEGOTWALS**<br>1100 ONEOK Plaza<br>100 West 5th Street<br>Tulsa, OK 74103-4217<br>(918) 595-4800 |
| By: _____<br>    Gregory J. Stucky | By: _____<br>    M. Benjamin Singletary |

24

Exhibit 1 to Stipulation of Settlement

# EXHIBIT 1 TO STIPULATION OF SETTLEMENT

At the request of Plaintiffs and Plaintiffs' counsel with respect to the inclusion of Settled Claims, Section 1.26 (2), (3), (4), (5), and (9) of the Stipulation of Settlement, OXY makes the following statement with regard to the matters set forth below:

(1)    Whether OXY Has Used the Correct Starting Point in its Royalty Calculations.

In the normal course of its business, OXY paid royalty based on the royalty owner's percentage interest multiplied by the proceeds received from the sale of that production less a pro rata share of Gathering Charges and Transportation Charges. The starting point of this calculation is the sales proceeds. How the sales proceeds have been determined has changed over time. Prior to the formation of Occidental Energy Marketing Inc. ("OEMI"), OXY determined the sales proceeds for use in payment of royalties to Members of the Plaintiff Class by computing a Weighted Average Sales Price received for gas produced and sold. After the formation of OEMI, in most cases the sales proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices. The index prices included but were not necessarily limited to Inside FERC, PEPL (TX, OK), NoNat (Demarc) and WNG (TX, OK, KS). In some cases, at specific delivery points, a price equal to the price that OEMI receives is used to establish sales proceeds. It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty.

(2)    Whether OXY Is Correctly Computing Royalties on NGL's and Helium.

OXY now pays (and previously has paid) royalties on NGL's and helium by applying the applicable royalty percentage to one hundred percent (100%) of the proceeds of sale which it receives for liquid hydrocarbons and helium after deducting the cost of processing where

applicable and the applicable severance taxes. OXY allocates back to each lease on a mmbtu basis with respect to liquids and on a volumetric basis with respect to helium.

        (3)    <u>Whether It Is Improper for OXY to Deduct Transportation Expenses.</u>

When and if OXY deducts any expenses incurred for activities that take place after the gas enters the main-line transmission system, those expenses (and related deductions) do not (and will not) include any Gathering Charges, which are defined in Section 1.10 of the Stipulation of Settlement. When OXY deducts such expenses from its royalty payments, the deduction is for transportation and fuel expenses charged by third parties to transport the gas to the point of sale. Royalty owners are charged their proportionate share of such expenses, and the Stipulation of Settlement expressly provides for the continued deduction of such expenses.

        (4)    <u>Whether the Deductions Are Unreasonable in Amount.</u>

OXY has, in calculating its royalty, deducted from its downstream sales price a pro-rata share of the Gathering Charge assessed by third parties and no more than its actual costs of operating its own Gathering Facilities. These deductions are shown on royalty checks. When taking such deductions, OXY has not included any other charge, expense or assessment not shown on the royalty check with respect to activities that take place off the gathering systems involved in this case.

        (5)    <u>Compressed and Non-Compressed Volumes.</u>

In the course of finalizing the Settlement Term Sheet, OXY provided data concerning historical volume and gathering deductions attributable to royalty interests for selected Kansas Hugoton properties. See Exhibit 1 to Settlement Term Sheet. The information contained on Exhibit 1 represents a reasonable estimate and allocation of production and accounting numbers. OXY reasonably believes that the time and expense that would be required to further refine or

confirm the information contained in Exhibit 1 would outweigh any possible benefit to the refinement that may or may not result from such additional work.  Finally, with respect to the non-compressed volumes contained on Exhibit 1, OXY would advise that it has not been charged transportation charges in excess of the rates provided in FERC tariffs generally applicable to all transporters of gas.

**Exhibit 2 to Stipulation of Settlement**

FLEESON, GOOING, COULSON & KITCH, L.L.C.
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997
Telephone (316) 267-7361

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, )
co-trustees of the Opal Littell )
Family Trust, and BONNIE BEELMAN, )
individually and as representative )
plaintiffs on behalf of persons )
or concerns similarly situated, )
)
                        Plaintiffs, )
)                                      Case No. 98-CV-51
v. )
)
OXY USA INC., )
)
                        Defendant. )
_____ )

**AMENDMENT AND SUPPLEMENT
TO PETITION**

COME NOW the Plaintiffs and Plaintiff Class, and pursuant to K.S.A. 60-215(a) and (d)

and the Stipulation of Settlement between the parties, hereby supplement and amend their

Petition to include the following:

1.     For purposes of describing claims that are to be released pursuant to the Stipulation of

Settlement for acts and omissions occurring prior to July 1, 2007, Plaintiffs and Plaintiff Class

hereby amend and supplement the Petition herein, deemed filed on November 13, 1998, to include,

in addition to those claims identified in the Petition, the following claims:

a.  Under the Leases, or under any legal or equitable theory, OXY USA Inc. ("OXY") should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

b.  OXY failed to use the proper starting point for calculation of royalty to the Plaintiff Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

c.  OXY has failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

d.  OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

2

e.   Deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

f.   OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

g.   OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 *et seq.*, K.S.A. 55-1614 *et seq.*, and/or under any other legal or equitable theory;

h.   Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties, should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

3

i.      OXY owes additional royalty, including any royalty in excess of the royalties paid on

100% of the index price with respect to the Gas Purchase Contract effective June 1,

2000 between OXY and OEMI and their respective successors and assigns.

2.      This amendment and supplement does not apply to, refer to, or seek any relief in

connection with, any acts or omissions by OXY that may occur in the future unless specifically set

forth in the Stipulation, and this amendment and supplement is not intended to make ineffective the

Petition, except to the extent that the Petition is inconsistent or contrary to the language contained

herein.

WHEREFORE, Plaintiffs and Plaintiff Class pray that their Petition be amended and

supplemented in the manner described above.

Respectfully submitted,

FLEESON, GOOING, COULSON & KITCH, L.L.C.


By_____
        Thomas D. Kitch, #07034
        Gregory J. Stucky, #09674
        David G. Seely, #11397
        301 North Main, Suite 1900
        Wichita, Kansas 67202
        Telephone (316) 267-7361

                -and-

        Erick E. Nordling
        KRAMER, NORDLING & NORDLING, L.L.C.
        209 East Sixth Street
        Hugoton, Kansas 67951
        Telephone (620) 544-4333

        *Attorneys for Plaintiffs and Plaintiff Class*

4

**Exhibit 3 to Stipulation of Settlement**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co-    )
trustees of the Opal Littell Family Trust, and    )
BONNIE BEELMAN, individually and as    )
representative plaintiffs on behalf of persons    )
or concerns similarly situated,    )
    )
         Plaintiffs,    )
    )
    )   Case No. 98-CV-51
    )
vs.    )
    )
OXY USA INC.,    )
    )
         Defendant.    )
    )

**NOTICE ORDER**

On this _____ day of _____, 2008, this case comes before the Court on the

joint motion of the parties requesting that the Court: (1) conditionally approve the Stipulation of

Settlement ("Stipulation"); (2) approve a Notice for mailing to the Plaintiff Class members; and

(3) schedule a Hearing to consider approval of the Stipulation, the Plan to Allocate the

Settlement proceeds among Plaintiff Class members, the appointment of an Escrow Agent, and

the approval of the amount of attorneys' fees and expenses. Plaintiffs and the Plaintiff Class

members appear by and through Thomas D. Kitch, Gregory J. Stucky, and David G. Seely of

Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas and Erick E. Nordling of Kramer,

Nordling & Nordling, LLC, Hugoton, Kansas. Defendant OXY USA Inc., ("OXY") appears by

and through Kerry McQueen of Sharp, McQueen, McKinley, McQueen & Dodge, P.A., of

Liberal, Kansas, T. Lane Wilson of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. of

Tulsa, Oklahoma and M. Benjamin Singletary of GABLEGOTWALS of Tulsa, Oklahoma.

WHEREUPON, the parties advise the Court that, after lengthy and difficult negotiations, they have entered into a Stipulation of Settlement ("Stipulation") which is subject to approval by this Court pursuant to K.S.A. 60-223 and is attached hereto as Exhibit A.

After hearing statements of counsel, after taking into account matters contained in the Court file and prior proceedings in this matter, and after otherwise being duly advised of pertinent circumstances, the Court makes the following findings:

(1)   The Stipulation sets forth the terms and conditions upon which Plaintiffs and OXY have agreed to settle the claim that OXY has failed to properly calculate and pay royalty under those oil and gas leases identified in the Plaintiff Class description set forth below by deducting from such payments the Gathering Charges as defined in the Stipulation (the "Claim for Wrongful Deductions") and other possible claims (the "Settled Claims"). The definitions in the Stipulation of Settlement are incorporated by reference.

(2)   On March 31, 2001, pursuant to K.S.A. 60-223, the Court certified the Action as a class action for purposes of pursuing the Claim for Wrongful Deductions and defined the class (the "Plaintiff Class") in the manner set forth in the Notice of Class Action mailed to members of the Plaintiff Class on or about July 24, 2001:

> All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas production from above the base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member. Plaintiffs exclude from the plaintiff class the United States of America insofar as its mineral interests are managed by the Mineral Management Service but otherwise include the instrumentalities of the United States of America and federally chartered corporations, including, but not limited to, the Farm Credit Bank of Wichita and Federal Land Bank.

2

(3)     The Claim for Wrongful Deductions was the subject of a bench trial before the Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from March 31, 2003 until April 7, 2003.  Thereafter, the parties filed proposed findings of fact and conclusions of law and presented oral argument to the Court on May 29, 2003.  In their submissions to the Court, Plaintiffs requested that: (1) OXY be ordered to provide an accounting for all deductions taken by it from royalty payments which it made to each individual member of the Plaintiff Class during the period from November 13, 1993, to the present for Gathering Charges, including fuel; (2) OXY be ordered to cease taking such deductions in the future; (3) OXY be ordered to pay prejudgment interest on the amount of all improper deductions; (4)  the Court determine whether OXY violated K.S.A. 55-1620; and (5) Plaintiffs' recover on other claims asserted in the Pretrial Order filed on October 24, 2002.

(4)     In February of 2007, not having received any ruling from the Court and desiring to bring closure to this litigation, which has now lasted for more than nine (9) years, the parties commenced settlement negotiations.   Those negotiations were complex and difficult and occurred over a period of six (6) months, addressing both the past and the future, involving face-to-face meetings and phone conferences between counsel for the Plaintiff Class and OXY. Finally, on August 9, 2007, the parties reached the agreement which is the subject of this Stipulation of Settlement and subject to court approval.

(5)     During the course of the negotiations described above and in response to inquiries from counsel for Plaintiffs, OXY estimated that the total amount of deductions being disputed in the Action from and after December 1993 through July 2007 and including deductions reflected in its royalty checks to the members of the Plaintiff Class (i.e., for production that occurred during the month of June 2007) would total $23.7 million, not including any liability for

3

prejudgment interest. Although Plaintiffs have no grounds to dispute this and believe that it is within the reasonable range of the computations they have been able to make with their own limited data, they have not (and cannot) perform an audit of such deductions or otherwise provide independent confirmation of the accuracy of such number. For all these reasons, when negotiating and assessing the reasonableness of the Settlement that has been reached, Plaintiffs and their counsel have relied on OXY's estimate of its potential liability for the period described above.

(6)     During the negotiations, OXY requested and Plaintiffs agreed to provide a release of all possible claims of members of the Plaintiff Class against OXY or any related company that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions. Such requested release includes those items listed in paragraphs 1 through 3 above and includes, but is not limited to, the additional items specifically listed in the definition of Settled Claims. The parties recognize that any such release, in order to satisfy the requirements of due process, must be based upon full disclosure of the terms of the settlement to the Class Members, including statements of fact by OXY, when appropriate, upon which they may rely when providing such release in the form set forth elsewhere herein. In this connection, Plaintiffs and their counsel confirm and acknowledge that such statements of fact, which are set forth in Exhibit 1 to the Stipulation, explain why they did not include certain claims in the Action in the first place. Plaintiffs agree to file in the form attached to the Stipulation as Exhibit 2 an Amendment and Supplement to Petition, listing the claims identified in the definition of Settled Claims.

(7)     Plaintiffs and their counsel enter into this Stipulation: (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the

Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class.

(8)     OXY has denied and continues to deny the claims alleged by Plaintiffs against it in the Action.  OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action.  OXY enters into this Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class, and OXY and to avoid the further expense, inconvenience, and disruption of defending against the Action and other possible actions.  OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of the Claim for Wrongful Deductions and the possibility of being required to defend other claims such as those set forth in the definition of Settled Claims.  OXY has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth herein.

(9)     In view of the foregoing, and the other matters of record in the Action, the parties hereto now propose to settle and discharge the Action, in accordance with the terms and provisions of their Stipulation.

(10)    The Court has reviewed the Stipulation agreed to by the parties and, subject to further proceedings, finds that it is fair, reasonable, and adequate.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that:

1.     The Stipulation is conditionally approved, subject to further proceedings as set forth in the following paragraphs.

2.     OXY has delivered to Plaintiffs' Counsel, in a readily accessible electronic format, the names, the OXY I.D. numbers, tax I.D numbers, and addresses of members of the Plaintiff Class who are currently or formerly OXY USA Inc., royalty owners.

3.     On or before January 24, 2008, Plaintiffs' Counsel shall mail to those persons and entities appearing on the list described in paragraph 2, a copy of the Notice, including the Plan of Allocation, which is attached hereto as Exhibit B. The Court approves the Notice attached hereto as Exhibit C, which advises members of the Plaintiff Class that the Action is to be settled on the terms and conditions set forth in the Stipulation, that the Settled Claims will be dismissed with prejudice if judgment is entered pursuant to the Stipulation, that each member has the right to opt out of the Plaintiff Class, and that each remaining member of the Plaintiff Class has the right to appear at the hearing scheduled below to object to any terms of the settlement or to the Plan of Allocation or to the application for attorneys' fees and expenses to be filed by Plaintiffs' Counsel.

