IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COOPER CLARK FOUNDATION,
On behalf of itself and
All others similarly situated,

        Plaintiff,

v.                                                                       Case No. 18-1222-JWB

OXY USA INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Plaintiffs' motion to remand. (Doc. 11.) The motion has been fully briefed and is ripe for decision. (Docs. 16, 19, 26, 27.) Plaintiffs' motion is DENIED for the reasons set forth herein.

**I.    Procedural History and Relevant Facts**

In 2016, Plaintiffs[1] filed three putative class actions in the state courts of Kansas: *Cooper Clark Foundation v. Oxy USA Inc.,* No. 2016-cv-000039 (Grant County); *Cooper Clark Foundation v. Oxy USA Inc.*, No. 2016-cv-000017 (Haskell County); and *Phillip Fink v. Oxy USA Inc.*, No. 2016-cv-000013 (Morton County). All three actions allege improper deductions and fees related to processing and marketing natural gas under three different gas agreements. Each separate action brings a suit on behalf of a specified class under K.S.A. 60-223(a) and (b)(3) alleging a breach of implied covenants of oil and gas lease agreements to which Oxy and the putative class members were parties. Plaintiffs allege that Oxy entered into oil and gas leases to

---

[1] Although the caption identifies only one named Plaintiff, the consolidated action that was removed was comprised of three actions which were filed by two different named plaintiffs. Therefore, the court will refer to Plaintiffs in the plural form throughout this order.

1

obtain the best reasonable price for the gas products but failed to pay on the full volume of gas products.

The Grant County action was filed by Plaintiff Cooper Clark Foundation on December 20, 2016. The putative class is as follows: "All royalty owners [in] Kansas wells: (a) where OXY USA Inc. was the operator (or, as a non-operator, separately marketed gas); (b) who were paid royalties for production of gas, NGLs, or Helium from July 1, 2007 to April 30, 2014; and (c) whose gas was originally marketed by OXY USA Inc. under the August 1, 2005 gas contract, as amended." (Doc. 1, Exh. 2 at 13.)

The Haskell County action was filed by Plaintiff Cooper Clark Foundation one day later on December 21, 2016. The putative class is as follows: "All royalty owners [in] Kansas wells: (a) where OXY USA Inc. was the operator (or, as a non-operator, separately marketed gas); (b) who were paid royalties for production of gas, NGLs, or Helium from July 1, 2007 to April 30, 2014; and (c) whose gas was originally marketed by OXY USA Inc. under the December 1, 2005 gas contract, as amended." (Doc. 1, Exh. 4 at 13.)

The Morton County action was filed by Phillip Fink on November 15, 2016. The putative class was originally defined as follows: "All royalty owners in Morton County, Kansas wells: (a) where OXY USA Inc. was the operator (or, as a non-operator, separately marketed gas); (b) who were paid royalties for gas, NGLs, or Helium from July 1, 2007 to April 30, 2014; and (c) whose gas was marketed by OXY USA Inc. under the Sept. 1. 2003 gas contract, as amended." (Doc. 1, Exh. 6 at 13.)[2]

---

[2] The amended petition in the Morton County action expands the putative class to "all royalty owners in Kansas wells," thereby conforming the class to the same members as the other two cases, limited only by the particular gas contract at issue. (Doc. 7, Exh. 1 at 10.)

In all three actions, the petitions reference a prior class action, *Littell, et al. v. OXY USA, Inc.*, No. 98-CV-51 (Kan. Dist. Ct. Stevens Cty), which previously settled claims regarding the deductions of midstream gathering, compression, dehydration, and treatment ("GCDT") costs incurred before the processing plant. Plaintiffs' current claims are based on deductions after the processing plant inlet. Moreover, Plaintiffs' petitions also reference a previous class action that was originally filed in Kearny County and then removed to this court, *Wallace B. Roderick Revocable Living Trust v. OXY USA, Inc.*, No. 12-cv-01215-EFM-GEB. Plaintiffs represent that the three actions are the result of Judge Melgren's decision decertifying the *Roderick* case, in which Judge Melgren "suggested that the case might have to be certified on a gas contract-by-gas contract basis." (*See, e.g.*, Doc. 1, Exh. 6 at n. 1.) Plaintiffs' petitions state that Judge Melgren's decision to decertify resulted in Plaintiffs filing a dismissal without prejudice of the *Roderick* action and then filing separate actions in state court. (*Id.*) Plaintiffs contend that the state cases were filed on a gas contract-by-gas contract basis "following Judge Melgren's lead." (Doc. 11 at 3.)