4.     OXY has delivered to Class Counsel, in a readily accessible electronic format, the following information for each member of the Plaintiff Class: owner number, owner name, owner decimal number, cost center, cost center name, production date, and owner gathering amount (deduction).

5.     On or before January 24, 2008, Class Counsel shall post on its website (www.fleeson.com) a preliminary Payment Schedule that assumes that the Plan of Allocation will be approved. The preliminary Payment Schedule need not include any fees and expenses that may later be approved by the Court and need not include any accrued interest, but shall

conspicuously state whether such fees and/or interest is so excluded or included. The preliminary Payment Schedule shall refer to members by OXY owner number and not by name. Within ten (10) days of such posting, Plaintiff Class Counsel shall file the preliminary Payment Schedule with the clerk.

6.     Within fifteen (15) days of mailing the Notice, Plaintiff Class Counsel shall file with the clerk an affidavit identifying the persons to whom the Notice has been mailed.

7.     Within ten (10) days after the date provided for mailing of the Notice, Plaintiffs' Counsel shall cause a copy of the Notice, attached hereto as Exhibit D to be published in the publications identified in Section 4.1(f) of the Stipulation, and a week after the first publication, cause a copy of the Notice to be again published in the same newspapers.

8.     Mailing and publication as set forth herein constitutes the best notice practicable under the circumstances, including individual notice to all Plaintiff Class members who can be identified through reasonable effort, and is sufficient notice of the matters set forth in the Notice to all Plaintiff Class members. The Notice together with the mailing and publication set forth herein fully satisfy the requirements of due process as required under K.S.A. 60-223.

9.     On March 4, 2008 at 9:00 a.m., a hearing ("Hearing") will be held in the courtroom in the Stevens County Courthouse, Hugoton, Kansas to determine whether the Stipulation and Plan of Allocation should be finally approved as fair, reasonable and adequate, to consider any objections thereto, to determine whether judgment should be entered as contemplated by the Stipulation, and to consider the application for attorney fees and expenses.

10.     Plaintiffs' Counsel shall file any application for attorney fees and expenses on or before February 20, 2008.

11.     Any objections to the Stipulation, Plan of Allocation, the preliminary Payment Schedule, or application for award of attorneys' fees and expenses shall be heard and any documents submitted in support of said objections shall be received and considered by the court at the hearing, only if, on or before February 26, 2008, persons making objections follow the procedures set forth in the Notice.

12.     Pending final determination of whether the Stipulation should be approved, no participating Plaintiff Class member, either directly, representatively, derivatively, or in any capacity, shall commence or prosecute against OXY, as OXY is defined in the Stipulation, any action or proceeding in any court or tribunal asserting any of the Settled Claims.

13.     OXY shall have no right to any portion of the Settlement Fund other than as specified in Section 3.3(d) of the Stipulation.

14.     The Hearing may, from time to time, and without further notice to the Plaintiff Class, be continued or adjourned by order of the Court.

IT IS SO ORDERED as of _____, 2008.

_____
Honorable Tom R. Smith, District Judge

**APPROVED:**

| PLAINTIFFS' COUNSEL | DEFENDANT'S COUNSEL |
|---|---|
| **FLEESON, GOOING, COULSON & KITCH, L.L.C.**<br>301 N. Main, 1900 Epic Center<br>Wichita, Kansas 67201-0997<br>Telephone (316) 267-7361<br><br>-and-<br><br>**KRAMER, NORDLING & NORDLING, LLC**<br>209 East Sixth Street<br>Hugoton, Kansas 67951<br>Telephone (620) 544-4333 | **SHARP McQUEEN, P.A.**<br>419 N. Kansas<br>Liberal, KS 67905-2619<br>(620) 624-2548<br><br>-and-<br><br>**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>(918) 594-0400<br><br>-and-<br><br>**GableGotwals**<br>1100 ONEOK Plaza<br>100 West 5th Street<br>Tulsa, OK 74103-4217<br>(918) 595-4800 |
| By:_____ | By:_____ |

781967.1:633090:01230

9

**Exhibit A to Notice Order**
**(This Exhibit is the Stipulation of Settlement)**

**Exhibit B to Notice Order**

## PLAN OF ALLOCATION

The total amount of Deductions charged to the account of each Participating Class Member shall be determined and the Net Settlement Fund shall be divided among such Participating Class Members based upon the ratio of his or her total Deductions to the total amount of Deductions taken from all Participating Class Members.

EXHIBIT B

**Exhibit C to Notice Order**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER,
co-trustees of the Opal Littell Family Trust,
and BONNIE BEELMAN, individually
and as representative plaintiffs on behalf of
person or concerns similarly situated,

        Plaintiffs,

    v.

OXY USA, Inc.,

        Defendant.

CASE NO. 98-CV-51

# NOTICE OF PROPOSED
# SETTLEMENT OF CLASS ACTION

## THIS IS AN OFFICIAL NOTICE SENT TO YOU UNDER COURT ORDER FROM THE HONORABLE TOM R. SMITH, PRESIDING JUDGE, TO:

      All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas production from above the base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member. Plaintiffs exclude from the plaintiff class the United States of America insofar as its mineral interests are managed by the Mineral Management Service but otherwise include the instrumentalities of the United States of America and federally chartered corporations, including, but not limited to, the Farm Credit Bank of Wichita and the Federal Land Bank.

      The above-described persons or entities are called "the Class."

## THIS NOTICE CONTAINS INFORMATION ABOUT YOUR RIGHTS AS A MEMBER OF THE PLAINTIFF CLASS. PLEASE READ CAREFULLY.

      You are being sent this Notice because you appear to be a member of the Plaintiff Class. The purpose of this Notice is to inform you that:

1.      The Plaintiffs and OXY USA Inc. ("OXY") have entered into a Stipulation of Settlement (the "Settlement Agreement") pursuant to which they have agreed to settle certain claims which have been asserted or could have been asserted on behalf of the Plaintiff Class against OXY;

2.      The District Court of Stevens County must approve the Settlement Agreement before it can become effective;

3.      You should carefully review the information set forth below to assist you in understanding the nature of the dispute that is being settled and the manner in which you will benefit from such settlement;

4.      The District Court of Stevens County will conduct a hearing on March 4, 2008 at 9:00 a.m. for the purpose of making a final determination as to whether the Settlement Agreement is reasonable, adequate and fair; whether the Plan of Allocation and Payment Schedule proposed by the Plaintiffs for distributing money to the members of the Plaintiff Class should be approved; establishing the amount of the Notice and Administration Fund; awarding attorneys fees and expenses; and considering other matters which may come before the Court; and

5.      You have the right to appear and participate in the above hearing, secure additional information and take such action as you may deem appropriate in accordance with the directions set forth below.

### TO OBTAIN THE BENEFITS OF THIS PROPOSED SETTLEMENT YOU DO NOT HAVE TO DO ANYTHING.

### SUMMARY OF THE LITIGATION

Plaintiffs commenced this action on November 13, 1998, claiming that OXY was improperly deducting expenses, which are generally identified as "gathering/compression" or "marketing deduct" on its monthly gas revenue detail (hereafter referred to as "Deductions"), from their monthly royalty payments.

Throughout this case, OXY has claimed that the Deductions are proper under Kansas law and has continued to subtract such expenses from its royalty payments to plaintiffs.

On March 6, 2001, this Court ruled that this lawsuit could be maintained as a class action, and designated Plaintiffs Opal Littell and Cherry Rider, co-trustees of the Opal Littell Family Trust, and Bonnie Beelman to serve as representatives of the Class, and Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, and Kramer, Nordling & Nordling, LLC, Hugoton, Kansas, to serve as Class Counsel.

On or about July 24, 2001, Class Counsel sent a written "Notice of Class Action" to approximately 2600 members of the Plaintiff Class. Unless you excluded yourself from the Class, the above representative Plaintiffs and Class Counsel have been acting on your behalf in this litigation since that time.

This action was tried to the Court, sitting without a jury, in late April and early May of 2003. The evidence presented by the parties raised numerous issues which the trial judge was requested to resolve, including but not limited to the following:

1.      Whether all or a portion of the expenses being deducted by OXY were (and still are) being incurred to produce the gas in a captive state and in paying quantities.

2.      Whether all or a portion of the expenses being deducted by OXY were (and still are) being incurred to place the gas in marketable condition.

3.      Whether all or some of the leases under which OXY was paying royalties to the Plaintiff Class permit it to deduct expenses incurred off the leased premises, regardless of the purpose for which they were (are) being incurred.

4.      Whether the raw gas produced by OXY is in marketable condition when it emerges from the well.

5.      Whether Kansas law requires OXY to bear all expenses associated with placing the raw gas in the condition required by the pressure and quality specifications set forth in the tariffs published by the transmission pipeline companies, which transport the gas from the Hugoton Field to the markets where it is consumed.

6.      Whether any of the raw gas produced by OXY meets (or has ever met) the tariff specifications without first being compressed, dehydrated, processed or treated on or adjacent to the gathering systems which connect the wells to such transmission pipelines.

7.      Whether any of the raw gas produced by OXY has ever flowed out of (or could ever flow out of) the wells and into the gathering system without the assistance of some or all the compressors located on or at the end of the gathering systems to which the wells are connected.

8.      Whether OXY's utilization of equipment, consisting primarily of pipelines, compressors and dehydrators, owned and operated by third parties in the Hugoton Field (i.e., ONEOK Field Services Company, Duke Energy Field Services, which purchased gathering facilities owned by Panhandle Field Services, Anadarko Gathering Company, Timberland Gathering and Processing Company, El Paso Field Services Company, Panhandle Field Services, Pioneer Natural Resources and Frontstreet Partners, which purchased gathering facilities owned by Williams Field Services) to gather, compress, dehydrate and treat its gas; as well as its utilization of plants not owned by OXY (i.e., Lakin, National Helium, Bushton, Jayhawk, and Satanta) to process such gas, constitutes evidence that its gas is in marketable condition at the wellhead, thereby entitling it to take the Deductions.

9.      Whether the fact that raw gas could be sold at the wellhead or used to heat houses or power engines inside the field, without first being placed in the condition required by the transmission pipeline tariffs, constitutes evidence that the gas which OXY actually delivers to the transmission pipeline is in marketable condition at the wellhead, thereby entitling it to take the Deductions.

During the trial the parties presented thousands of pages of documents and testimony, and expert witnesses were called upon to explain complex principles associated with the production and marketing of natural gas, as well as the economics and practices of the natural gas industry.

Although it has received written briefs and heard oral arguments from the parties suggesting how these issues should be resolved, the Court has not yet ruled on whether OXY is entitled to take the Deductions from its royalty payments to the Plaintiff Class.

You may examine many of the significant papers filed in this lawsuit, including a proposed Preliminary Payment Schedule, by accessing the following Web Site: www.fleeson.com. The official court file may be inspected during regular office hours at the Office of the Clerk, 200 East 6th Street, Hugoton, Kansas 67951.

## BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT

OXY estimates that the principal amount of Deductions, excluding any interest, which it subtracted from royalty payments to the Class for gas produced during the period from December 1, 1993, through June 30, 2007, to have been $23.7 million.

Under the Settlement Agreement, upon fulfillment of the conditions set forth below, OXY will deposit $16.7 million, plus simple interest accruing at the rate of 5.625 percent from November 21, 2007, until the date of deposit, in escrow in a banking institution approved by the Court, which is hereafter referred to as the "Settlement Fund" and is to be distributed to the Class in accordance with the Plan of Allocation (see below), in exchange for OXY's full and complete release from liability by the Plaintiffs and the Class (also described below).

OXY will deposit $16.7 million as referenced in the foregoing paragraph after all of the following events occur:

        (a)    The Court enters a Notice Order as set forth in the Settlement Agreement, providing for notice to the Class;

        (b)    The Court enters the Judgment as set forth in the Settlement Agreement;

        (c)    OXY has not withdrawn from the Settlement Agreement pursuant to its terms; and

        (d)    The Judgment becomes final as set forth in the Settlement Agreement.

In addition, when calculating royalty payments to the Class on gas produced on or after July 1, 2007, OXY has agreed to limit Deductions in the following manner:

(1)    Commencing with its payment of royalties on gas produced on or after July 1, 2008, OXY shall cease taking Deductions for fuel used to operate compressors.

(2)     Commencing with its payment of royalties on gas produced on or after July 1, 2007, OXY shall limit its Deductions for Gathering Charges to 15 cents per mmbtu.

The Settlement Agreement cannot be implemented unless and until it has been approved by the Court, which has set this matter for hearing on March 4, 2008.  Not later than 120 days after the settlement has been approved and becomes effective, OXY will make retroactive adjustments  to the royalty accounts of the Class Members, giving them credit for and paying to them the difference between the Deductions taken for expenses other than compressor fuel and the amount (15 cents per mmbtu) which it is allowed to assess for other Gathering Charges under the terms of the Settlement Agreement for gas produced on or after July 1, 2007.

Representative Plaintiffs and Class Counsel believe the settlement is in the best interests of the Class and will present testimony at the hearing that it is fair and reasonable for a number of reasons, including the following:

1.     The benefits generated by the Settlement Agreement far outweigh the risks associated with continuing this litigation.

2.     The avoidance of further delay in a case that has already lasted nine years and otherwise could continue for several more years.

3.     The elimination of uncertainty, including the risk of substantial increases in Deductions due to higher volumes and prices of compressor fuel, with regard to the manner in which royalties will be calculated in the future.

4.     When compared to the total possible future Deductions (fuel plus gathering fees) and  the price received for residue gas, the amount of the gathering Deduction permitted to be taken under the Settlement Agreement (15 cents per mmbtu plus compressor fuel for a period of only one year)  is nominal.

5.     The present value of the substantial curtailment of the Deductions, as reflected in increased royalties to be received by the Class in the future, is substantial.