The three actions had been pending for some time in state court and, in early 2018, Plaintiffs moved to consolidate the three actions pursuant to K.S.A. 60-242(a). Oxy opposed the motion to consolidate. On July 11, 2018, Judge Ambrosier granted the motion as follows:

> The Kansas Supreme Court has held that a district court may consolidate an action pursuant to K.S.A. 60-242(a) when there is a common question of law or fact. *Schwartz v Western Power & Gas Co.*, 208 Kan. 844, 852, 494 P.2d 1113, 1120 (1972). The Court believes that there exists common issues in the three (3) pending cases, which justifies consolidation.
>
> In their response to Plaintiff's motion, Defendant does not seriously dispute that a common question exists. Defendant, however, instead focuses their argument upon the procedural history and the current Case Management Conference Orders filed in each case. It is true that this ruling will require that the parties enter into an amended Case Management Conference Order for all three (3) cases. It is also true that this order places these cases in a similar position as to where they were prior to the Federal Court's order on decertification. While the Court is sympathetic to Defendant's plight of being right back in the same position they were and understands that this decision makes their victory in

3

> Federal Court somewhat hollow, that does not change the fact that, pursuant to Kansas statute, these cases are proper for consolidation.
>
> IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiff's Motion for Consolidation is granted. Counsel for Plaintiff shall prepare a journal entry consistent with this decision and submit the same to Defendant's counsel for signature. The cases shall be consolidated under Grant County Case 2016-CV-39 and all hearings will be held in Grant County with Judge Ambrosier. This Court is authorized to inform counsel that Judge Gilmore has reviewed the transcript of the hearing, concurs with this decision of the Court and Morton County Case 2016-CV-13 is consolidated as well.
>
> The parties shall attempt to enter an agreed Amended Case Management Conference Order, if they are unable to do so, Mr. Sharp shall set a conference call with the Court so that new deadlines may be established.

(Doc. 16, Exh. A.)

On August 7, 2018, Plaintiffs filed a motion to amend the class action petitions for the Morton County and Grant County cases. (Doc. 7.) Plaintiffs did not move to amend the Haskell County petition because that petition had been amended prior to consolidation. (Doc. 7 at 1.) Notably, the motion to amend states that Plaintiffs sought to amend the Morton and Grant County petitions in order to "conform the allegations" to those in the Haskell County amended petition. (Doc. 7 at 2.)

Oxy filed a notice of removal on August 9, 2018. (Doc. 1.) Oxy alleged that this court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. § 1453. Plaintiffs have now filed a motion to remand. (Doc. 11.) Plaintiffs contend that the amount in controversy does not exceed $5,000,000 unless the court considers the total amount for all three actions that were consolidated by the state court.[3]

---

[3] Plaintiff does not assert that the removal was untimely. Pursuant to 28 U.S.C.A. § 1446, a notice of removal must be made within 30 days of being served, or, if not removable by the initial pleading, within 30 days of an amended pleading, motion or order, from which it is first ascertained that the case is removable. The court finds that the consolidation order is such an order and that the notice is timely.

After reviewing the briefs in this matter, the court held a motion hearing. (Doc. 25.) At the hearing, the court concluded, and the parties agreed, that the key issue in evaluating subject matter jurisdiction in this case is whether consolidation of these cases in Kansas state court resulted in a merger of the consolidated cases. The court allowed the parties to file supplemental briefs to address the issue. Those briefs have now been filed. (Docs. 26, 27.) The court's order is based on the record developed by the parties.

## II.     Analysis

Pursuant to CAFA, this court has original jurisdiction over a class action if 1) there are more than 100 members in the class; 2) the parties are minimally diverse; 3) and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). The only element in dispute is whether the matter in controversy exceeds $5,000,000.

Plaintiffs argue that the amounts at issue in all three actions cannot be aggregated to determine jurisdiction.[4] Oxy argues that Kansas law treats actions that are consolidated as one action and therefore, the amounts can be aggregated for the purpose of determining jurisdiction under CAFA. In its response, Oxy has attached an affidavit from Angela Paslay, an expert retained by Oxy to calculate the amount in controversy. (Doc. 16, Exh. C.) Ms. Paslay has determined that the minimum amount in controversy, for all three actions that were consolidated by the state court, is $5,467,462. (*Id.*) According to her calculations, if considered individually, none of the three underlying actions would satisfy the amount in controversy. Plaintiffs do not challenge the calculations by Mr. Paslay. (Doc. 19.)