6.     The relief obtained for the Class is substantially similar to what has been achieved in other settlements approved by the Court in other class actions in the Hugoton Field when the amount at issue is adjusted downward to account for the following unique circumstance:  A relatively small (and steadily declining) percentage of the gas involved in this case flows directly into transmission pipeline facilities without first being compressed, dehydrated or processed.  OXY estimates that the gathering fees deducted from royalty payments for this non-compressed gas (exclusive of fuel charges) to have been approximately $3.8 million.

As used in this Notice and for purposes of the payment of damages, the release received by OXY in exchange therefore and the manner in which royalties on residue gas are to be computed in the future, "Deduction" is defined as follows:

Any and all charges, expenses or assessments, including fuel, associated with any and all activities occurring between the wellheads and the point at which the gas

enters a transmission pipeline facility functioning under the terms of a tariff approved by the Federal Energy Regulatory Commission or its successor, including but not limited to compression and dehydration (but excluding the extraction of natural gas liquids, helium or other marketable products in a processing plant), regardless of (1) whether such activities occur on or off the leased premises, (2) what entity provides such services or how it is paid for; and (3) where or how title to the gas is transferred (commonly referred to as "gathering").

It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest on residue gas produced from and after July 1, 2007, shall not be diminished or reduced by any charge other than taxes owed by them and (1) their allocated share of compressor fuel for a period of one year and (2) a gathering fee of 15 cents per mmbtu.

Nothing contained in the Settlement Agreement is intended to alter or restrict OXY's ongoing practice of charging the accounts of its royalty owners with a pro-rata share of the fees and costs which it incurs to process the gas in a processing plant and to transport it on mainline transmission pipelines under approved FERC tariffs, so long as such royalty owners continue to receive the benefits of such activities in the form of their allocated share of the proceeds of sale received by OXY for the natural gas liquids, helium or other extracted products and the residue gas which is sold after such transportation and processing occur.

## RELEASE OF CLAIMS AGAINST OXY BY THE CLASS

In exchange for its payment of the Settlement Fund, OXY requires that it be released from any and all claims that it underpaid royalties due to the Plaintiff Class on gas produced during the period ending July 1, 2007, and any claim that it is not entitled, in the future, to make the Deductions for fuel and gathering charges referenced above. Specifically, if the Settlement is approved, OXY would be released by all members of the Plaintiff Class from:

Any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act, conflicts of interest, tortious acts, intentional acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to July 1, 2007, that were or could have been properly alleged in the Action and that in any way relate to the Leases, OXY's operation of the Leases or its failure to operate the Leases, including but not limited to claims that OXY improperly deducted expenses or otherwise failed to fully, fairly and accurately account for and pay to its royalty owners what they were due under the Leases.

These are called the "Settled Claims."

As a member of the Plaintiff Class, you will be consenting to the above release of Settled Claims. In this connection, you should understand the following:

1.     The release will not affect any claim not included in the Settled Claims, including a claim for surface damage, nor will it affect mathematical errors or other events requiring subsequent period adjustments which are made by OXY in the ordinary course of its business.

2.     Except as required to bring and pursue this action for allegedly wrongful Deductions, Class Counsel have made no investigation of the manner in which OXY has operated the leases or accounted to the Plaintiff Class for royalties owed to them under such leases.

3.     Other than OXY's subtraction of the Deductions from royalty payments, Class Counsel are not aware of any activities by OXY during the period covered by this lawsuit which gave rise to a claim for damages which they believe could have been meritoriously asserted against OXY on behalf of the Plaintiff Class.

## PROPOSED PLAN OF ALLOCATION AND PAYMENT

If the Court approves the Settlement Agreement, the Settlement Fund, after certain reductions for fees and expenses, plus interest earned thereon, will be distributed to those members of the Plaintiff Class participating in the Settlement ("Participating Class Members") in accordance with the Plan of Allocation approved by the Court.

If the Court approves the Settlement Agreement, the Settlement Fund plus accumulated interest will be reduced by: (1) up to a maximum of $61,000, unless a greater amount is approved by the Court (the "Notice and Administration Fund"), for out-of-pocket expenses incurred to administer the Settlement Fund, including escrow fees, the reproduction and mailing of this Notice, the performance of computations necessary to make distribution to Participating Class Members under the Plan of Allocation, the preparation and submission of a detailed listing of the payments to be made to such Class Members (the "Payment Schedule") to the Court, for its approval, the subsequent distribution of such monies to such Class Members, and related activities; and (2) reasonable attorneys fees and expenses incurred by Class Counsel on behalf of the Plaintiff Class as determined by the Court. The remainder of the Settlement Fund, after such reductions, is called the Net Settlement Fund.

At the Settlement Hearing described below, Class Counsel will request that the Court approve allocation of the Net Settlement Fund on the following basis:

The total amount of Deductions charged to the account of each Participating Class Member shall be determined and the Net Settlement Fund shall be divided among such Participating Class Members based upon the ratio of his or her total Deductions to the total amount of Deductions taken from all Participating Class Members.

"Participating Class Member" means each Class Member who does not "opt out" of the class under the procedure described below.

Prior to the Settlement Hearing described below, Class Counsel will perform the calculations necessary to show what each Class Member would receive under the proposed Plan of Allocation prior to any reduction for any award or allowance made by the Court for the Notice and Administration Fund and attorneys fees and expenses and prior to any accrued interest. Class Counsel will file this "Preliminary Payment Schedule" with the Clerk of the District Court of Stevens County, Kansas, on or before February 4, 2008. You may inspect the Preliminary Payment Schedule in the Clerk's office during normal business hours or by accessing Class Counsel's website (http://www.fleeson.com). Please note that the Preliminary Payment Schedule will identify Class Members by reference to their OXY Owner Numbers and not by name.

No distributions will be made to Participating Class Members until after the Judgment approving the Settlement has become final for all purposes, which will not occur until the time in which an appeal can be filed has expired or any appeal therefrom has been fully resolved.

## APPLICATION FOR ATTORNEYS FEES AND EXPENSES

At the Settlement Hearing described below, the Court will determine the fair and reasonable amount of attorneys' fees and expenses to be awarded Class Counsel. Class Counsel will apply to the Court for reimbursement of out-of-pocket expenses which they have advanced on behalf of the Plaintiff Class and for an award of attorneys' fees. Class Counsel intend to seek reimbursement for such expenses totaling approximately $166,136.00. Class Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third (1/3rd) of the value of the settlement to the Class which remains following payment of: the expenses charged to the Notice and Administration Fund, and the reimbursement of out-of-pocket expenses incurred by Class Counsel and approved by the Court. In their fee application, Class Counsel will not request a percentage of the value represented by the additional royalty income which the Plaintiff Class will receive in connection with gas produced from and after July 1, 2007. No distribution of fees and expenses to Plaintiffs' Counsel will be made until after the Judgment approving the Settlement has become final.

## ELECTIONS BY MEMBERS OF THE PLAINTIFF CLASS

If you are a member of the Plaintiff Class, you have a choice whether to (a) participate in the proposed Settlement by remaining a member of the Plaintiff Class or (b) decline to participate in the proposed Settlement by excluding yourself as a member of the Plaintiff Class. Either of these two choices will have its consequences, which you should understand before making your decision:

If you wish to participate in the proposed Settlement, you are not required to do anything at this time. If the Court approves the proposed Settlement, you would then become entitled to

receive your allocated portion of the Net Settlement Fund under the Plan of Allocation approved by the Court. In return, you would be barred from pursuing any of the Settled Claims against OXY.

If you wish to be excluded from the proposed Settlement, you must complete the attached "Exclusion Request" form and return it to "Clerk of the Court" by mail postmarked no later than February 26, 2008. If you elect to be excluded, you will not be entitled to share in the Net Settlement Fund but will be free to pursue any claims against OXY that you might have on your own and at your own expense.

## THE SETTLEMENT HEARING

A Hearing will be held on March 4, 2008 at 9:00 a.m. in the courtroom of the District Court of Stevens County, Kansas, in the county courthouse, at 200 East 6th Street. Hugoton, Kansas, to determine (a) whether the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Plaintiff Class and should be approved by the Court; (b) whether the preliminary Payment Schedule should be approved; (c) whether the proposed Plan of Allocation for distribution of the Net Settlement Fund should be approved; (d) whether the Notice and Administration Fund should be approved; (e) whether the application for reasonable fees and expenses of Class Counsel should be approved; and to take any further action which the Court deems appropriate.

At that Hearing, Class Counsel will express the opinion that the proposed Settlement is fair, adequate, and reasonable and in the best interest of the Plaintiff Class and should be approved.

Any member of the Plaintiff Class, who does not exclude himself or herself as a member, may appear at the Hearing and object to the proposed Settlement, the proposed Plan of Allocation, the Preliminary Payment Schedule and/or the application for reasonable attorneys fees and expenses of Class Counsel. In order to appear and object, that member must give notice of such person's intention to appear at the Hearing. The Notice must contain: (1) a detailed statement indicating the basis for such objection; (2) a list of any witnesses the objecting party may call; (3) the name to whom the Notice of Proposed Settlement of Class Action that was sent; and (4) the objecting party's current name, address and telephone number. The Notice must be mailed by United States first class mail, postmarked no later than February 26, 2008, to each of the following addresses:

Ms. Koleen Nosekabel, Clerk
Stevens County District Court
200 East 6th Street
Hugoton, Kansas 67951

Mr. Lane Wilson, Esq.
Hall, Estill, Gable, Golden & Nelson, P.C.
320 S. Boston Ave. Suite 400
Tulsa, Oklahoma 74103-3708

Mr. David G. Seely, Esq.
Fleeson, Gooing, Coulson & Kitch, L.L.C.
P.O. Box 997
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997

(To be sure that such statement is handled appropriately, it must begin by referring to "Case No. 98-CV-51")

Any member of the Plaintiff Class who does not make his or her objection in the manner stated may be deemed to have waived such objection and may not be permitted to raise or pursue such objection at the Hearing or any other hearing in this action or any appeal of this action.

A Participating Class Member does not need to appear at the Hearing or take any other action to participate in the proposed Settlement.

The Hearing and any further proceedings may, from time to time, and without further notice to the Plaintiff Class, be continued or adjourned by order of the Court.

## ADDITIONAL INFORMATION

Any questions you may have about the matters in this Notice should not be directed to the Court or the Office of the Clerk, but may be directed by telephone or in writing to the following Class Counsel:

Gregory J. Stucky, Esq.
FLEESON, GOOING, COULSON, & KITCH, L.L.C.
P.O. Box 997
1900 Epic Center
301 N. Main
Wichita, Kansas 67201-0997
Telephone: (316) 267-7361
Fax: (316) 267-1754

Erick E. Nordling, Esq.
KRAMER, NORDLING, & NORDLING, LLC
209 East Sixth Street
Hugoton, Kansas 67951
Telephone: (620) 544-4333
Fax: (620) 544-2230

You may also review many of the important papers filed in this lawsuit at the Web site www.fleeson.com.

PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK ASKING FOR INFORMATION.

Dated: _____, 2008        _____
                                       DISTRICT COURT JUDGE

Littell, et al. v. OXY USA INC, 98 CV 51, Stevens County, KS

## NOTICE OF EXCLUSION FROM THE PLAINTIFF CLASS

## READ THE ENCLOSED LEGAL NOTICE CAREFULLY BEFORE FILLING OUT THIS FORM

The undersigned has read the Notice of Proposed Settlement of Class Action, dated _____, 2008 and does NOT wish to remain a member of the Plaintiff Class described in that Notice, understanding that by executing this exclusion the undersigned will not be entitled to share in the Settlement described therein.

Dated: _____, 2008    Name _____

Owner No.: _____
(from mailing label on envelope)

Address: _____
_____

By: _____
Name
Title, if applicable

If you want to exclude yourself from the Plaintiff Class, you must complete and return this form by mailing it before February 26, 2008, to

Clerk of the Stevens County District Court
Stevens County Courthouse
200 E. 6th Street
Hugoton, KS 67951

A separate request for exclusion should be completed and timely mailed for each person or concern electing to be excluded from the class.

## DO NOT FILL OUT THIS FORM IF YOU WANT TO REMAIN A MEMBER OF THE PLAINTIFF CLASS AND WANT TO PARTICIPATE IN THE SETTLEMENT

784564.1:633090:01230

- 11 -

**Exhibit D to Notice Order**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

OPAL LITTELL and CHERRY RIDER, co- )
trustees of the Opal Littell Family Trust, and )
BONNIE BELLMAN, individually and as )
representative plaintiffs on behalf of persons )
or concerns similarly situated, )
                                )
              Plaintiffs, )
                                )
                                )    Case No. 98-CV-51
vs. )
                                )
OXY USA INC., )
                                )
              Defendant. )
                                )

## PUBLISHED NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

### THIS NOTICE MAY AFFECT YOUR RIGHTS.
### PLEASE READ CAREFULLY

FROM THE HONORABLE TOM R. SMITH, PRESIDING JUDGE, TO:

All persons or concerns owning mineral interests in lands located in the areal
confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases
owned in whole or in part by defendant with respect to gas production from
above the base of the Panoma-Council Grove Field, whose royalty payments
have been reduced by a "gathering/compression" deduction or "marketing
deduct" identified on the monthly gas revenue detail sent by defendant to
each such member. Plaintiffs exclude from the plaintiff class the United
States of America insofar as its mineral interests are managed by the Mineral
Management Service but otherwise include the instrumentalities of the
United States of America and federally chartered corporations, including, but
not limited to, the Farm Credit Bank of Wichita and Federal Land Bank.

The above described persons are called the "Plaintiff Class." On March 13, 2001,
pursuant to K.S.A. 60-223, the Court certified the Action as a class action for purposes of
pursuing the Claim for Wrongful Deductions and defined the Plaintiff Class.