---

[4] The court notes that the parties do not assert that this action is a "mass action" under CAFA. *See* 28 U.S.C. § 1332(d)(11)(B); *Parson v. Johnson & Johnson*, 749 F.3d 879, 886 (10th Cir. 2014).

This action was consolidated under K.S.A. 60-242(a), which is almost identical to Fed. R. Civ. P. 42(a) and originally enacted in 1963. Prior to the enactment of section 242(a), Kansas law addressed consolidation under K.S.A. 60-765 (1949). That statute stated as follows: "Whenever two or more actions are pending in the same court *which might have been joined*, the defendant may, on motion and notice to the adverse party, require him to show cause why the same shall not be consolidated, and if no cause be shown the said several actions shall be consolidated." *Gardner v. Pereboom*, 194 Kan. 231, 232 (1965). Under that statute, Kansas courts held that the "effect of a consolidation. . . is to unite and merge them into a single action for the purpose of all future proceedings the same as though the different causes of action had been joined in a single action." *Id.* at 232-33 (quoting *W. Shale Prod. Co. v. City of Fort Scott*, 175 Kan. 643, syl. 7 (1954)).

In 1963, the Kansas legislature adopted a large portion of the Federal Rules of Civil Procedure. In doing so, section 60-765 was repealed. The statute at issue here, K.S.A. 60-242(a) is "substantially identical to Rule 42 of the Federal Rules of Civil Procedure." *Schwartz v. W. Power & Gas Co.*, 208 Kan. 844, 852, 494 P.2d 1113 (1972). It states as follows:

> (a) Consolidation. If actions involving a common question of law or fact are pending before the court in the same or different counties in the judicial district, the court may:
> (1) Join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

K.S.A. 60-242(a).

Based on the language of the district court's order, the court ordered the actions consolidated under K.S.A. 60-242(a)(2). Kansas courts have not explicitly addressed the effect of consolidation under section 60-242(a)(2). Oxy argues that consolidation has retained its meaning under the previous statute. Plaintiffs argue that the Kansas Supreme Court would follow federal authority and find that the cases were not merged.

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court applying state substantive law looks to interpretations of a state's highest court. In the absence of any such rulings, the court must "ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) and *Erie*, 304 U.S. at 78). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wade*, 483 F.3d at 666. Although this question is one of state procedural law and not a question of state substantive law, the court must nevertheless attempt to predict how the Kansas Supreme Court would interpret the meaning of consolidation under section 60-242(a) in order to determine whether consolidation merged the three cases for purposes of evaluating federal subject matter jurisdiction.

In interpreting the Kansas statute, this court can look to federal law as the statute was modeled after Rule 42(a). *See Back-Wenzel v. Williams*, 279 Kan. 346, 349, 109 P.3d 1194 (2005) ("because the Kansas Rules of Civil Procedure are patterned after the federal rules, Kansas appellate courts often turn to federal case law for persuasive guidance."); *Baumann v. Excel Indus., Inc.*, 17 Kan. App. 2d 807, 815, 845 P.2d 65, 72 (1993). "Traditionally, [the Kansas courts] have followed federal interpretation of federal procedural rules after which our own have been patterned." *Stock v. Nordhus*, 216 Kan. 779, 782, 533 P.2d 1324, 1327 (1975).

Prior to the Supreme Court's recent decision in *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018), federal courts of appeals held widely divergent views on whether consolidation under Rule 42(a) resulted in merger. *See* GAYLORD A. VIRDEN, *Consolidation Under Rule 42 of the Federal Rules of Civil Procedure: The U.S. Courts of Appeals Disagree on Whether Consolidation Merges the Separate Cases and Whether the Cases Remain Separately Final for Purposes of Appeal*, 141 F.R.D. 169, 170 (1992) (citing cases). The differing views resulted from the change in the statute.