The Claim for Wrongful Deductions was the subject of a bench trial before the Honorable Tom R. Smith in the District Court of Stevens County, Kansas, which lasted from March 31, 2003 until April 7, 2003. Since that time, the named Plaintiffs and Defendant OXY USA Inc. have reached a proposed settlement of certain claims that would inure to the benefit of and bind each member of the Plaintiff Class who does not elect to exclude himself or herself from the proposed settlement. The Court has scheduled a hearing on March 4, 2008, at 9:00 o'clock a.m., at the Stevens County courthouse located at 200 East 6th Street, Hugoton, Kansas, to consider approval of the proposed settlement, the payment of attorney fees and expenses, the manner in which the proceeds of the proposed settlement should be allocated among the members of the Plaintiff Class, and certain other matters related to the proposed settlement.

A more comprehensive notice has been sent to those members of the Plaintiff Class whose addresses are known. If you fit within the definition of the Plaintiff Class but have not received a mailed notice, contact either of the following attorneys **immediately,**

<table>
<tr><td>Gregory J. Stucky, Esq.,<br>**FLEESON, GOOING,<br>COULSON & KITCH, L.L.C.**<br>125 North Market, Suite 1600<br>Wichita, Kansas 67202<br>Telephone (316) 267-7361</td><td>**or**</td><td>Erick E. Nordling, Esq.,<br>**KRAMER, NORDLING &<br>NORDLING, LLC**<br>209 East Sixth Street<br>Hugoton, Kansas 67951<br>Telephone (620) 544-4333</td></tr>
</table>

and be prepared to supply (1) the legal description of the property in which you own(ed) your royalty interest; (2) any previous name under which you owned or by which you acquired that royalty interest; and (3) any previous address to which your royalty payments were sent by OXY USA Inc.

PLEASE DO NOT CONTACT THE JUDGE OR THE COURT'S CLERK FOR ANY INFORMATION.

DATED, This _____ of _____, 2008          BY THE COURT:

_____
District Court Judge

**Exhibit 4 to Stipulation of Settlement**

IN THE TWENTY-SIXTH JUDICIAL DISTRICT
DISTRICT COURT, STEVENS COUNTY, KANSAS
CIVIL DEPARTMENT

**OPAL LITTELL and CHERRY RIDER,**
**co-trustees of the Opal Littell Family Trust,**
**and BONNIE BELLMAN, individually and**
**as representative plaintiffs on behalf of**
**persons or concerns similarly situated,**

        **Plaintiffs,**

v.

**OXY USA INC.,**

        **Defendant.**

Case No. 98-CV-51

(Pursuant to K.S.A. Chapter 60)

### JOURNAL ENTRY OF JUDGMENT

On this _____ day of _____, 2008, this case comes on for hearing to

consider: (1) approval of the Stipulation of Settlement ("Stipulation") attached as Exhibit A; (2)

approval of the Plan of Allocation of the settlement proceeds among Plaintiff Class members, as

reflected in the Preliminary Distribution Schedule; (3) approval of the amount of attorneys' fees

and expenses; and (4) approval of the form of Escrow Agreement attached hereto as Exhibit C.

Plaintiffs and the Plaintiff Class appear by and through Thomas D. Kitch, Gregory J. Stucky and

David G. Seely of Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas and Erick E.

Nordling of Kramer, Nordling & Nordling, LLC, Hugoton, Kansas. Defendant OXY USA Inc.

("OXY") appears by and through T. Lane Wilson of Hall, Estill, Hardwick, Gable, Golden &

Nelson, P.C., M. Benjamin Singletary of GableGotwals and Kerry E. McQueen of Sharp &

McQueen P.A.

WHEREUPON, the parties request the Court to give final approval to the Stipulation of

Settlement which was conditionally approved as of _____ __, 2008.

{703529;}

After hearing statements of counsel, after being advised by class representatives concerning the proposed settlement set forth in the Stipulation, after taking into account matters contained in the Court file and prior proceedings in this matter, and after otherwise being duly advised of pertinent circumstances, the Court makes the following findings:

1.       The definitions in Section I of the Stipulation of Settlement are incorporated by reference.

2.       Pursuant to the Notice Order entered as of ____ __, 2008, Plaintiffs' Counsel mailed the Notice approved by this Court to all members of the Plaintiff Class who could be reasonably identified. In addition, the Notice was published once for two consecutive weeks, in the Wichita Eagle, Wichita, Kansas; Tri-State News, Elkhart, Kansas; Lakin Independent, Lakin, Kansas; Garden City Telegram, Garden City, Kansas; Syracuse Journal, Syracuse, Kansas; Hugoton Hermes, Hugoton, Kansas; Southwest Dailey Times, Liberal, Kansas; The Ulysses News, Ulysses, Kansas; Haskell County Monitor-Chief, Sublett, Kansas; Johnson Pioneer, Johnson, Kansas; and The Hutchinson News, Hutchinson, Kansas. The Court finds that reasonable notice has been given to members of the Plaintiff Class of this hearing.

3.       The Court then inquired as to whether there was any objection to the claims proposed to be settled and dismissed with prejudice under the Stipulation which are referred to as the "Settled Claims." No objection was made. The Settled Claims are defined as any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act,

conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to July 2007, which were or could have been properly alleged and in any way related to the Leases, OXY's operation of the Leases or OXY's failure to operate the Leases, including but not limited to claims that:

(a)     Under the Leases, or under any legal or equitable theory, OXY should not have deducted Gathering Charges in calculating royalty, including but not limited to claims that OXY improperly deducted expenses incurred to produce gas from the Leases, to increase the amount of reserves ultimately recovered from the Leases and/or to increase the rate of production of gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the cost of compressing gas produced from the Leases in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted expenses incurred to make gas produced from the Leases marketable, to make the gas merchantable under K.S.A. 84-2-314 of the Uniform Commercial Code and/or to make the gas meet interstate pipeline specifications in calculating royalties paid to the Plaintiff Class, that OXY improperly deducted the same gathering charge to all members of the Plaintiff Class regardless of the location of the well on the Leases or the language of the applicable oil and gas lease, that the method of calculating royalty used by OXY was or is improper, and that OXY violated K.S.A. 55-1620 et seq.;

(b)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any and all claims that OXY failed to use the proper starting point for calculation of royalty to the Plaintiff

Class and/or used an improper formula in calculating the royalty paid on gas produced from the Leases to the Plaintiff Class;

        (c)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 of the Stipulation, any claim that OXY has failed to make proper royalty payments to the Plaintiff Class in connection with any extracted liquid hydrocarbon or helium produced from the Leases;

        (d)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that OXY has improperly deducted expenses it incurred either prior to or after the gas exits any gathering system;

        (e)     Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that deductions taken by OXY in calculating royalty owed to the Plaintiff Class were unreasonable in amount;

        (f)     OXY failed to pay the market value of the gas at the well to the Plaintiff Class for gas produced from the Leases but sold downstream of the lease and/or that OXY failed to pay the proper amount of royalty owed to the Plaintiff Class with respect to gas sold at the well from the Leases;

        (g)     OXY failed to pay pre-judgment interest attributable to underpayment of royalties owed to the Plaintiff Class for gas produced from the Leases under K.S.A. 16-201 et seq., K.S.A. 55-1614 et seq., and/or under any other legal or equitable theory;

        (h)     Under the Leases, or under any other legal or equitable theory, OXY should have, among other things, sold gas at a higher price, should have paid more royalties,

should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced, should have produced gas ratably, should have drilled and connected infill wells in the Hugoton Field in a timely manner, should have produced more underage, should have re-instated underage and produced such underage, should have extended any deadline to produce underage to prevent the permanent cancellation of underage by seeking amendment of any orders issued by the Kansas Corporation Commission, should have produced any underage to avoid permanent cancellation of underage, should have accounted for additional volumes of gas based on any differences in volumes recorded at meters located downstream from the well as compared to volumes recorded at meters located at the well and/or that gas produced from the Leases was improperly measured; and

      (i)    Based on the investigation and discovery undertaken by Plaintiffs and Plaintiffs' Counsel, including the statements set forth in Exhibit 1 to the Stipulation, any claim that OXY owes additional royalty, including any royalty in excess of the royalties paid on 100% of the index price with respect to any gas purchase contract between OXY and OEMI and their respective successors and assigns.

    4.    The Court then inquired as to whether any members of the Plaintiff Class had elected to exclude themselves from the Plaintiff Class. Attached hereto as Exhibit B is a list of those persons, firms and corporations who filed with the Clerk of the District Court their election to opt out of the Plaintiff Class. As explained in the Notice to members of the Plaintiff Class, K.S.A. 60-223(c)(2) provides that this Court shall exclude any member from the Plaintiff Class if that member so requests. Accordingly, this Court finds that those listed on Exhibit B must be excluded from the Plaintiff Class.

5.     The Court next considered whether the Settlement set forth in the Stipulation should be approved pursuant to K.S.A. 60-223(e).  K.S.A. 60-223(e) provides that an action brought as a class action "shall not be dismissed or compromised without the approval of the court" and that "notice of the proposed dismissal or compromise shall be given to the class in such a manner as the court directs."  The Court directed appropriate notice, which has been given, and, at the hearing held as noticed, all parties interested have had an opportunity to be heard as to whether or not the settlement as set forth in the Stipulation shall be approved by the Court.

6.     Plaintiffs and Plaintiffs' Counsel entered into the Stipulation:  (i) after taking into account the uncertainties, risks and potential delays associated with the continued prosecution of the Action, including those involved in securing a final judgment that would be favorable to the Plaintiff Class and not be disturbed on appeal; (ii) after taking into account the substantial benefits that will be received as a result of the Settlement; and (iii) after having concluded that the Settlement provided for herein confers substantial benefits on the members of the Plaintiff Class, and is fair, just, reasonable, adequate and in the best interests of the Plaintiff Class;

7.     OXY has denied and continues to deny the respective claims alleged by Plaintiffs against it in the Action.  OXY has asserted and continues to assert many defenses thereto, and OXY expressly denies and continues to deny its own wrongdoing or legal liability arising out of the conduct alleged in the Action.  OXY entered into the Stipulation solely in order to put to rest the present controversy and all other possible controversies between Plaintiffs, the Plaintiff Class and OXY and to avoid the further expense, inconvenience and disruption of defending against the Action and other possible actions.  OXY has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action, and the fact that

substantial amounts of time, energy and resources of OXY have been and, unless this Settlement is consummated, will continue to be, devoted to the defense of this lawsuit and the possibility of defending other claims set forth in the definition of "Settled Claims." OXY has, therefore, determined that it is desirable and beneficial to it that the action be settled in the manner and upon the terms and conditions set forth in the Stipulation.

8.      The Court has considered and has been impressed with the presentation made in support of the settlement, as set forth in the Stipulation, by members of the Plaintiff Class. The lessors who have expressed approval of the settlement as set forth in the Stipulation are owners of substantial mineral interests and, in the Court's view, the expressed opinion of such lessors should be given the highest possible regard, since such individuals, because of their direct personal financial involvement, are most directly affected by the outcome of this action.

9.      The Court finds that a class action settlement should be approved only if it is fair, reasonable and adequate after comparing the terms of the settlement with the likely rewards of litigation. While this Court need not, and should not, decide the merits of the controversy, this Court notes that there exist serious questions of law and fact which place the ultimate outcome of this litigation in doubt and that, while the Plaintiff Class might possibly ultimately receive more, if the case was to prosecuted to its ultimate conclusion, it is also possible that there would be no recovery.

10.     The Court finds that the Settlement as set forth in the Stipulation was arrived at through arms-length and vigorous and extensive negotiations between plaintiffs' counsel and counsel for the defendant.

11.   The Court finds that the Settlement as set forth in the Stipulation was arrived at in good faith and was based on a realistic appraisal by the parties and their counsel of the difficulties inherent in a case of this magnitude and complexity.

12.   The Court recognizes that if this Settlement as set forth in the Stipulation had not been reached, even if the Plaintiff Class had prevailed, any recovery would have been delayed for a lengthy period of time given the high probability of an appeal and, in the event of a reversal or modification, a further delay resulting from another lengthy trial.

13.   Based on all of the foregoing, the Court finds the Settlement as set forth in the Stipulation to be bona fide, fair, just, reasonable and adequate.

14.   The Court then considered the Plan of Allocation proposed by the Plaintiffs and Plaintiffs' Counsel, a copy of which is attached hereto as Exhibit D, as reflected in the Preliminary Distribution Schedule filed herein on _____ and posted on the web site maintained by Plaintiffs' Counsel Fleeson, Gooing, Coulson & Kitch (www.fleeson.com) on _____. Defendant OXY took no position as to how the Net Settlement Fund, as defined in the Stipulation, should be allocated among members of the Plaintiff Class. OXY's position is that the amount paid pursuant to the Stipulation settles all of the Settled Claims as defined in the Stipulation and provides adequate consideration for dismissal with prejudice of all of the Settled Claims.

15.   The Court finds that the Plan of Allocation provides a well-defined method to calculate the amount owed to each member of the Plaintiff Class.

16.   Based on the foregoing, the Court finds that the Plan of Allocation is fair, reasonable, capable of implementation without undue administrative expense, and should be approved along with the Preliminary Distribution Schedule. In approving the Plan of Allocation,

the Court specifically finds that the consideration paid by OXY, as provided in the Stipulation, fully discharges OXY from any liability with respect to all of the Settled Claims defined in paragraph 3 above, and in particular, those Settled Claims listed in subparagraphs (a) through (i) thereof, for all time periods through the date judgment is entered herein.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that:

1.      The Stipulation is fair, reasonable, bona fide and adequate to the Plaintiff Class as required by K.S.A. 60-223. The Stipulation is approved by the Court and is binding on the Plaintiff Class.

2.      The Settled Claims as defined in paragraph 3 above, for all time periods through the date of this judgment, are fully and completely settled, discharged, and released. Each Plaintiff Class member is deemed conclusively to have released and settled the Settled Claims covering all time periods through the date of this judgment, notwithstanding that any member of the Plaintiff Class may hereafter discover facts in addition to or different from those which the members of the Plaintiff Class now know or believe to be true with respect to the action and the Settled Claims; provided, however, said Plaintiff Class members are entitled to rely upon the statements made by OXY in Exhibit 1 to the Stipulation of Settlement.