7

The United States Supreme Court in *Johnson v. Manhattan Railway Co.*, 289 U.S. 479 (1933), addressed whether the effect of consolidation under 28 U.S.C. § 734 resulted in merger of the separate cases. That statute stated that a court "may consolidate said causes when it appears reasonable to do so." 28 U.S.C. § 734. The Supreme Court held that "[u]nder the statute, 28 U.S.C., § 734, consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another." *Johnson*, 289 U.S. at 496-97. A few years later, however, the Supreme Court adopted the Federal Rules of Civil Procedure. *See Virden*, 141 F.R.D. at 171. Courts were then left with the question as to whether consolidation under Rule 42 held the same meaning as it did under the previous statute.

The Supreme Court answered that question in *Hall*. In doing so, it examined the history of consolidation and stated that

> prior to Rule 42(a), a judgment completely resolving one of several consolidated cases was an immediately appealable final decision. We made clear, for example, that each constituent case must be analyzed individually on appeal to ascertain jurisdiction and to decide its disposition—a compartmentalized analysis that would be gratuitous if the cases had merged into a single case subject to a single appeal. We emphasized that constituent cases should end in separate decrees or judgments—the traditional trigger for the right to appeal, for which there would be no need if an appeal could arise only from the resolution of the consolidated cases as a whole. We explained that the parties to one case did not become parties to the other by virtue of consolidation—indicating that the right of each to pursue his individual case on appeal should not be compromised by the litigation conduct of the other. And, finally, we held that consolidation could not prejudice rights to which the parties would have been due had consolidation never occurred.

*Hall*, 138 S. Ct. at 1128.

The Court further discussed that "just five years before Rule 42(a) became law, we reiterated that, under the consolidation statute, consolidation did not result in the merger of constituent cases" and treatises discussing the statute concluded that the consolidated cases "remain distinct." *Id.* at 1127, 1128. Rule 42(a) was modeled on its statutory predecessor. The

8

previous statute did not define "consolidate." *Id.* at 1128. As Rule 42(a) also fails to define "consolidate," the rule "presumably carried forward the same meaning [the Court] had ascribed to it." *Id.* Although the Court did note that a trial court may consolidate cases "for all purposes in appropriate circumstances," "constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party." *Id.*

Assuming the Kansas Supreme Court would look to federal law in helping evaluate the consequences of consolidation under K.S.A. 60-242(a), the Kansas court might still interpret *Hall* in at least two different ways. First, the Kansas Supreme Court might conclude the legislature intended a wholesale abandonment of prior precedent and that consolidation under state law has the identical effect as consolidation under federal law, with *Hall* teaching that no merger occurs. On the other hand, the Kansas Supreme Court could also follow *Hall* by concluding, as did the United States Supreme Court, that Rule 42 was not intended to change prior law; thus, adoption of K.S.A. 60-242 maintained prior Kansas law that consolidation merged the underlying cases.

After reviewing the relevant authority and the materials submitted by Oxy, the court predicts that the Kansas Supreme Court would hold that consolidation under section 60-242(a)(2) results in a merger of the consolidated cases into a single case for several reasons.

First, there is no indication that, by the adoption of the federal rules, the legislature intended to change the prior meaning of terms that had specific meaning and were not defined by the new statute. Clearly, Kansas courts had interpreted consolidation to mean merger prior to the adoption of the new statute. As noted in *Hall*, the term "consolidate" is not defined in Rule 42(a)(2), as it is not defined in section 60-242(a)(2). There is no indication that the legislature intended to adopt all federal interpretations of terms that are not defined, although federal interpretations may be persuasive to Kansas courts.