3.      All of the Settled Claims as defined in paragraph 3 above, covering all time periods through the date of this judgment, are hereby dismissed with prejudice.

4.      All members of the Plaintiff Class are barred and permanently enjoined from commencing or prosecuting either directly, representatively, derivatively or in any capacity, any of the Settled Claims as defined in paragraph 3 above, for all time periods through the date of this judgment, against OXY and its respective predecessors and successors, and all of its present

and former principals, officers, directors, employees, agents, shareholders, investors, insurers, affiliates, assigns, representatives, heirs, executors and administrators.

5.     The Plan of Allocation attached as Exhibit D, along with the Preliminary Distribution Schedule, are approved as fair, reasonable and adequate to the Plaintiff Class.

6.     The persons, firms and corporations listed on Exhibit B attached hereto have opted out of the Plaintiff Class and are excluded from the Plaintiff Class pursuant to K.S.A. 60-223(c)(2).

7.     The Court finds that Plaintiffs' Counsel should be reimbursed $_____ for expenses advanced by them in this action, that the amount of the Notice and Administration Fund shall be $_____ and that said counsel should be awarded reasonable attorneys' fees calculated as follows:

and directs that such fees and expenses be paid to Plaintiffs' Counsel from the Settlement Fund.

8.     Plaintiff Class Counsel shall file a Final Payment Schedule with the Clerk of the District Court on or before _____ __, 200__. The Final Payment Schedule shall utilize the same calculations set forth in the Preliminary Payment Schedule, adjusted by the addition of accumulated interest and reduced by the fees and expenses set forth in the preceding paragraph.

8.     The Court approves the form of Escrow Agreement attached hereto and the appointment of Intrust Bank, N.A., Wichita, Kansas, as the Escrow Agent thereunder.

9.     The Court reserves jurisdiction, without affecting the finality of judgment, to supervise the implementation of the Settlement.

IT IS SO ORDERED.

_____
TOM R. SMITH, DISTRICT JUDGE

**APPROVED:**

T. Lane Wilson, OBA #16343
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 400
Tulsa, OK  74103-3708
Telephone (918) 594-0400

-and-

M. Benjamin Singletary, OBA #8273
**GABLEGOTWALS**
1100 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103-4217
Telephone (918) 595-4800

Thomas D. Kitch
Gregory J. Stucky
David G. Seely
**FLEESON, GOOING, COULSON &**
**KITCH, L.L.C.**
125 North Market, Suite 1600
Wichita, Kansas 67202
Telephone (316) 267-7361

Kerry E. McQueen
**SHARP & McQUEEN, P.A.**
419 N. Kansas - P.O. Box 2619
Liberal, KS 67905-2619
Telephone (316) 624-2548

Erick E. Nordling
**KRAMER, NORDLING & NORDLING,**
**LLC**
209 East Sixth Street
Hugoton, Kansas 67951
Telephone (620) 544-4333

764142.1:633090:01230

**Exhibit A to Journal Entry of Judgment**
**(This Exhibit is the Stipulation of Settlement)**

**Exhibit B to Journal Entry of Judgment
(Opt Out List)**

**Exhibit C to Journal Entry of Judgment**

## ESCROW AGREEMENT

This ESCROW AGREEMENT (the "Agreement") is entered into this __ day of _____, 2008, by and among Plaintiffs and Plaintiffs' Counsel in Opal Littell and Cherry Rider, co-trustees of the Opal Littell Family Trust, and Bonnie Beelman, individually and as representative plaintiffs on behalf of persons or concerns similarly situated, v. OXY USA Inc.; Case No. 98-CV-51, in the Twenty-Sixth Judicial District, District Court, Stevens County, Kansas, OXY USA Inc. ("OXY"), and Intrust Bank, N.A., Wichita, Kansas (the "Escrow Agent.")

### RECITALS

WHEREAS, Plaintiffs' Counsel have been delegated certain duties in the Stipulation of Settlement which is attached hereto as Exhibit 1; and,

WHEREAS, on the __ day of _____, 2008, the District Court of Stevens County entered its Journal Entry of Judgment, which is attached hereto as Exhibit 2; and,

WHEREAS, pursuant to the terms of the Stipulation of Settlement as approved by the Journal Entry of Judgment, OXY is obligated to deposit $16.7 million plus accrued interest in escrow within ten business days of the Effective Date, as defined in the Stipulation of Settlement; and,

WHEREAS, the District Court of Stevens County has approved the form of this Escrow Agreement and the designation of Intrust Bank, N.A., as Escrow Agent hereunder.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants, terms and conditions set forth in this Agreement, the parties hereto agree as follows:

{703538;}

1.      Unless otherwise defined herein, the capitalized terms used herein shall have the same meaning as those terms defined in the Stipulation.

2.      Appointment of the Escrow Agent.  Intrust Bank, N.A. is hereby appointed to serve as Escrow Agent hereunder and agrees to perform the duties set forth herein.

3.      Deposit of Escrow Amount.  Within ten business days of the Effective Date as defined in the Stipulation of Settlement, OXY will deposit with the Escrow Agent, the sum of $16.7 million plus accrued interest.  The deposit is hereafter referred to as the "Escrow Amount."

4.      The Escrow Fund.  The Escrow Amount and the balance remaining therein at any given time as amounts are withdrawn (the "Escrow Fund") shall be held by the Escrow Agent as a trust fund in a separate account on the terms and subject to the conditions of this Agreement.

5.      Permitted Disbursement from Escrow Fund.  Subject to the limitations described in paragraph 8 below, the Escrow Agent shall take such actions with respect to the Escrow Fund as are authorized from time to time by the District Court of Stevens County, Kansas ("the Court") or by instructions from all or some of the parties hereto, as more particularly described herein.  Escrow Agent's sole obligation shall be to comply with such duly approved and executed Orders and with such instructions, and Escrow Agent shall be entitled to rely on certified copies of Orders of the Court and on instructions of the parties as more fully described herein.

6.      Investment of the Escrow Fund.  The Escrow Agent shall forthwith invest all of the Escrow Amount in Securities Sold under Repurchase Agreements.  Securities sold nightly will be invested in either U.S. Government Securities or U.S. Agency Securities.  A demand deposit checking account will also be established.  Disbursement checks will be drawn on the demand deposit checking account.  The remaining Escrow Fund will be swept one hundred

percent into Securities Sold Under Repurchase Agreements every night.   In exchange for services rendered hereunder, the Escrow Agent shall be entitled to retain all interest generated as the result of such investment.

      7.    <u>Termination.</u>   This Agreement shall terminate when the entire amount of the Escrow Fund has been distributed.

      8.    <u>Duties and Obligations of the Escrow Agent.</u>   The duties and obligations of the Escrow Agent shall be limited to and determined solely by the provisions of this Escrow Agreement, the Orders issued from time to time by the Court, and written instructions signed by all or some of the parties as more specifically described below.   Although a copy of the Stipulation is attached hereto for the convenience of the parties thereto, Escrow Agent is not charged with knowledge of any duties or responsibilities contained therein or in any other agreement or document.   In furtherance and not in limitation of the foregoing, the parties to this Escrow Agreement agree that the Escrow Agent shall make distributions in accordance with the following provisions:

      (a)    The Escrow Agent shall reimburse expenses incurred by Plaintiffs' Counsel for expenses chargeable to the Notice and Administration Fund as provided in the Stipulation of Settlement, in accordance with such Orders as may be issued by the Court upon application of Plaintiffs' Counsel;

      (b)    The Escrow Agent shall distribute to Plaintiffs' Counsel the attorneys' fees and expenses provided by the Court, in accordance with such Orders as may be issued by the Court upon application of Plaintiffs' Counsel;

      (c)    The Escrow Agent shall distribute the Net Settlement Fund to Participating Class Members in accordance with the written instructions of Plaintiffs'

Counsel, which shall be in the form of checks made payable to Participating Class Members;

(d)    The Escrow Agent shall not be liable for any loss of earnings or reduction in the value of the principal resulting from its compliance with the directions contained herein or in any Order issued by the Court, with regard to the investment of the Escrow Amount or the Escrow Fund, including any liquidation of any investment prior to its maturity;

(e)    The Escrow Agent shall be fully protected in relying in good faith on the contents of any Order issued by the Court or on the instructions of the parties as provided for herein;

(f)    The Escrow Agent shall not be liable for any error of judgment, or for any act done or omitted by it, or for any mistake in fact or law, or for anything it may do or refrain from doing in connection herewith; provided, however, that notwithstanding any other provision in this Agreement, the Escrow Agent shall be liable for its willful misconduct or gross negligence or breach of this Agreement;

(g)    The Escrow Agent may seek the advice of legal counsel selected with reasonable care in the event of any dispute or question as the construction of any of the provisions of this Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the opinion of such counsel;

(h)    The Escrow Agent may execute any of its own powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through agents or attorneys selected with reasonable care and shall not be responsible for and shall not be

{703538;}                                   4

under a duty to examine into or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto;

(i)   In view of the provisions of Paragraph 6 above, Escrow Agent acknowledges that the Escrow Fund will not generate any income that would be taxable to the fund itself or to the parties hereto or to the recipients of distributions therefrom. The Escrow Agent shall (i) maintain copies of the certified Orders of the Court, the instructions given by the parties pursuant to this Escrow Agreement, and records of all receipts and disbursements, as well as each investment and reinvestment, performed in accordance with such Orders and instructions; and (ii) shall provide copies of such records to Plaintiffs' Counsel and OXY upon request and upon termination of this Agreement.

(j)   Any dispute concerning the distribution of funds from the Escrow Account shall be resolved in arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.

9.   Escrow Fees and Expenses.   In addition to the compensation described in Paragraph 6 above, the Escrow Agent shall be paid a fee in the amount of five thousand dollars ($5,000.00) for services to be rendered under this Agreement. In addition, Escrow Agent shall be entitled to be reimbursed for any and all out-of-pocket expenses incurred by it in connection with the discharge of its duties hereunder. Escrow Agent shall also be indemnified and held harmless against any and all expenses and fees, including reasonable attorney fees, which it may incur under Paragraph 8(g) above, as well as the reasonable costs and expenses of defending against any claim or liability relating to this Agreement; provided, however, Escrow Agent shall

not be indemnified or held harmless with regard to a meritorious claim for its own willful misconduct or gross negligence.

      10.    <u>Limitation of OXY's Liability.</u>  OXY shall have no responsibility to oversee, review or approve any distributions made by the Escrow Agent.

      11.    <u>Resignation or Removal of the Escrow Agent.</u>

      (a)    The Escrow Agent may resign as such 30 days following the giving of prior written notice thereof to the Plaintiffs' Counsel. In addition, the Escrow Agent may be removed and replaced on a date designated in a written instrument signed by the Plaintiffs' Counsel and OXY and delivered to the Escrow Agent. No such resignation or removal shall become effective until a successor escrow agent has acknowledged its appointment as such as provided in paragraph (c) below. In either event, upon the effective date of such resignation or removal, the Escrow Agent shall deliver the property comprising the Escrow Fund to such successor agent, together with such records maintained by the Escrow Agent in connection with its duties hereunder and other information with respect to the Escrow Fund as such successor may reasonably request.

      (b)    If a successor escrow agent shall not have acknowledged its appointment as such as provided in paragraph (c) below, in the case of resignation, prior to the expiration of 30 days following the date of a notice of resignation, or in the case of removal, on the date designated for the Escrow Agent's removal, as the case may be, because Plaintiffs' Counsel have been unable to designate such successor escrow agent, or for any other reason, the Escrow Agent may select a successor escrow agent and any such resulting appointment shall be binding upon all of the parties to this Agreement.

(c)     Upon written acknowledgment by a successor agent appointed in accordance with the foregoing provisions of this Section 10 of its agreement to serve as escrow agent hereunder, and the receipt of the property then comprising the Escrow Fund, the Escrow Agent shall be fully released and relieved of all duties, responsibilities and obligations under this Agreement, subject to the proviso contained in Paragraph 8(h), and such successor escrow agent shall for all purposes hereof be the Escrow Agent.

12.    Miscellaneous.

(a)     Waiver of Breach.  No breach of any provision in this Agreement shall be deemed waived unless expressly waived in writing by the party who might assert such breach.  No waiver by any party of any breach or right hereunder shall operate as a waiver of any other breach or right or the same or a similar breach or right on another occasion.

(b)     Entire Agreement/Modification.   This Agreement shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supercede all previous oral and written and all contemporaneous oral negotiations, commitments, agreements and understanding relating hereto.  Any modification of this Agreement shall be effective only if it is in writing and signed by the parties to this Agreement.

(c)     Governing Law.  The validity of this Agreement and the interpretation and performance of all its terms shall be governed by the laws of the State of Kansas.

(d)     Counterparts.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but together shall constitute one and the same document.

(e)     Survival.  Each of the provisions of this Agreement shall survive the execution hereof.

(f)     Assignment.  This Agreement may not be assigned by the Escrow Agent to a third party without the prior written consent of both Plaintiffs' Counsel and OXY's counsel.

13.     Effective Date of this Agreement.

This Agreement shall become effective as of the date on which OXY makes the deposit referred to above.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed and delivered as of the date first written above.