9

Most importantly, however, the record in this case appears to show that the practice in Kansas courts is to treat consolidated cases as merged. Specifically, in its supplemental brief, Oxy has attached Kansas court documents exhibiting four examples of consolidated class actions. (Doc. 26, Exhs. 2-5.) In each of those consolidated class actions, the underlying cases involved either identical or substantially overlapping classes, common claims, and common or identical defendants. The court records show that those consolidated cases were resolved by decision, settlement, or a settlement fund for a specific amount of money and that a single judgment was entered in the consolidated action. *See In Vitamin Antitrust Litigation v. Hoffman-LaRoche*, No. 98-C-4574, 2006 WL 4058904, at *9 (Kan. Dist. Ct. Wyandotte Cty. Dec. 22, 2006) (Doc. 26, Exh. 2)(single judgment for "Plaintiff Class" in a consolidated action); *In re Kinder Morgan, Inc. Shareholders Litig.*, 06 C 801, 2010 WL 4681896, at *1 (Kan. Dist. Ct. Shawnee Cty., Nov. 19, 2010) (Doc. 26, Exh. 3) (single journal entry approving settlement in consolidated shareholder action for $200 million); *Garco Investments, L.L.P. v. Sprint Corp.*, 04 CV 01714, 2007 WL 4964804, at *1 (Kan. Dist. Ct. Dec. 12, 2007) (Doc. 26, Exh. 4) (single judgment approving class action settlement); *Bellinder v. Microsoft Corp.*, No. 99-C-17089, 2004 WL 5051625 (Kan. Dist. Ct. Johnson Cty., June 8, 2004) (Doc. 26, Exh. 5) (single judgment approving settlement for Plaintiff Class of $32 million). The orders reflect no attempt to divide the amount of the judgment across all of the consolidated cases, nor did the orders include language that would indicate that a specific amount was to be separately entered in each case. (See Doc. 26, Exhs. 2-5.) Rather, there was a single award entered in a single, consolidated judgment that was applicable to the entire class across all consolidated cases. As explained below, a single judgment indicates that the cases were merged.

Under the federal rules, when there is no merger and the consolidated cases have retained their separate identity, the court is to enter a separate judgment for each case. *See, e.g. Hall*, 138 S. Ct. at 1128 ("…constituent cases should end in separate decrees or judgments...") The actions taken by the state courts discussed above, in which the courts filed one judgment in all cases, do not amount to separate judgments in all constituent cases. If the identical judgment which was presumably entered in all constituent cases was truly separate, the plaintiffs in those actions could execute on each judgment separately, thereby collecting multiples of the settlement amount. By way of example, in the Vitamin Antitrust Litigation relied on by Oxy, (Doc. 26 exh. 2 at 14-15), the court entered a single, class-wide judgment across all constituent cases in the amount of $16,288,023.03. If those were truly separate judgments, then the plaintiffs therein were entitled to separately execute on each judgment from each of the five constituent cases for a total recovery of $81,440,115.15. However, it is clear from the journal entry in that case that damages were calculated on a class-wide basis and the amount of the total damage award was $16,288,023.03, not five times that amount. Similarly, in each of the other consolidated cases, the state court certified a single class that spanned all constituent cases, entered a single judgment that specified a recovery for the entire class, and made no effort to enter separate judgments as to each constituent case. Merely filing a copy of the same judgment in all constituent cases is not the same thing as filing a separate judgment in each case. Therefore, a single judgment was entered in each of these consolidated cases, indicating that consolidation merged the underlying cases into a single action.

The filings in the state court actions that were consolidated in the present case also indicate that Plaintiffs intended for the cases to be merged into a single action. In Plaintiffs' reply brief in support of the motion to consolidate, Plaintiffs stated, "The end sought here is simple---a single case that can be economically prosecuted…" (Doc. 16, Exh. B at 3.) At oral argument, Plaintiffs

informed the state court that the effect of the consolidation would be a single motion to certify the class and a single appeal. (Doc. 26, Exh. 20, Tr. 5:9 – 6:1.) The district court stated that Plaintiffs' were "requesting that all three (3) actions, currently in the 26th Judicial District, be consolidated into *one action*." (Doc. 16, Exh. A at 2) (emphasis supplied). Moreover, although Plaintiffs have not yet moved to file a consolidated complaint, Plaintiffs have amended the Haskell County petition and been granted leave to amend the Morton and Grant County petitions. In their motion to amend, Plaintiffs stated that the reason they sought to amend the Morton and Grant County petitions was to "conform the allegations" to those in the Haskell County amended petition. (Doc. 7 at 2.) Viewing the amended petitions, the allegations are virtually identical. Plaintiffs' statements and representations to the state court support a finding that Plaintiffs intended to merge the three actions into one single action.

Oxy further argues that the local rules from the 26th Judicial District, the district where the consolidated action originated, supports the conclusion that the consolidation resulted in a merger. Under the local rule, "all attorneys shall prepare and have signed an original pleading for each case file except only as to cases consolidated by order of the court." KS R 26 Dist. Rule 124. Oxy states that by "requiring" a single pleading, the court has merged the actions into one. (Doc. 16 at 5.) The rule, however, is not clear and the court is reluctant to make much of it. By contrast, the local rules for the 10th Judicial District are much clearer on this point.[5] The local rule states that

> "[u]pon consolidation [under K.S.A. 60-242], all of the consolidated cases will be assigned to the division in which the case with the lowest case number was assigned. After consolidation, unless otherwise ordered by the assigned judge, any case numbers that have been consolidated into another number *will be administratively terminated*."