**INTRUST BANK, N.A.,**
"Escrow Agent"

By:_____

**FLEESON, GOOING, COULSON & KITCH, LLC,**
counsel for Plaintiffs and the Class

By:_____
Thomas D. Kitch

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.,**
counsel for Defendant

By:_____
T. Lane Wilson

784883.1:999914:00014

**Exhibit 2 to Escrow Agreement**
**(This Exhibit is the same as**
**Exhibit 4 to Stipulation of Settlement)**

**Exhibit 1 to Escrow Agreement**
**(This Exhibit is the same as the Stipulation of Settlement)**

**Exhibit D to Journal Entry of Judgment**
**(This Exhibit is the same as Exhibit B to Notice Order)**

ELECTRONICALLY FILED
2018 Aug 07 PM 4:55
CLERK OF THE GRANT COUNTY DISTRICT COURT
CASE NUMBER:  2016-CV-000039

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | | |
|---|---|---|
| COOPER CLARK FOUNDATION | ) | |
| on behalf of itself | ) | Case No. 2016-CV-39 |
| and all others similarly situated, | ) | **LEAD CASE** |
| | ) | |
| Plaintiff, | ) | **Consolidated with:** |
| | ) | Case No. 2016-CV-17 |
| v. | ) | (Haskell County) |
| | ) | and |
| | ) | Case No. 2016-CV-13 |
| Oxy USA, Inc., | ) | (Morton County) |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 4 to**

**PLAINTIFF'S MOTION TO AMEND CLASS ACTION PETITIONS
IN MORTON COUNTY CASE NO. 2016-CV-13 AND
GRANT COUNTY CASE NO. 2017-CV-39
AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

s/Barbara C. Frankland
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

Eric L. Witcher KS#14344
Graybill, Witcher & Carey, LLP
450 Morton Avenue
Elkhart, KS 67950
(620) 697-4514
(620) 697-4502 (fax)
ewitch67950@yahoo.com
*Plaintiff's Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:

Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

s/Barbara C. Frankland_____
Barbara C. Frankland

IN THE DISTRICT COURT OF GRANT COUNTY, KANSAS

| | |
|---|---|
| COOPER CLARK FOUNDATION, on behalf of itself and all others similarly situated, **LEAD CASE** | ) ) ) ) Case No. 2016-CV-39 ) |
| Plaintiff, | ) ) **Consolidated with:** ) |
| v. | ) Case No. 2016-CV-17 ) |
| v. | ) (Haskell County) ) and ) Case No. 2016-CV-13 |
| Oxy USA, Inc., (Morton County) | ) |
| Defendant. | ) ) |
| (Pursuant | ) **\*This filing pertains only to** Chapter 60 |
| | ) **Case No. 2016-CV-39** |

## FIRST AMENDED CLASS ACTION PETITION

Plaintiff brings this class action to recover royalties due on ~~gas,~~Residue Gas only,[1] and would show the Court as follows:

### NATURE OF THE ACTION

1.____The prior class action *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct. Stevens Cnty~~)~~.) settled state-wide claims for the improper deductions from royalties. *See* Stip. of Settlement, *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.) ("*Littell* Settlement"), attached hereto as **Exhibit 1**.

---

[1]____Plaintiff drops its claims for underpayment of royalty on NGLs and Helium and focuses its claims on the underpayment of royalty on Residue Gas only.

2.      As part of the *Littell* Settlement, the *Littell* Class and OXY agreed that OXY would limit its deduction of ~~Midstream~~ "Gathering~~, Compression, Dehydration, and Treatment (GCDT)~~ Charges" to $0.15/MMBtu from royalty paid for gas production after July 2007. (*Littell* Settlement ¶2.5; *see also id.* at ¶2.6). The *Littell* Settlement defines "Gathering Charges" as "all charges, expenses, or assessments, including fuel associated with any and all activities occurring between the wellhead of any well producing gas…and the inlet to any mainline transmission facility.…Gathering Charges include, but are not limited to, compression and dehydration, regardless of (1) whether such activities occurred on or off the leased premises, (2) what entity provided such services or how it is paid for, and (3) where or how title to the gas is transferred." (*Littell* Settlement ¶1.10). Plaintiff asserts no claim for Gathering Charges because OXY appears to deduct only $0.15/MMBtu from royalty as agreed under the *Littell* Settlement.

3.      In other respects, however, OXY appears to violate provisions of the *Littell* Settlement, specifically:

a.      OXY agreed not to deduct any "Fuel Charges" from royalty on gas produced on or after July 1, 2008. (*Littell* Settlement ¶2.4). "Fuel Charges" is defined as "gas used to operate compressors located on a Gathering Facility." (*Littell* Settlement ¶1.9). "Gathering Facility" is defined as "all activities occurring between the wellhead of any well producing gas… and the inlet to any mainline transmission facility…" (*Littell* Settlement ¶1.11). But despite these provisions, OXY continues to deduct "Fuel Lost & Unaccounted for" ("FL&U") from royalty; thereby, paying royalty on less than the full volume of gas produced from the Class Wells;

b.      The *Littell* Settlement allows OXY to deduct from royalty "all fees and costs payable to third-party mainline transmission companies so long as those fees and costs are

incurred ~~before the~~ pursuant to an approved FERC Tariff or at negotiated rates that are below an approved FERC Tariff for the same or similar services." (*Littell* Settlement ¶2.8). But mainline transmission costs are for transportation of Residue gas on the high pressure transmission line, in this case, at the tailgate of the processing plant.[2] after recompression so that the Residue can enter the high pressure line. But OXY has not limited its transportation deductions to the mainline transmission lines. Instead its deductions include other undisclosed components that OXY is calling mainline transportation. This practice violates the *Littell* Settlement.

4.       Apart from the *Littell* Settlement, OXY gives away gas from the Class Wells for the Midstream Service Provider to use as fuel to run its plant operations, i.e. "Plant Fuel". Processing and the Plant Fuel consumed during processing separates raw-make NGLs from Residue and is usually charged against Residue. Under the gas contract applicable in this case, title to the Residue Gas remains with OXY and never transfers to Duke Energy Field Services, LP. [3]

---

[2]       ~~In~~ *~~Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,~~* ~~No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016.~~ *~~Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,~~* ~~No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit.~~ *~~Id.~~* ~~(ECF No. 239). Judge Melgren suggested that the case might have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case is the result.~~

[3]       In *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 2008 CV9 (Kan. Dist. Ct. Kearny Cnty.), Judge Frederick certified a state-wide class of royalty owners seeking to recover the processing deductions. OXY never appealed the order granting class certification. Instead, after Class Notice was given, OXY removed the case to federal court where Judge Melgren decertified the class in June of 2016. *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.,* No. 12-cv-01215-EFM-GEB (ECF No. 233). The case was then dismissed without prejudice as an individual suit. *Id.* (ECF No. 239). Judge Melgren suggested that the case might have to be certified on a gas contract-by-gas contract basis. Though Plaintiff's Counsel agrees with Judge Frederick and disagrees with Judge Melgren, this case based on one processing agreement,

Under *Fawcett v. Oil Producers, Inc., of Kansas,* there is no sale, or even purported sale, before the gas is processed, making the Plant Fuel non-deductible as a processing fee.

5.      Also apart from the *Littell* Settlement, OXY paid royalty on a starting price significantly less than either the Index Price or Weighted Average Sales Price ("WASP") under the OXY/OEMI contracts.

6.      Additionally, given the affiliate relationship between OXY and OEMI, OXY should have paid royalty on the highest of the two starting prices (Index or WASP) at which OEMI sold the Residue Gas to third parties in arm's length transactions.

7.      As in the original petition, Plaintiff includes the claim for interest on the amounts that OXY refunded in unlawfully withheld Conservation Fees.

1.8.      Plaintiff and the Class bring claims based upon OXY's underpayment of royalties based on deductions taken ~~after~~in violation of the *Littell* Stipulation of Settlement, and taken during processing ~~plant inlet~~to obtain Residue, all as more fully described above and below.

## VENUE AND JURISDICTION

2.9.      This Court has both specific and general jurisdiction over Defendant because its wrongful acts occurred and caused damages to Plaintiff and Class members in this County, and Defendant is authorized to do and does or did substantial business in Kansas, both generally and specifically as to this case.

3.10.      Venue is proper in this Court because many, if not all, of the wells, including Plaintiff's well, and royalties therefrom, are located in this County.

## PARTIES

---

as well as the Master Service Agreement and Master Gas Sales and Purchase Agreement between OXY and its affiliate OEMI, is the result.

4.11.   Plaintiff is a royalty owner in at least the Cooper D-1; D-2;, D-3; E-1; E-2; E-3 wells in Grant County, which Defendant operated and marketed gas from under a Gas Processing Contract with Duke Energy Field Services, LP (dated August 1, 2005), paid royalties on gas produced, and deducted Processing costs from those royalty payments.

5.12.   Defendant OXY USA Inc. ("OXY") is believed to be a Delaware corporation with its principal place of business in Texas, authorized to do business in the State of Kansas, and doing business in the State of Kansas. OXY can be served by serving Service of process was obtained through OXY's resident agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603. OXY has already appeared in this action.

   a.      OXY is (or was during the Class Period) in the business of producing and marketing gas and constituent products from the wells in which Class members hold royalty interests.

      b.      OXY was the third largest operator of natural gas wells in Kansas from 2010-2014, producing 8.6% of the total gas volume in Kansas, and sold all of its Kansas leases, wells, and assets to Merit Energy in 2014, and paid royalties to Class members through April, 2014.

      c.      OXY marketed almost all of its Kansas residue gas and almost half of its NGLs through its affiliate, Occidental Energy Marketing, Inc. ("OEMI"), which OEMI then resold to third parties.

   b.      During the Class Period, July 1, 2007 to April 30, 2014, OXY was one of the largest gas producers in this County. And, from 2010 to 2014, OXY was the third largest operator of natural gas wells in Kansas, producing 8.6% of the total gas volume in Kansas.

      c.     OXY marketed all of its Kansas residue gas to its affiliate, Occidental Energy Marketing, Inc. ("OEMI") at Index price, which OEMI then resold to third parties at WASP which was often higher than Index.

      d.     In 2014, OXY sold all of its Kansas leases, wells, and assets to Merit Energy Company. OXY paid royalties to Class members through April, 2014, the end date of the proposed Class Period in this case.

## ROYALTY UNDERPAYMENT FOR GAS

~~6.~~13.   Raw gas taken from Plaintiff's wells, and ~~that~~ from the wells of all Class members ~~contain,~~ contains various valuable elements and substances along with worthless and deleterious substances.

~~7.~~14.   During the Class Period, Defendant had a working interest in each of Plaintiff's wells and ~~that~~ in the wells of every Class member.

~~8.~~15.   In the leases covering the wells in which Plaintiff and the Class Members own royalty interests, Defendant had an implied covenant to market the valuable elements and substances ~~contained in each lease with Plaintiff and all Class members.~~ .

~~9.~~16.   None of the leases upon which Class Wells exist *expressly* authorized all of the deductions from royalty owners complained of in this case.

~~10.~~17.   Raw gas, including its valuable constituent parts, produced from Class Wells during the Class Period was never ~~been~~ sold "at the well" or "at the mouth of the well.~~"~~," but off the lease.

~~11.~~     Instead, ~~all of~~ the gas from Class Wells was first sold~~:~~

      ~~(a) as Residue~~ after processing, to OEMI ~~and thereafter in an arm's length transaction; or,~~

      ~~(b)  as NGLs after processing (including TF&S), either to~~ as Residue Gas. OEMI ~~or to a~~

third party.

12.     To be in marketable condition, the valuable gas components must be segregated from: (a) the raw gas stream, (b) the worthless and deleterious components, and (c) each other, to achieve the fungible quality necessary for trading in a market. The fungible product is then priced and completely sold in a real commercial market.

13.     For the gas from each Class Well, this segregation into marketable products requires one or more of the following processes: (a) separation of liquids from gas; (b) Gathering; (c) Compression; (d) Dehydration; (e) Treatment; and (f) Processing (including helium processing to Grade A and TF&S for NGLs).

14.     This segregation process is sometimes known as gas conditioning, field services, post-production, or Midstream Services.

15.     While it is possible to "sell" gas and its valuable constituent parts before it is commercial grade or marketable condition, such as to a local irrigator, less than 2% of the gas is sold that way, and even then the products are priced at commercial grade. None of the gas from Class Wells was produced and marketed during the Class Period to be sold only to local irrigators, and none of the Class gas is sold that way, rather it is marketed under gas contracts.

16.     All other gas and its valuable constituents, which includes all Class gas, was sold at commercial grade, or not sold at all but given away to the Midstream Service Provider as an in-kind fee for services.

17.     Some of the gas marketing contracts fictitiously refer to paper title transfers at the gathering line inlet, but in truth, the gas (and its valuable constituents) was not and could not be sold there because, among other reasons:

        a.     During the Class Period, none of the gas or its constituent parts is in commercial

~~grade at the gathering line inlet;~~

18. ~~b.     There is no fungible commercial grade market price index at the gathering line inlet; such commercial grade market index prices only occur at~~ the Residue Gas ~~interstate pipeline index pool for "pipeline quality" gas that meets the FERC tariff quality, at fractionated NGL commercial quality posted pricing (known as OPIS), and at Grade A commercial grade pricing;~~ in arm's length transactions to one or more third-parties to obtain generally a higher WASP price.

~~c.     Custody transfer occurs at the gathering line inlet so that third parties, rather than OXY, can perform gathering and processing services. And the gas contracts are primarily service contracts, not the sale~~ All of ~~goods. Without the services being rendered, there would be no sale.~~

~~d.     Even if paper title transfers at the gathering line inlet was some sort of sale, at best it would be a conditional sale since no sale is completed at the custody transfer meter. Under all types of gas contracts, the sale is completed when the services and contract are completed, which always occurs at the Residue index pool and the NGL fractionation market.~~

~~e.     Under some types of gas contracts (but not others), so called paper title transfer purports to occur there, but the risk of loss and downstream gas conditioning costs remain on OXY. Likewise, the Midstream Service Provider continues to owe contractual duties to OXY after the title transfer, including the obligation to use its best efforts to sell the gas and constituent parts in the actual commercial market and remit all or most of the proceeds therefrom to OXY.~~

19. ~~Even if a paper title transfer at the gathering line inlet could be considered a sale, it would be bad faith to include a title transfer clause at the gathering line inlet since the same~~

8                    ~~18~~

Midstream Services could be obtained for the same price without it.