---

[5] Although this action did not originate in the 10th Judicial District, the court believes that the local rule is relevant and highly persuasive in indicating how Kansas courts treat consolidation under K.S.A. 60-242.

KS R 10 Dist. Civ. Rule No. 2(3) (emphasis added). This rule explicitly requires the termination of all constituent cases after consolidation and allows only the lead case to remain on the active docket. If consolidation under Kansas law meant that constituent cases retain their separate identity, this local rule would clearly be unlawful.

In its supplemental brief, Oxy provided additional court documents reflecting single judgments entered in consolidated cases that were not class actions. (Doc. 26 at 3-4.) While the court will not extensively review these other records included in the supplemental brief, the court notes that these decisions support the conclusion that state court practice in consolidated cases is consistent with merger in that separate judgments do not appear to be routinely issued in consolidated cases. If the constituent cases had maintained their separate identities, one would expect to see separate judgments entered. *See Hall*, 138 S. Ct. at 1128.

Although Plaintiffs filed a supplemental brief, Plaintiffs did not include any state court decisions to support their position that consolidation under K.S.A. 60-242(a)(2) does not result in the cases being merged. Plaintiffs argue that the legislative history supports their position and they cite to the Kansas advisory committee notes. Those notes indicate that the federal rule has been followed by the adoption of section 60-242. There is no dispute that Kansas, with some exceptions, adopted the language from the federal rules. The issue is the interpretation of the terms and the effect of the application of the statute. The notes do not indicate that Kansas intended to adopt the federal court's interpretation of the terms in section 60-242.

As additional support for this decision, the court observes the inherent difficulties in entering separate judgments in certain types of cases. Where, as in *Hall* and *Johnson*, the parties were discrete, such as individuals or corporations, entering judgment in separate cases is typically straightforward. But when consolidating class actions with overlapping classes and claims, how

13

does the court distinguish between that portion of an overall class judgment that is attributable to one of the consolidated cases over another? Similarly, in consolidated shareholder derivative actions, where any money judgment is likely to be entered in favor of the corporation, how does the court go about apportioning that judgment between each of the consolidated cases in order to satisfy the requirement that each of the consolidated cases receives its own separate judgment? These problems suggest to the court that while consolidation of cases involving discrete parties may not necessitate merger, consolidation of cases such as class actions and perhaps derivative actions where separate judgments may arguably become meaningless counsels more strongly in favor of merger in those contexts.

The court concludes that, in order to avoid imposing the requirement that trial courts apportion class-wide awards across constituent cases in order to enter separate judgments in consolidated class actions, and in order to be consistent with existing and historical Kansas practice, the Kansas Supreme Court would likely find that consolidation of class actions under K.S.A. 60-242(a)(2) merges those cases into a single case. Plaintiffs may object that in this particular action they have defined the relevant classes to be discrete in a temporal sense, each being defined in terms of a particular gas contract. However, as a practical matter, the court notes that the actual composition of each class is almost certainly nearly the same as the other classes, with the only differences being those class members who first bought into, or completely divested themselves of, mineral or royalty interests in the affected minerals during the duration of one of the three underlying gas contracts. Moreover, the claims and defendants are identical in each case.

For all the reasons discussed herein, the court concludes that where a plaintiff obtains consolidation under K.S.A. 60-242(a)(2) of putative class actions with overlapping claims, classes,

and defendants, consolidation results in merger and CAFA jurisdiction is therefore evaluated based on the amount in controversy in the merged case.

**III.    Conclusion**

Because it is undisputed that the amount in controversy is met if the underlying actions were merged into a single action upon consolidation, and because the court has concluded that these three actions were merged under Kansas law, this court has subject matter jurisdiction under CAFA.

Plaintiffs' motion to remand (Doc. 11) is DENIED.  Oxy's motion to transfer (Doc. 6) is DENIED.  The undersigned will retain this action on his docket.

IT IS SO ORDERED this 27th day of March, 2019.

                                                                s/ John W. Broomes  
                                                            JOHN W. BROOMES  
                                                            UNITED STATES DISTRICT JUDGE