20.    Plaintiff and the Class complain in this case about not being paid the full gross value for all valuable constituents comingResidue Gas produced from Class Wells. Instead, OXY paid royalties on the net value after deducting Processing costs.

21.    **Uniform Processing Deductions Taken**. In the *Littell* Settlement, OXY represented: "OXY now pays (and previously has paid) royalties on NGLs and Helium by applying the applicable royalty percentage to one hundred percent (100%) of the proceeds of sale which it receives from liquid hydrocarbons and helium ***after deducting the cost of processing*** where applicable." *See Littell* Settlement Exhibit is marketed, but not sold, under the August 1, ¶ 2, P's Ex. 32C (emphasis added). Incredibly, sometimes OXY did not even pay at all for the valuable helium that came from Class Wells.

22.19.   In addition, the gas marketing contracts refer to a sale to Occidental2005 gas contract between OXY and Duke Energy Marketing Inc. ("OEMI"), an affiliate of OXY, which later resells NGLs and/or Residue Gas to a third party in an arm's length sale. Field Services, LP.

23.    **OXY PaysPaid Royalty Owners aUsing Lower Affiliate Sale Price Rather than the Commercial Price**. Defendant has. OXY admitted in the *Littell* Settlement Agreement, Ex. 1, that it sellssold Residue Gas to OEMI at Index price and that OEMI at sometimes received higher than Index price but sometimeswhen it sold the Residue Gas to third parties. OXY claimed that it was entitled to keep this differential and owed nothing to the royalty owners when OEMI receivesreceived a higher than Index price. Furthermore, "*See Littell* Settlement Exhibit 1, ¶1 ("It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of index price, if any, are for services provided by OEMI and are not subject to royalty."

24.20.   Plaintiff and the Class complain in this case about being paid based on the affiliate sale

price, instead of the higher arm's length third party starting price. .").[4] However, OXY cannot use a sale to its affiliate to obtain for itself a starting price higher than the starting price on which it bases its royalty payments. The starting price on which OXY paid royalty should be the higher of the Index or WASP price that OEMI obtains in its sale of the Residue Gas in the arm's length transactions with third parties, and nothing less.

25.21.  **Illegal Conservation Fee.** Defendant wrongfully deducted from royalties the statutory Conservation Fee that it owes to help fund the KCC, but. But, under *Hockett,* royalty owners do not owe the statutory Conservation Fee. *Hockett v. Trees Oil Co.,* 292 Kan. 213, 251 P.3d 65 (2011). In 2012, OXY refunded the Conservation Fees illegally deducted, due to the *Roderick* lawsuit previously filed, *see supra* n.13, but OXY did not pay interest on refunded amounts at the full 10% per annum interest. Accordingly, Plaintiff seeks to recover interests on the principal amounts refunded.

26.22.  Defendant settled similar claims in Kansas under *Littell* before July 1, 2007, so this case only seeks recovery for these wrongful deductions on or after July 1, 2007.

27.  ~~***Marketable Product Rule and Good Faith.***~~

a.  ~~OXY may contend that the Class gas and its constituent parts are marketable products before or at the gathering line inlet so that all Midstream Service Costs are deductible, including the Processing cost disputed.~~

b.  ~~Plaintiff and the Class contend that the gas and its constituent parts are not~~

---

[4]     OEMI charged OXY a marketing fee under the Master Services Agreement. OXY claims it did not deduct this fee from royalty owners so Plaintiff does not seek recovery of that fee. But Plaintiff does seek to recover royalty on the higher price that OEMI received even though OXY claims that OEMI did not always get a higher WASP price. But OEMI usually got a higher WASP price for the Residue Gas from Class Wells. Royalty owners should have gotten that higher price too.

~~marketable products until after the Midstream Services have been completed so the gas constituents are in fungible commercial grade, ready for a complete and absolute sale, in a commercial market to a third party in an arm's length transaction. Second, under the facts of this Class case, any sale before Processing would not be in good faith and would not be for the mutual benefit of lessor and lessee.~~

**~~28.~~23.   The *Fawcett* Case Was Decided On Concessions Not Made Here.**

a.    ***Fawcett* Concession #1**: "The gas in this case was sold at the wellhead." *Fawcett v. Oil Producers of Kansas, Inc.,* 302 Kan. 350, 359, 352 P.3d 1032~~, 1039~~ ~~(Kan.~~ (2015) (quoting the Court of Appeals opinion, *Fawcett,* 49 Kan. App. 2d 194, 199, 306 P.3d 318, 321 ~~(Kan.App.~~ 2013) ("[T]he geography of the sale of gas was at the well and the geography for the calculation of the royalty was also at the well" and stating, "The parties have taken no exception to the panel's conclusions in this regard.")). But, in this case, the location of the sale was after Processing, not at the well. All of the Class gas in this case, including Plaintiff's gas, is sold under a gas contract and an affiliate sale agreement where the sale is not completed until after the processing services have been performed and the ~~gas products are~~Residue Gas is ready for the first commercial market identified in those gas contracts—the Index pool for Residue Gas ~~and the OPIS market for fractionated NGLs.~~.

b.    ***Fawcett* Concession #2**: The "at the well" language in the lease sets the valuation point. *See Fawcett,* ~~352 P.3d~~302 Kan. at ~~1036, 1039~~359 (quoted above). That is a legal conclusion that is not conceded here, and is contrary to Kansas law. Rather, the "at the well" phrase describes the gas constituents produced "at the well" upon which the proceeds or market value royalty must be paid. Texas law interprets "at the well" to be a

valuation point so that subsequent Midstream Service costs can be deducted, but Kansas law rejected that ~~interpretation~~ interpretation in *Sternberger*~~.~~ *v. Marathon Oil Co.,* 257 Kan. 315, 341, 894 P.2d 788, 805 (1995). Factually, the only gas sold "at the well" is for irrigation purposes, which ~~constitutes less than 2% of the gas coming from Class Wells. However, irrigation gas~~ is not ~~within the Class~~part of this case because irrigation gas is not marketed under the gas ~~contract(s)~~contracts in question.

      c.- ***Fawcett* Concession #3**: "*Fawcett* does not challenge [a] OPIK's good faith, [b] its prudence in entering into the purchase agreements at issue, or [c] their material terms. Accordingly, we need not dwell further on what this [duty of good faith] might entail." *Fawcett,* ~~352 P.3d~~350 Kan. at ~~1042~~ (366 ([a-]-[c] added). First, Plaintiff and the Class here do contest all three. [a] OXY's good faith ~~even if it tries~~ as to ~~claim~~royalty owners because OXY entered into gas contracts focused on its own interest in a "net" revenue stream rather than the royalty owners' right to a "gross" revenue stream and manipulated the terms of the gas contract through a premature or ~~manufacture an excuse, such as via~~ a unnecessary title transfer clause~~, for not paying royalty based on its actual arm's length sales after all of the Midstream Services have been performed. Second, Plaintiff and the Class do contest~~ to impose a "net" payment on royalty owners; [b] OXY's prudence in entering into the ~~arm's length gas contracts because the gas contracts show (i) the completion of gas sales for fungible residue and NGLs products in the commercial marketplace, but (ii) not for helium which is not sold as Grade A Helium in a commercial marketplace and is not prudent. Third, Plaintiff and the Class do not contest~~2005 Gas Contract and OEMI Agreements because they are contrary to a prudent operator's conduct to act to mutually benefit royalty owners as well as itself and to obtain the best available price. The OEMI Agreements financially benefit only OXY

by its own admission: "Prior to the formation of [OEMI], OXY determined the sales proceeds for use in the payment of royalties…by computing a Weighted Average Sales Price received for gas produced and sold. After the formation of OEMI, in most cases the sale proceeds were determined pursuant to the contract between OXY and OEMI which used 100% of one or more published index prices…It is OXY's position that proceeds received by OEMI (when it resells the gas downstream) in excess of 100% of the index price, if any, are for services provided by OEMI and are not subject to royalty." Exhibit 1 to the *Littell* Settlement at (2). Before OEMI's formation, OXY performed the same function as OEMI; hence, there was no reason for the OEMI agreement at all, except to financially benefit OEMI/OXY when OEMI sold the Residue gas at higher than the Index price at which OXY sold the Residue to OEMI; [c] the material terms of ~~OXY arm's length gas contracts with third parties. But Plaintiff and the Class do contest the~~: (i) the 2005 Duke Gas Contract because it is based on a fiction that title can be transferred to some molecules mixed within a single commingled gas stream and not others; and (ii) the material terms of the ~~affiliate sales and the failure to insist on Grade A helium payment. OXY can conduct its business as it sees fit, by doing all or part of the necessary Midstream Services itself, through an affiliate, or hiring a third party to perform the services, but OXY cannot use the affiliate and third party contract to unilaterally shift Midstream Service Costs onto royalty owners.~~ OEMI Agreements because they were completely unnecessary and used to obtain for OEMI a higher starting price for Residue than the Index price OXY provided to royalty owners.

      d.- **Not Raised in *Fawcett*.**- Under Kansas law, mutual consent is the only way a lessee can impose GCDTP costs on royalty owners, i.e. by Express Deduction (ED) leases. There are ~~no~~only a few ED Leases in this case and they are excluded from the Class ~~case.~~by

<u>definition.</u> This issue was not raised ~~and~~<u>or</u> ruled upon by the Kansas Supreme Court in *Fawcett*, and if given the chance, without the appellate concessions listed above, the Kansas Supreme Court would likely uphold the mutual consent rule ~~and~~<u>to</u> bar OXY and other lessees from ~~unilaterally amending the silent~~<u>treating</u> leases ~~into~~<u>that say nothing about the lessee's authority to deduct costs from royalty as</u> ED leases by ~~the way it drafts its~~ <u>their drafting of g</u>as contracts, especially ~~since~~<u>because</u> title transfer clauses are ~~not necessary~~<u>unnecessary</u> to receive Midstream Services~~.~~<u>—as this case illustrates for Residue.</u> This will be a common question of law for the entire Class.

    e.- ***Fawcett* Requirements.** ~~Gas quality can be a completely objective determination~~**was based on** ~~pressure, water vapor content, and gas analysis, but measured against what?~~ *~~Fawcett~~* ~~suggests~~**a false factual premise without factual support.** <u>Had the undisputed fact been presented</u> that ~~the quality can be measured against what a (i) true "purchaser" (a/k/a good faith sale for mutual benefit), (ii) in the "market," (iii) would "accept."~~

    i. ~~Under (i), A Midstream company is a service provider and is only a true purchaser if it buys the gas at the Index, OPIS, and Grade A markets. Before that, the gas sale would be a sham sale or at best a conditional sale based only on~~<u>most Kansas gas receives Midstream Services without</u> a paper title transfer, ~~but not a completed sale. In this case, the true purchase and sale occurs at the interstate pipeline Index pool for Residue, OPIS for NGLs, and Grade A for helium. Any purported sale before that would not be in good faith or for mutual benefit.~~

    ii. ~~Under (ii), since a sale can be done anywhere under any circumstances, it~~

14      ~~18~~

must be done in a market, otherwise the "duty to prepare the gas for market" could be avoided. *Gilmore*, 388 P.2d at 603-04, Syl. ¶5 ("[A] lessee who fails to use reasonable diligence in finding a market for gas produced and further fails to see that such gas is prepared for market, runs the risk <u>the outcome</u> of <s>causing the lease to lapse or to be declared to be abandoned.").</s> <s>There is no "market" before Index, OPIS, or Grade A.</s>

iii.   Under (iii), the Midstream company does not accept any gas for the purpose of sale at the gathering line inlet, only for the purpose of gathering in a secret deal for gas conditioning to be sold later at the first real commercial market. The interstate pipeline pool is where the true purchaser accepts the gas at FERC tariff quality. The diagram below illustrates the point. The common issue is whether the sale of residue gas occurs at points 1 or 3 on the diagram. Point 1 is the gathering line inlet. No sale occurs here. Point 3 is the inlet to the interstate or intrastate pipeline. The completed sale occurs here.



Similar diagrams can be drawn for each gas product, such as helium and NGLs.

iv.     **Good Faith After *Fawcett*.** The implied duty of good faith arises from the lease

and prevents the lessee-defendant from exercising its discretion to improperly influence any of

these (i)-(iii) factors so as to shift the burden of paying for Midstream GCDTP Costs onto royalty

owners. That is exactly what defendants often try to do by including a title transfer clause in some

of its gas contracts in an effort to manufacture a "sale," a "purchaser," and "market" when there

are none. But OXY has made no such attempt in this Class, and the very existence of gas contracts

such as those in this Class case, show that including a title transfer clause is not necessary to

obtain the necessary Midstream Services and it only included as detriment to royalty owners and

a benefit to lessee (violating the mutual benefit ports on the good faith duty).*Fawcett* may have

been different.

29.     ***Class's Residue Gas Claims*.-** From July 1, 2007 to April 30, 2014, Plaintiff and

the Class were underpaid royalties for Residue Gas due to ~~deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties for: (a) Residue Gas processing deductions (including but not limited to fees, retainage, plant fuel, recompression, treatment, etc.); and (b) for paying on a starting price based on the OXY/OEMI price instead of the higher OEMI/Third Party arm's length pricing.[5]~~

~~30.     ***Class's NGL Claims***.  From July 1, 2007 to April 30, 2014, OXY underpaid to Plaintiff and the Class royalties for NGLs due to deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties (a) by the amount of the NGLs processing deductions (such as retainage percentage and TF&S); (b) by not receiving payment based on the full NGL recovery factors for each NGL; and (c) for paying on a starting price based on the OXY/OEMI price instead of the higher OEMI/Third Party arm's length pricing.~~

~~31.~~24.  ***Class's Helium Claims***. ~~From July 1, 2007 to April 30, 2014, OXY underpaid to Plaintiff and the Class royalties for Helium due to deductions taken (directly or indirectly, and in cash, in kind, or both) from royalties by way of: (a) Helium processing deductions; and, (b) not obtaining the Grade A Helium price.~~OXY using an unfair and improper starting price by the subterfuge of an affiliate sale contract and by taking (directly or indirectly) volumetric and fee deductions occurring before any purported sale of Residue and not expressly authorized by the *Littell* Class Settlement.

~~32.~~25.  ***Class's Conservation Fee Interest Claims***. From July 1, 2007 to January 1, 2012, OXY wrongfully deducted Conservation Fees from royalties paid to the Plaintiff and the Class ~~royalties, and~~. OXY thereafter ~~did refund the wrongful deductions~~refunded the wrongfully deducted amounts but ~~without paying the~~ paid no interest on those amounts. This action seeks recovery of

---

[5]      ~~The Residue Gas and NGL affiliate sale issue involves a marketing fee charged by OEMI which OXY claims was not deducted from royalty owners. Second, although OXY claims that OEMI did not always get a higher WASP than Index, OEMI usually did get a higher WASP price, but royalty owners never did.~~

interest at 10% per annum ~~interest.~~ under K.S.A. 16-201.

## CLASS ACTION ALLEGATIONS

~~33.~~26.  Plaintiff brings this action individually and, pursuant to K.S.A. 60-223(a) and (b)(3), as representative of a Class defined as follows:

> All royalty owners in Kansas wells~~: (a) where~~ from which OXY USA Inc. ~~was the operator (or, as a non-operator, separately~~ marketed gas~~); (b) who were paid royalties for~~ production ~~of gas, NGLs, or Helium~~ from July 1, 2007 to April 30, 2014~~; and (c) whose gas was originally marketed by~~, under the Gas Processing Contract between OXY USA, Inc. ~~under the~~ and Duke Energy Field Services, LP dated August 1, 2005 ~~gas contract~~, as amended. ~~6~~

> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judge(s) together with their immediate family members; and, (3) OXY USA Inc. its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors.

~~34.~~27.  The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. ~~For instance,~~ OXY ~~has~~ marketed ~~Class~~ gas from ~~over 20~~approximately 300 wells~~,~~ or more under the Gas Processing Contract between Oxy USA, Inc. and Duke Energy Field Services, LP, dated August 1, 2005, as amended ("2005 Gas Contract"). With more than one royalty owner for each well. ~~Thus,~~ there ~~are more than 40~~at least 600 Class members. Some of these Class Members~~, some of whom remain~~ reside in Kansas, ~~though many~~although others reside in ~~numerous~~a number of other states ~~such that~~, making joinder ~~is~~ impracticable.

~~35.~~28.  The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

> a.    Whether Plaintiff and the Class members are the beneficiaries of an

---

6 ~~This gas contract and Class covers approximately 300 Kansas wells.~~

18                              ~~18~~

implied duty to market in their oil and gas leases;

~~b.      If so, whether under *Fawcett* (without the appellate concessions), the quality of the gas, the location of the completed sale, and the actual first market are relevant factual considerations for determining whether the gas has been prepared for market;~~

~~i.      Is the quality of gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~

~~ii.      Is the location of the completed sale of gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~

~~iii.      Is the market for gas a common issue provable through generalized evidence or will inquiry of individual class members be needed?~~

~~iv.      Is a paper title transfer clause in a gas contract that does not transfer the subsequent risk of loss or subsequent cost, a good faith completed market sale?~~

~~c.      Whether Defendant deducted (in cash or in kind) amounts for preparing the gas for market before paying royalty to Plaintiff and the Class members.~~

b.      Whether OXY's continued deduction of FL&U after July 1, 2008 breached the *Littell* Settlement and resulted in OXY's payment of royalty on less than the full volume of Residue Gas produced;

c. Whether OXY's deduction of transportation costs from Residue Gas included costs not attributable to mainline transportation;

d. Whether OXY's deduction of processing fees and plant fuel from Residue Gas occurred before the Residue Gas was sold so as to breach the implied duty to market and of good faith under *Fawcett*;

e. Whether Defendant (including any of its affiliates) paid royalty to Plaintiff and the Class members based on a̶the lowest, rather than the highest, starting price b̶e̶l̶o̶w̶ ̶w̶h̶a̶t̶ ̶D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶o̶r̶ ̶i̶t̶s̶ ̶a̶f̶f̶i̶l̶i̶a̶t̶e̶s̶ ̶r̶e̶c̶e̶i̶v̶e̶d̶ ̶i̶n̶ ̶a̶r̶m̶'̶s̶ ̶l̶e̶n̶g̶t̶h̶ ̶s̶a̶l̶e̶s̶ ̶t̶r̶a̶n̶s̶a̶c̶t̶i̶o̶n̶s̶;̶ for Residue Gas.

d̶.̶ f. Whether Defendant p̶a̶i̶d̶ ̶r̶o̶y̶a̶l̶t̶y̶ ̶t̶o̶ ̶P̶l̶a̶i̶n̶t̶i̶f̶f̶ ̶a̶n̶d̶ ̶t̶h̶e̶ ̶C̶l̶a̶s̶s̶ ̶m̶e̶m̶b̶e̶r̶s̶ ̶f̶o̶r̶ ̶a̶l̶l̶ ̶g̶a̶s̶ ̶c̶o̶n̶s̶t̶i̶t̶u̶e̶n̶t̶s̶,̶ ̶s̶u̶c̶h̶ ̶a̶s̶ ̶N̶G̶L̶s̶ ̶a̶n̶d̶ ̶h̶e̶l̶i̶u̶m̶,̶ ̶p̶r̶o̶d̶u̶c̶e̶d̶ ̶f̶r̶o̶m̶ ̶t̶h̶e̶i̶r̶ ̶w̶e̶l̶l̶s̶.̶

W̶h̶e̶t̶h̶e̶r̶ ̶K̶a̶n̶s̶a̶s̶ ̶l̶a̶w̶ ̶i̶m̶p̶o̶s̶e̶s̶ ̶t̶h̶e̶ owes interest on the amounts of Conservation Fee o̶n̶ ̶P̶l̶a̶i̶n̶t̶i̶f̶f̶ ̶a̶n̶d̶ ̶t̶h̶e̶ ̶C̶l̶a̶s̶s̶ ̶m̶e̶m̶b̶e̶r̶s̶,̶ ̶a̶n̶d̶ ̶i̶f̶ ̶n̶o̶t̶,̶ ̶w̶h̶e̶t̶h̶e̶r̶ ̶D̶e̶f̶e̶n̶d̶a̶n̶t̶that it improperly deducted C̶o̶n̶s̶e̶r̶v̶a̶t̶i̶o̶n̶ ̶F̶e̶e̶s̶ ̶f̶r̶o̶m̶ and later refunded to royalty owners o̶r̶ ̶f̶a̶i̶l̶e̶d̶ ̶t̶o̶ ̶f̶u̶l̶l̶y̶ ̶r̶e̶i̶m̶b̶u̶r̶s̶e̶ ̶t̶h̶e̶ ̶r̶o̶y̶a̶l̶t̶y̶ ̶o̶w̶n̶e̶r̶s̶ ̶f̶o̶r̶ ̶w̶r̶o̶n̶g̶f̶u̶l̶l̶y̶ ̶w̶i̶t̶h̶h̶e̶l̶d̶ ̶C̶o̶n̶s̶e̶r̶v̶a̶t̶i̶o̶n̶ ̶F̶e̶e̶ ̶w̶i̶t̶h̶ ̶i̶n̶t̶e̶r̶e̶s̶t̶.

3̶6̶.̶29. Plaintiff is typical of other class members because OXY p̶a̶y̶s̶paid royalty to Plaintiff and other class members using a common method based on the net revenue OXY r̶e̶c̶e̶i̶v̶e̶s̶received under the 2005 Gas Contract and i̶t̶s̶ m̶a̶r̶k̶e̶t̶i̶n̶g̶ ̶c̶o̶n̶t̶r̶a̶c̶t̶(̶s̶)̶.̶ ̶T̶h̶e̶ m̶a̶r̶k̶e̶t̶i̶n̶g̶Agreements with its affiliate OEMI. Royalty owners do not know or approve any contract terms a̶r̶e̶ ̶u̶n̶k̶n̶o̶w̶n̶ ̶t̶o̶ ̶a̶n̶d̶ ̶u̶n̶a̶p̶p̶r̶o̶v̶e̶d̶ ̶b̶y̶ ̶r̶o̶y̶a̶l̶t̶y̶ ̶o̶w̶n̶e̶r̶s̶.̶ ̶T̶h̶e̶ ̶c̶o̶n̶t̶r̶a̶c̶t̶s̶ ̶a̶r̶e̶ . The 2005 Gas Contract was necessary to p̶l̶a̶c̶e̶transform the raw gas a̶n̶d̶ ̶i̶t̶s̶ ̶c̶o̶n̶s̶t̶i̶t̶u̶e̶n̶t̶ ̶p̶a̶r̶t̶s̶ into m̶a̶r̶k̶e̶t̶a̶b̶l̶e̶

condition.Residue Gas for it to be sold to OEMI. Plaintiff and the Class members are also typical because their leases do not contain an~~no~~ express provision authorizing deductions of all of the ~~gas conditioning~~ costs, both monetary and volumetric, for sale of the Residue Gas to ~~make~~OEMI. Plaintiff and the Class members are also typical because OXY paid them no interest on the ~~gas into marketable condition, and of~~refunded Conservation Fees.

~~37.~~30.  Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a royalty owner paid by Defendant, and understand ~~his~~its duties as Class representative. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

~~38.~~31.  This action is properly maintainable as a class action under (b)(3). Common questions of law *or* fact exist as to all members of the Class and those common questions predominate over any questions solely affecting individual members of such Class. *See* ¶ ~~34~~28, above. ~~There is no need for~~ Individual Class members do not need to testify in order to establish Defendant's liability or even damages to the Class.

~~39.~~32.  Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all Class members.

40.33.  Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by the members of the Class because joinder of all members of those Class would be either highly impracticable or impossible and because the amounts at stake for individual Class members, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

## **COUNT I—BREACH OF LEASE**

41.34.  Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-3933.

35.      Plaintiff and members of the Class entered into written, fully executed, oil and gas leases with Defendant, and .

36.      Those leases include implied covenants including: (a) duty to market; (b) duty of good faith and fair dealing; (c) mutual benefit rule; and, (d) duty to get the best reasonable price for the gas products.

42.37.  Defendant entered into a gas contract to obtain the best reasonable price for gas products,Residue gas (namely Index or WASP thereafter), but failed to pay on the full volume of gas productsResidue Gas coming from each Class Well at that full commercialthe best price available and deducted amounts not authorized under the leases or under the *Littell* Settlement.

43.38.  At all material times, Plaintiff and the Class have performed their terms and obligations under the leases.

44.39.  Defendant breached the implied covenants of the leases by its actions and/or inactions.

45.40.  As a result of Defendant's breaches, Plaintiff and the Class have been damaged

through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

## COUNT II—BREACH OF *LITTELL* SETTLEMENT

41.     Plaintiff and the Class incorporate by this reference the allegations in paragraphs 1-40, above.

42.     In the fall of 2007, OXY and the Settlement Class of mineral interest owners in Kansas wells settled claims for royalty underpayment and agreed to certain provisions to govern the payment of royalty in the future. *See* Stipulation of Settlement, *Littell, et al. v. OXY USA, Inc.,* No. 98-CV-51 (Kan. Dist. Ct., Stevens Cnty.), attached as **Exhibit 1.**

43.     As set forth above, OXY agreed to not deduct FL&U from gas produced after July 1, 2008, but OXY continued to do so.

44.     As set forth above, OXY agreed to deduct only the actual costs for mainline transportation costs from gas produced after July 1, 2007. But OXY deducted costs that were not mainline transportation.

45.     In so doing, Defendant breached the *Littell* Settlement.

46.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged through underpayment of the actual amounts due in an amount less than $5 million, exclusive of interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a.     ~~The case be certified~~Certifying this action as a class action, with the appointment of Plaintiff ~~appointed as the~~ Class Representative and Plaintiff's Counsel as Class Counsel;

b.     Awarding Plaintiff and the Class damages from Defendant's breach of lease and

23                    ~~18~~

breach of the *Littell* Settlement with interest at the highest allowable rate at law or equity;

      c.      Granting Plaintiff and the Class the costs of prosecuting this action together with reasonable attorney's fees out of the recovery ~~in the unlikely event that Defendant claims a statute applies which would authorize the same~~; and,

      d.      Granting such other relief as this Court may deem just, equitable and proper.

~~WHEREFORE, this case should be certified as a class action, Defendant should be ordered to pay Plaintiff and the Class for improper deductions, underpricing, and Conservation Fee subtractions, including pre-judgment and post-judgment interest at the highest statutory, equitable, or common law rate of 10% per annum. *See Lightcap*~~

~~v. *Mobil Oil Corp.*, 221 Kan. 448, 468-69, 562 P.2d 1, *cert. denied,* 434 U.S. 876 (1977), and for such other relief as the Court deems proper.~~

<div style="text-align:center"></div>

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp KS#12350
Barbara C. Frankland KS#14198
Ryan C. Hudson KS#22986
Rex A. Sharp, P.A.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com
rhudson@midwest-law.com

*Plaintiff's Counsel*

## CERTIFICATE OF SERVICE

_____ I hereby certify that on the ___ day of August, 2018, a true and correct copy of the above and foregoing document was emailed to the following:


Mikel L. Stout
Foulston Siefkin LLP
1551 N. Waterfront, Suite 100
Wichita, KS  67206
 mstout@foulston.com

Deborah C. Milner
Mark C. Rodriguez
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002
cmilner@velaw.com
mrodriguez@velaw.com

James M. Armstrong, #09271
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Tel: 316-291-9576
Fax: 866-346-1936
jarmstrong@foulston.com

_____        _/s/ Rex A. Sharp_____
                                                                                    Rex A. Sharp